**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.    **CV 21-5265-JFW(RAOx)**                    Date:  January 27, 2025

Title:   United States of America, et al. *ex rel*. Integra Med Analytics LLC *-v-* William Nelson, et al.

═══════════════════════════════════════════════════════════════════

**PRESENT:**
             **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

      **Shannon Reilly**                          **None Present**
      **Courtroom Deputy**                        **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
             None                                       None

**PROCEEDINGS (IN CHAMBERS):**       **ORDER DENYING DEFENDANTS' MOTION TO DISMISS RELATOR'S COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [filed 12/23/2024; Docket No. 74]**


On December 23, 2024, Defendants William Nelson, Torrance Care Center West, Inc., Glendora Grand, Inc., Centinela Grand, Inc., Long Beach Care Center, Inc., Pacific Villa, Inc., Flower Villa, Inc., Century Villa, Inc., Villa Del Rio Gardens, Inc., Villa Del Rio Center Inc., West Covina Medical Center, Inc., and L.A. Downtown Medical Center, Inc. (collectively, "Defendants") filed a Motion to Dismiss Relator's Complaint Under Federal Rule of Civil Procedure 12(b)(6).  On January 6, 2025, Relator Integra Med Analytics LLC ("Relator" or "Integra") filed its Opposition.[1] On January 13, 2025, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's January 27, 2025 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In this *qui tam* action, Integra alleges that Defendants Vicki Rollins ("Rollins")[2] and William Nelson ("Nelson") (collectively "Rollins Nelson") own and operate various skilled nursing facilities

───────────────────────────────

[1]Defendants trivially point out that Relator's Opposition papers were filed three minutes after the 4:00 p.m. deadline on January 6, 2025, and argue that the Court should deem Relator to have consented to the granting of the Motion. Given that Defendants were clearly not prejudiced by such an insignificant delay, the Court will consider Relator's Opposition papers.

[2]Although Rollins is named as a defendant in this action, she has not yet been successfully served by Integra and has not entered any appearance

Initials of Deputy Clerk __sr_

("SNFs") and hospitals in California, including Defendants Torrance Care Center West, Inc.; Glendora Grand, Inc., Centinela Grand, Inc., Long Beach Care Center, Inc., Pacific Villa, Inc., Flower Villa, Inc., Century Villa, Inc., Villa Del Rio Gardens, Inc., Villa Del Rio Center, Inc., West Covina Medical Center, Inc., and L.A. Downtown Medical Center, Inc.  Complaint ¶¶ 15-16.

According to the Complaint, Integra analyzed data related to Defendants' operations from 2014 to 2020 provided by the United States Centers for Medicare & Medicaid Services ("CMS") under a Data Use Agreement ("DUA"). *Id.* ¶ 9; Declaration of Matt Byrnes (Docket No. 79) ("Byrnes Declaration") ¶ 3. Integra further interviewed numerous former employees of Defendants regarding their operations. Complaint ¶¶ 7, 30, 33-34, 37-39, 41-44, 47-48, 51-65. Based upon the foregoing, Integra claims to have uncovered a patient-recycling scheme undertaken by Defendants that involves the submission of fraudulent reimbursement claims to Medicare and Medi-Cal. *Id.* ¶¶ 2, 31.

In its Complaint, Integra alleges that Defendants' patient recycling scheme consisted of four steps:

(1)    In the first step, Integra alleges that patients were inappropriately admitted as inpatients at Rollins Nelson hospitals in order to qualify for Medicare Part A reimbursement for their subsequent SNF stay (including through the falsification of patients' diagnoses so those patients could qualify for inpatient treatment, as well as by unnecessarily keeping patients for three days at the hospital, which is the minimum number of inpatient days required to qualify for a subsequent SNF stay that is reimbursed by Medicare Part A).   *Id.* ¶¶ 3, 32.

(2)    In the second step, Integra alleges that patients were inappropriately transferred from Rollins Nelson hospitals to Rollins Nelson's SNFs irrespective of their doctors' guidance, qualifying need, or geographic proximity for up to 100 days (which is the maximum reimbursed by Medicare Part A). *Id.* ¶¶ 4, 31, 36, 40.

(3)    In the third step, Defendants allegedly misused Medi-Cal coverage to keep patients at their SNF facilities for at least 60 additional days after their patients' Medicare Part A coverage ran out at their SNFs. This is the minimum number of days that must elapse before Medicare beneficiaries can start a new Medicare-reimbursable "spell of illness" involving a three-day inpatient stay and subsequent stay at a SNF for up to 100 days.  *Id.* ¶¶ 5, 45.

(4)    In the fourth step, after at least 60 days have elapsed following their Medicare Part A stay at the SNF, Rollins Nelson SNFs and hospitals then allegedly coordinated with each other to readmit patients as inpatients at Rollins Nelson's hospitals so that they could restart a new Medicare-reimbursable spell of illness. *Id.* ¶¶ 6, 50.

This recycling scheme was allegedly perpetuated through doctors enlisted and induced by Rollins Nelson via kickbacks and other payments to refer patients between hospitals and Rollins Nelson SNFs. *Id.* ¶¶ 4, 38, 41, 69.

Integra claims its statistical analysis reveals that Rollins Nelson's patients are significantly more likely than other patients at other medical facilities to be repeatedly recycled between hospitals and SNFs. *Id.* ¶¶ 8, 46, 49, 76–77. Specifically, Integra alleges that Rollins Nelson's SNF patients remain at their facility post-illness at a rate approaching three times the national average

Initials of Deputy Clerk _sr_

(*id*. ¶ 46), max out their allowed per-illness stays nearly five times the national average (*id.* ¶ 44), have a hospital admission source more than ten times that of other SNFs (*id*. ¶ 49), and average 60+ days in the hospital more than any SNF system nationwide (*id.* ¶ 76). Integra alleges that Rollins Nelson SNF patients are more likely to be re-hospitalized "right at 60 days after their previous spell of illness," which is a "strong pattern" "not seen for patients at non-Rollins Nelson SNFs." *Id*. ¶ 49. Integra also claims that when compared to patients at other SNFs, Rollins Nelson patients are over ten times more likely to have two or more long spells of illness, 30 times more likely to have three or more long spells, 87 times more likely to have four or more long spells, and 122 times more likely to have five or more long spells. *Id*. ¶ 77.

Integra corroborates its statistical analysis with several testimonials alleged to be from former Rollins Nelson employees attributing the statistics to conscious and systemic wrongdoing by Defendants, including: the fabrication of diagnoses to justify inpatient admission (*id*. ¶¶ 33-34, 42-43, 59-60); bypassing typical admission processes where a patient's condition did not qualify for inpatient admission (*id*. ¶¶ 41, 55-56, 61, 63-64); dictating minimum inpatient stays unrelated to patient treatment (*id*. ¶¶ 32-34, 44, 57, 59); preventing nurses from facilitating timely discharge by rendering the attending physicians artificially unavailable (*id*. ¶ 33); scouting patients for inpatient admission from a qualifying hospital's urgent care center or otherwise-vulnerable populations (*id*. ¶¶ 35, 48); overriding doctors who directed patients to non-Rollins Nelson SNFs irrespective of whether it was the best or closest facility (*id*. ¶¶ 37-39, 62); rotating patients between care facilities simply to restart insurance coverage (*id*. ¶¶ 51-54, 58, 60); and deliberate meddling by Rollins Nelson indicative of a top-down endeavor (*id*. ¶¶ 35, 37, 65-69).

On June 29, 2021, Integra filed its Complaint under seal against Defendants and Rollins alleging claims for relief for: (1) violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a); and (2) violation of the California False Claims Act, California Government Code § 12651(a). After receiving six extensions to complete its review, on April 5, 2024, the United States declined to intervene.  Integra served a redacted version of the Complaint on Nelson on November 8, 2024 and the hospital and SNF defendants on November 15, 2024.

Defendants move to dismiss Integra's Complaint, arguing in relevant part that: (1) the first-to-file rule bars this action; (2) the public disclosure bar applies; and (3) Integra fails to state a plausible claim for relief and fails to plead its claims with particularity under Federal Rule of Civil Procedure 9(b).

## II.    LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id*. at 672.

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

## III.   DISCUSSION

### A.   The First to File Bar

In their Motion, Defendants argue that the False Claim Act's "first-to-file" rule bars Integra's claims because of this case's purported similarities to a case previously filed against Rollins Nelson and various entities not named as defendants in this case. *United States of America ex rel Winter v. Gardens Regional Hospital and Medical Center Inc et al*, Case No. 2:14-cv-08850-JFW-E (C.D. Cal.) ("*Winter*").

*Winter* was filed by Jane Winter, a registered nurse and former Director of Care Management and Emergency Room at Gardens Regional Hospital and Medical Center Inc. d/b/a Tri-City Regional Medical Center ("Tri-City"). *See Winter*, Docket No. 88, ¶ 6 ("*Winter* SAC"); Declaration of Daniel Paluch, Docket No. 78 ("Paluch Declaration"), ¶ 5. According to the *Winter* SAC, while at Tri-City, Winter observed that patients were being transported to the hospital via ambulance from nursing homes owned and operated by Rollins Nelson (*Winter* SAC ¶ 47) with an unusually high admission rate (*id*. ¶ 51), spiking the hospital's long-term occupancy (*id*. ¶¶ 48, 52) and number of admitted Medicare/Medi-Cal beneficiaries (*id*. ¶¶ 49, 54). Winter believed this spike was attributable to Rollin Nelson's acquisition of S&W, Tri-City's management company (*id*. ¶¶ 12, 50), which allowed Rollins Nelson to be directly involved in the decision-making process by which inpatient stays from their nursing homes were approved at Tri-City (*id*. ¶¶ 140–41).

In reviewing Tri-City's data (id., ¶¶ 66–137), Winter determined that a significant number of patients from Rollins Nelson's nursing homes did not arrive at Tri-City with illnesses severe enough to meet inpatient hospital admission criteria (*id*. ¶¶ 56-57), either because they were outpatient matters (*id*. ¶ 62) or lacked any evidence of inpatient-worthy symptoms in their medical documentation (*id*. ¶¶ 63–64). Winter believed that doctors at Tri-City were being improperly pressured to approve these inpatient stays. (*Id*. ¶¶ 142–43.) After Winter relayed her concerns to Tri-City executives (*id*. ¶¶ 138–39), she was castigated for doing so (*id*. ¶¶ 144–45) and ultimately terminated from her position at Tri-City (*id*. ¶ 150).

Initials of Deputy Clerk  _sr_

Winter's SAC alleged several claims for violations of the FCA based on medically
unnecessary admissions (*id.* ¶¶ 151–55), use of false records (*id.*, ¶¶ 156–160), presentation of
false claims to Medicare (*id.* ¶¶ 161–67), and unlawful retaliation against Winter for her
investigatory efforts (*id.* ¶¶ 168–74). Although this Court initially dismissed Winter's case, the Ninth
Circuit reversed and remanded. *See Winter ex rel. United States v. Winter Reg'l Hosp. & Med. Ctr.,
Inc.*, 953 F.3d1108, 1112 (9th Cir. 2020).  Rollins Nelson then reached a settlement with Winter
after a mediation session (*Winter*, Dkt. 285 ¶ 9; Paluch Declaration, ¶ 6) and were voluntarily
dismissed from the case *(Winter*, Dkt. 302; Paluch Declaration, ¶ 7.).

The *qui tam* provisions of the False Claims Act permit private parties who are aware of fraud
against the government to sue for a civil penalty on behalf of the government. 31 U.S.C. §
3730(b)(1). However, Section 3730(b)(5) establishes a first-to-file bar, which provides: "When a
person brings an action under [§ 3730(b)], no person other than the Government may intervene or
bring a related action based on the facts underlying the pending action." This first-to-file bar
encourages prompt disclosure of fraud by creating a race to the courthouse among those with
knowledge of fraud and also prevents opportunistic successive plaintiffs.

The first-to-file rule only bars a later-filed complaint "alleg[ing] the same material facts as an
earlier-filed civil complaint." *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1130
(9th Cir. 2015) (en banc). However, "the facts underlying the later-filed complaint need not be
'identical' to those underlying the earlier-filed complaint for the later complaint to be barred.  *Id.*
(quoting *Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1183 (9th Cir. 2001)).

A review of the allegations contained in the *Winter* SAC indicate that its scope is distinct and
much narrower than the Complaint filed by Integra. The allegations in the Winter SAC were limited
to Rollins Nelson's management of a single hospital, Tri-City, and based solely on Winter's
percipient analysis of that hospital's intake procedures.  In contrast, Integra's much broader
Complaint concerns two different hospitals and nine SNFs and includes allegations that Rollins
Nelson recycled patients back to Rollins Nelson SNFs for 100 days without any qualifying need,
and then back to Rollins Nelson hospitals merely to restart insurance coverage.

The Court agrees with Integra that there is no indication that the allegations in *Winter* would
have alerted the government to misconduct taking place at hospitals other than Tri-City, to Rollins
Nelson's allegedly improper directing of hospital patients towards their SNFs (from which patients
were merely alleged to have originated in *Winter*), or to the pattern of patient recycling supported
by Integra's statistical analysis and interviews of Rollins Nelson employees.

Defendants primarily rely on *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d
1181, 1183 (9th Cir. 2001) ("*Lujan*") in support of their first-to-file argument. In *Lujan*, the defendant
was twice sued for the same allegations of improper cost-allocation on the same government
project, "the B-2 bomber system," "the same radar program contracts" within that project, and "the
same commonality agreements" by which the costs were misallocated, merely differing as to
whether the improper cost-shifting was alleged to have occurred entirely "within the B-2 program"
or "among the B-2 program and other aircrafts." *Lujan*, 243 F.3d at 1185-86. Such "microscopically
fine distinctions" did not meaningfully differentiate the suits' revelatory benefits, as the government
"necessarily performed a thorough review" of the project's cost allocation when investigating the
first-filed action. *Id.*, at 1185, 1189. *Lujan* is thus distinguishable, as *Winter* contained no
allegations regarding the conduct of any other hospitals (which are not merely different locations
within Tri-City or Rollins Nelson's management entity for Tri-City, but entirely separate business
entities), the use of SNFs as profit centers themselves, or the patient recycling scheme between

Initials of Deputy Clerk  _sr_

the SNFs and hospitals, all of which originated with Integra rather than Winter. *See Campbell*, 421
F.3d at 822.

Defendants' alternative reliance on the *United States ex rel. Carson v. Manor Care, Inc.*,
851 F.3d 293 (4th Cir. 2017) ("*Carson*") is similarly unavailing. In *Carson*, a relator's claim that a
defendant defrauded Medicare by overprescribing therapy to its patients was deemed duplicative
of a prior relator's claim that she witnessed defendant's staff overprescribe therapy to its patients.
*Carson*, 851 F.3d at 300. Although the second relator argued his complaint alleged specific types
of overprescribed therapy "modalities" not listed in the first-filed suit, the Fourth Circuit found those
examples to fall under the "general claim that [defendant] billed the Government for unnecessary
treatment," which failed to alert the government of significantly new matters to investigate. *Id.* at
304. In this case, Integra not only alleges improper admissions at two different hospitals not named
in *Winter*, but an independent recycling scheme between those hospitals and Rollins Nelson's
SNFs, which goes well beyond the allegations in *Winter*. *See United States ex rel. Barrett v.
Allergan, Inc.*, No. SACV 18-203 JVS(KESx), 2019 WL 4675756, 2019 WL 4675756,, at *4 (C.D.
Cal. Sep. 24, 2019) ("*Barrett*") ("Although both complaints discuss Botox samples, Castro's
[prior-filed] allegations are significantly narrower than those [subsequently] made by Barrett. […]
Therefore, the Castro action does not bar Barrett's action under the FCA's first-to-file rule.").

### B.    The Public Disclosure Bar

Defendants argue that even if the first-to-file rule does not bar Integra's claims, Integra's
claims are also barred by the public disclosure bar.  The FCA mandates dismissal of claims "if
substantially the same allegations . . . were publicly disclosed (i) in a Federal . . . hearing in which
the Government . . . is a party [or] (ii) in a . . . Federal report . . . unless . . . the person bringing the
action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Defendants claim that
*Winter* and the data compiled by CMS should be considered prior "public disclosures" of Integra's
claims under the public disclosure bar of 31 U.S.C. § 3730(e)(4)(A), rendering Integra not their
"original source" and depriving it of standing. *United States ex rel. Mateski v. Raytheon Co.*, 816
F.3d 565, 570 (9th Cir. 2016) ("*Mateski*").

A public disclosure exists when: "(1) the disclosure at issue occurred through one of the
channels specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is
'based upon' the allegations or transactions publicly disclosed." *United States ex rel. Mateski v.
Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016). In order for the public disclosure bar to apply, the
essential elements of a fraud – a "misrepresented state of facts" and a "true state of facts" – must
have been "revealed" in "combination," meaning a form "from which readers or listener may infer . .
. that fraud has been committed." *Id.* at 571.

For a relator's allegations to be "based upon" a prior public disclosure, the "publicly disclosed
facts need not be identical with, but only substantially similar to, the relator's allegations." *Mateski*,
816 F.3d at 573. "In deciding whether allegations have been publicly disclosed, the Ninth Circuit
warns against reading qui tam complaints at the highest level of generality." *United States ex rel.
Barrett v. Allergan, Inc.*,, 2019 WL 4675756, at *5 (C.D. Cal. Sept. 24, 2019)(citing *Mateski*, 816
F.3d at 578).

In this case, the Court concludes that Integra's Complaint is not substantially similar to
Winter's Second Amended Complaint, because Integra alleges fraud that is different in kind and in
degree from the previously disclosed information about Rollins Nelson.   As already discussed,

Initials of Deputy Clerk _sr_

Integra alleges a more expansive scheme of fraudulent intake and patient recycling than that found in *Winter*.  *See Barrett*, 2019 WL 4675756, at *5 (finding that relator's allegations were not substantially similar to a prior public disclosure where the alleged fraud "is different in kind and in degree from the previously disclosed information"). Indeed, in order for the Court to find that this case is substantially similar to *Winter*, the Court would be required to view the allegations of both cases at the "highest level of generality," which courts are directed to avoid. *Barrett*, 2019 WL 4675756, at *5 (citing *Mateski*, 816 F.3d at 578).]

In addition, the mere existence of raw data such as that provided by CMS prior to a relator's correlation of its significance is not a de facto public disclosure. As the Ninth Circuit has explained, for disclosed data to reveal "substantially the same . . . allegations or transactions" as a relator's qui tam action, it must either directly claim that defendants committed the alleged fraud or disclose facts from which the fraud can be readily inferred. *Silbersher v. Valeant Pharms. Int'l*, 89 F.4th 1154, 1167–68 (9th Cir. 2024). In *Silbersher*, the relator alleged that a drugmaker "intentionally withheld material information" to fraudulently obtain an invalid patent that allowed it to charge the government higher prices for a drug. *Id*. The Ninth Circuit held that while the relator's evidence of the alleged fraud was derived from public information, the "combination" of that information presented to substantiate the relator's FCA claim was not "obvious" prior to the relator "putting together" each "piece of the puzzle" to demonstrate the fraudulent scheme. *Id.*

In this case, the Court concludes that the alleged fraudulent scheme was not obvious prior to Integra putting together each piece of the puzzle.  Indeed, according to Defendants, all the CMS data shows is that Defendants service a "high concentration of high needs patients" who are receiving a "continuity of care" from the same healthcare providers.  However, Integra's extensive data analysis, its interviews of Rollins Nelson staff, and investigation of Rollins Nelson patients' cases provide the missing pieces of the alleged fradulent scheme.

Accordingly, the Court concludes that Integra's claims are not barred by prior public disclosures.

###    C.    Integra has adequately stated its claims for relief.

For the reasons stated by Integra, the Court concludes that Integra has adequately stated its claims for relief in accordance with Federal Rules of Civil Procedure 8 and 9(b) and that the arguments raised are more appropriately resolved on a motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Relator's Complaint Under Federal Rule of Civil Procedure 12(b)(6) is **DENIED**.

IT IS SO ORDERED.

Initials of Deputy Clerk _sr_