Exhibit E

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION
Daniel R. Paluch (SBN 287231)
Daniel B. Lifschitz (SBN 285068)
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: (310) 556-4660
Facsimile: (310) 556-8945
dpaluch@ghplaw.com
dlifschitz@ghplaw.com

*Attorneys for Plaintiff*
INTEGRA MED ANALYTICS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel.* INTEGRA MED ANALYTICS LLC,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM NELSON, an individual; VICKI ROLLINS, an individual; TORRANCE CARE CENTER WEST, INC.; GLENDORA GRAND, INC.; CENTINELA GRAND, INC.; LONG BEACH CARE CENTER, INC.; PACIFIC VILLA, INC.; FLOWER VILLA, INC.; CENTURY VILLA, INC.; VILLA DEL RIO GARDENS, INC.; VILLA DEL RIO CENTER INC.; WEST COVINA MEDICAL CENTER, INC.; L.A. DOWNTOWN MEDICAL CENTER, INC.,<br><br>Defendants. | Case No. 2:21-cv-05265-JFW-ROAx<br><br>*Honorable John F. Walter*<br><br>**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE** |

1

1516870.1 - 06302.00001

1  RESPONDING PARTY:          INTEGRA MED ANALYTICS LLC

2  PROPOUNDING PARTY:      DEFENDANT TORRANCE CARE CENTER

3                                              WEST, INC.

4  SET NO.:                          ONE

5

6                              **<u>GENERAL RESPONSE AND OBJECTIONS</u>**

7          Plaintiff INTEGRA MED ANALYTICS LLC ("Integra" and "Plaintiff")

8  provides the following general response and objections as to each and every

9  interrogatory propounded by Plaintiff:

10          Plaintiff has not yet completed its discovery and investigation of the facts

11  giving rise to this action, but has made a diligent, good faith effort to obtain all

12  information responsive to these interrogatories within its possession, custody, or

13  control.  Accordingly, these responses are made without prejudice to Plaintiff's right

14  to introduce prior to or the time of trial or otherwise use any additional information

15  it may obtain as a result of its continuing discovery and investigation.

16          Plaintiff assumes no obligation to supplement and amend these responses to

17  reflect later-acquired responsive information beyond those imposed by the Federal

18  Rules of Civil Procedure, the Local Rules of the United States District Court for the

19  Central District of California, and/or applicable case law.

20          Plaintiffs objects to Defendant's definitions and instructions to the extent it

21  attempts to impose obligations beyond those required of Plaintiff under the Federal

22  Rules of Civil Procedure and applicable case law.

23          Plaintiff objects to Defendant's interrogatories to the extent it seeks

24  information in violation of the California Code of Civil Procedure, the California

25  Civil Code, the California Evidence Code, or the California Constitution.

26          Plaintiff objects to Defendant's interrogatories to the extent it seeks

27  information protected by the attorney-client privilege, attorney work product

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S
INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

1  doctrine, or any other applicable privilege or protection against disclosure.

2      Plaintiff objects to Defendant's interrogatories to the extent they seek

3  information that is neither relevant to the claims and defenses of any party nor

4  reasonably calculated to lead to the discovery of admissible evidence. Any response

5  provided by Defendant is not a concession of its relevance or admissibility.

6      Plaintiff objects to Defendant's interrogatories to the extent it seeks

7  information not within Plaintiff's possession, custody, or control.

8      Plaintiff objects to Defendant's interrogatories to the extent they are overly

9  broad, unduly burdensome, or oppressive under the circumstances.

10      Plaintiff objects to Defendant's interrogatories to the extent it seeks

11  information beyond the operative statutes of limitations in this matter.  Subject to

12  and without waiving any of the foregoing general objections, which are incorporated

13  into each and every individual response below as if set forth in full, Plaintiff

14  responds to Defendant's individual interrogatories as follows:

15

16      **RESPONSES TO DEFENDANT'S**

17      **INTERROGATORIES, SET ONE**

18  **INTERROGATORY NO. 1:**

19  Identify each person whom you contend harbored the requisite knowledge that any

20  claim for payment presented by Defendants to the government violated the False

21  Claims Act.

22  **RESPONSE TO INTERROGATORY NO.  1:**

23      Responding Party incorporates its Preliminary Statement and General

24  Objections set forth above as if they were set forth in full herein.

25      **Premature:** Responding Party further objects to this contention

26  Interrogatory as premature, as discovery in this matter has just commenced and

27  Defendants have yet to respond to Responding Party's discovery requests.

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

3

1  **Overbroad/Undue Burden/Oppressive:** Responding Party further objects

2  to this Interrogatory on the grounds that it is overbroad, in that it asks Responding

3  Party to identify "each person [who] harbored the requisite knowledge" when a

4  request with a more limited scope would be sufficient to evidence the subject matter

5  of this Interrogatory.  Further, it does not follow that all documents or information

6  falling within the scope of this overbroad Interrogatory bear on a fact, claim, or

7  defense at issue in this case.  Accordingly, a search for all documents or information

8  responsive to this Interrogatory is likely to take an unreasonable amount of time

9  and/or money to fulfill in relation to the reasonable needs of the case.

10  **Irrelevant:** Responding Party further objects to this Interrogatory on the

11  grounds that it seeks information or documents that are neither relevant nor likely to

12  lead to the discovery of information or documents relevant to the subject matter of

13  the action.  The Interrogatory is therefore outside the scope of discovery and

14  improper.

15  Subject to and without waiving the foregoing objections, Responding Party

16  responds as follows:

17  Notwithstanding that this Interrogatory is premature, Vicki Rollins,

18  William Nelson, and other as of yet unidentified individuals who can and will be

19  identified after Defendants have produced sufficient information in discovery.

20  Discovery in this matter has just commenced, and Responding Party

21  reserves the right to amend or supplement its response to this Interrogatory if

22  additional responsive information becomes available in the future.

23  **INTERROGATORY NO. 2:**

24  For each person identified in response to the foregoing Interrogatory No. 1, state all

25  facts supporting your contention that each person harbored the requisite knowledge

26  that any claim for payment presented by Defendants to the government violated the

27  False Claims Act.

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

4

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**Premature:** Responding Party further objects to this contention Interrogatory as premature, as discovery in this matter has just commenced and Defendants have yet to respond to Responding Party's discovery requests.

**Overbroad/Undue Burden/Oppressive:** Responding Party further objects to this Interrogatory on the grounds that it is overbroad, in that it asks Responding Party to state "all facts," when a request with a more limited scope would be sufficient to evidence the subject matter of this Interrogatory. Further, it does not follow that all documents or information falling within the scope of this overbroad Interrogatory bear on a fact, claim, or defense at issue in this case. Accordingly, a search for all documents or information responsive to this Interrogatory is likely to take an unreasonable amount of time and/or money to fulfill in relation to the reasonable needs of the case.

**Third Party Privacy:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents relating to third parties that are protected by the constitutional right to privacy.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

Notwithstanding that this Interrogatory is premature, Vicki Rollins and William Nelson harbored the requisite knowledge that claims for payment submitted by Defendants violated the False Claims Act. As alleged in the complaint, Rollins and Nelson co-own and control the hospitals and skilled nursing facilities involved in the patient recycling scheme. They were intricately involved in the day-to-day operations of the facilities, regularly directing patient flow and discharge decisions. Both participated in meetings focused on patient insurance and length of stay, and

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  they issued directives that overruled medical staff to extend hospitalizations or

2  admissions for reimbursement purposes.  Rollins, in particular, instructed staff to

3  admit patients who did not meet criteria, overrode physicians who sought to deny

4  admission, and directed staff via text message to fill beds regardless of medical

5  need.  These actions, taken in conjunction with the described scheme to fraudulently

6  cycle patients for Medicare and Medi-Cal reimbursement, support the contention

7  that both Rollins and Nelson harbored the requisite knowledge of the falsity of

8  claims submitted to the government.

9       Discovery in this matter has just commenced, and Responding Party

10  reserves the right to amend or supplement its response to this Interrogatory if

11  additional responsive information becomes available in the future, including but not

12  limited to information regarding the as-of-yet unidentified employees of Defendants

13  mentioned in Responding Party's Response to Interrogatory No. 1.  Responding

14  Party further reserves the right to amend or supplement its response to this

15  Interrogatory to include additional information only disclosable after entry of an

16  appropriate protective order, to the extent appropriate.

17  **INTERROGATORY NO. 3:**

18  For each person identified in response to Interrogatory No. 1, identify all documents

19  supporting your contention that each person harbored the requisite knowledge that

20  any claim for payment presented by Defendants to the government violated the

21  False Claims Act.

22  **RESPONSE TO INTERROGATORY NO. 3:**

23       Responding Party incorporates its Preliminary Statement and General

24  Objections set forth above as if they were set forth in full herein.

25       **Premature:** Responding Party further objects to this contention

26  Interrogatory as premature, as discovery in this matter has just commenced and

27  Defendants have yet to respond to Responding Party's discovery requests.

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

**Overbroad/Undue Burden/Oppressive:** Responding Party further objects to this Interrogatory on the grounds that it is overbroad, in that it asks Responding Party to identify "all documents," when a request with a more limited scope would be sufficient to evidence the subject matter of this Interrogatory. Further, it does not follow that all documents or information falling within the scope of this overbroad Interrogatory bear on a fact, claim, or defense at issue in this case. Accordingly, a search for all documents or information responsive to this Interrogatory is likely to take an unreasonable amount of time and/or money to fulfill in relation to the reasonable needs of the case.

**Third Party Privacy:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents relating to third parties that are protected by the constitutional right to privacy.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

Notwithstanding that this Interrogatory is premature, pursuant to Fed. R. Civ. P. Rule 33(d), and after entry of an appropriate protective order, Responding Party will produce non-privileged documents from which the answer to this Interrogatory can be determined, to the extent they exist, are in Responding Party's possession, custody, or control, and can be located after a reasonably diligent search. To the extent any documents responsive to this Interrogatory are produced, they will be identified as such in Responding Party's upcoming document production(s).

Discovery in this matter has just commenced, and Responding Party reserves the right to amend or supplement its response to this Interrogatory if additional responsive information becomes available in the future, including but not limited to information regarding the as-of-yet unidentified employees of Defendants mentioned in Responding Party's Response to Interrogatory No. 1. Responding Party further reserves the right to amend or supplement its response to this

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  Interrogatory to include additional information only disclosable after entry of an

2  appropriate protective order, to the extent appropriate.

3  **INTERROGATORY NO. 4:**

4  Identify all persons who participated in or contributed to the investigation of the

5  allegations in the Complaint, including their roles and responsibilities.

6  **RESPONSE TO INTERROGATORY NO. 4:**

7        Responding Party incorporates its Preliminary Statement and General

8  Objections set forth above as if they were set forth in full herein.

9        **Overbroad/Undue Burden/Oppressive:** Responding Party further objects

10  to this Interrogatory on the grounds that it is overbroad, in that it seeks "all persons

11  who participate in or contributed to" when a request with a more limited scope

12  would be sufficient to evidence the subject matter of this Interrogatory.  Further, it

13  does not follow that all documents or information falling within the scope of this

14  overbroad Interrogatory bear on a fact, claim, or defense at issue in this case.

15  Accordingly, a search for all documents or information responsive to this

16  Interrogatory is likely to take an unreasonable amount of time and/or money to

17  fulfill in relation to the reasonable needs of the case.

18        **Ambiguous/Vague:** Responding Party further objects to this Interrogatory

19  on the grounds that it is vague or ambiguous, or both, and would require Responding

20  Party to speculate as to the meaning of the Interrogatory, including but not limited to

21  the meaning of the terms or phrases "participate in or contributed to," "the

22  investigation of the allegations in the Complaint," "roles and responsibilities."

23        Subject to and without waiving the foregoing objections, Responding Party

24  responds as follows:

25        Matt Byrnes, oversaw analysis

26        John Griffin, oversaw analysis

27        Damon Crim, qualitative investigation

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

8

1    David Lam, contributed to analysis

2    Liam Landrum, contributed to analysis

3    Other individuals may have made limited or non-substantive contributions to the investigation under direction of those above. Discovery in this matter has just commenced, and Responding Party reserves the right to amend or supplement its response to this Interrogatory if additional responsive information becomes available in the future.

**INTERROGATORY NO. 5:**

State all facts that support your contention that Defendants knowingly submitted false claims to Medicare or Medicaid.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**Premature:** Responding Party further objects to this contention Interrogatory as premature, as discovery in this matter has just commenced and Defendants have yet to respond to Responding Party's discovery requests.

**Calls for a Narrative:** Plaintiff further objects to this interrogatory on the basis that it is designed to elicit a detailed narrative appropriately sought through other methods of discovery. *See Heilman v. Silva*, 2015 U.S. Dist. LEXIS 48353, *8 (S.D. Cal. Apr. 13, 2015); *Bashkin v. San Diego County*, 2011 U.S. Dist. LEXIS 3439, *59–61 (S.D. Cal. Jan. 13, 2011).

**Overbroad/Undue Burden/Oppressive:** Responding Party further objects to this Interrogatory on the grounds that it is overbroad, in that it asks Responding Party to "state all facts," when a request with a more limited scope would be sufficient to evidence the subject matter of this Interrogatory. Further, it does not follow that all documents or information falling within the scope of this overbroad Interrogatory bear on a fact, claim, or defense at issue in this case. Accordingly, a

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

9

1516870.1 - 06302.00001

1   search for all documents or information responsive to this Interrogatory is likely to
2   take an unreasonable amount of time and/or money to fulfill in relation to the
3   reasonable needs of the case.

4           **Third Party Privacy:** Responding Party further objects to this
5   Interrogatory to the extent it seeks information or documents relating to third parties
6   that are protected by the constitutional right to privacy.

7           Subject to and without waiving the foregoing objections, Responding Party
8   responds as follows:

9           Notwithstanding that this Interrogatory is premature, Responding Party
10  contends that Defendants knowingly submitted false claims to Medicare and
11  Medicaid based on a wide-ranging scheme orchestrated and directed by Vicki
12  Rollins and William Nelson, the co-owners of the Defendant hospitals and skilled
13  nursing facilities. The facts stated herein, as well as those set forth in the complaint,
14  demonstrate not only the existence of the scheme but also the knowing participation
15  of Defendants' leadership in every phase of its execution. These facts, derived from
16  first-hand witness accounts, internal communications, and statistical analyses, show
17  a pattern of conduct that was not accidental or negligent, but calculated and
18  systematic, executed with the intent to improperly maximize government
19  reimbursement.

20          Defendants' conduct began with the improper admission of patients to their
21  hospitals.  In order to qualify patients for Medicare-covered skilled nursing facility
22  (SNF) stays, Defendants were required to ensure those patients had at least a three-
23  day inpatient hospital admission.  To satisfy that requirement—regardless of
24  whether it was medically necessary—Defendants' hospital staff, under direction
25  from leadership, routinely falsified or exaggerated diagnoses.  For example, patients
26  were regularly labeled with conditions such as chronic obstructive pulmonary
27  disease (COPD) with exacerbation or altered mental status, not because these
28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

10

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S
INTERROGATORIES TO RELATOR, SET ONE**

1   diagnoses reflected clinical reality, but because they would justify admission and

2   reimbursement under Medicare Part A.  Former staff at both hospitals recounted

3   how patients were held unnecessarily for three days, with some patients even

4   delayed from being discharged solely to meet the time requirement.  Nurses

5   described instances where patients who should have been treated in outpatient

6   settings were instead kept as inpatients through obstruction of discharge processes—

7   such as doctors being made unavailable to sign orders—in order to meet the

8   minimum threshold for Medicare coverage.

9          Once patients were admitted for the required three days, they were

10  routinely transferred to one of the Defendants' SNFs, again often in direct

11  contravention of the discharging physician's orders or patient preference.  Doctors

12  who selected alternative, unaffiliated SNFs frequently found their discharge plans

13  overridden.  Defendants' staff, under the direct influence of Rollins and Nelson,

14  would falsely claim that insurance coverage prevented use of the non-affiliated

15  SNFs, even when that was untrue.  Staff were explicitly trained to route patients into

16  Rollins Nelson facilities regardless of medical appropriateness or geographic

17  convenience.  As a result, patients were transferred to facilities located over 50

18  miles from the hospital, even when closer and medically appropriate alternatives

19  were available.  Employees noted that this redirection was not a clinical decision—it

20  was a business one, made to keep revenue flowing within the Rollins Nelson

21  enterprise.

22         Once admitted to the SNFs, patients were kept for the full 100 days

23  covered by Medicare Part A, whether or not they needed skilled nursing care.

24  Former therapists described treating patients who were ambulatory, high-

25  functioning, and did not require any form of rehabilitation.  In some cases, therapy

26  staff admitted that they simply followed patients around the facility to satisfy billing

27  requirements for therapy sessions.  Occupational and physical therapists reported

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

11

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S**
**INTERROGATORIES TO RELATOR, SET ONE**

being disturbed by the fact that patients were admitted with no rehabilitative needs at all, and yet were subjected to procedures, drugs, and billing patterns designed to justify continued SNF reimbursement.  In several accounts, patients became violent or erratic, a consequence of the inappropriate nature of their placement.  The common denominator among these patients was that they had Medicare coverage.

After the 100-day Medicare-covered period expired, patients were not discharged.  Instead, Defendants utilized Medi-Cal to fund the intervening 60-day period necessary to qualify for a new Medicare "spell of illness."  During this time, patients—often vulnerable, mentally ill, or without family advocates—were kept in Defendants' facilities as long-term residents.  Multiple staff members testified that the facilities specifically targeted patients with no advocates or family oversight, because those patients were easier to retain without resistance.  In fact, many of these patients had histories of homelessness or substance abuse and lacked the capacity to object to their prolonged and unnecessary institutionalization.  This waiting period was not medically justified; rather, it was timed to meet the minimum regulatory requirement to reset the Medicare clock and trigger a new SNF reimbursement cycle.

Following the lapse of 60 days, patients were often sent back to one of the two Defendant hospitals—again for a three-day stay, again with falsified or inflated diagnoses—to start the cycle over again.  Staff at the hospitals and SNFs coordinated this process through regular text message communications, in which beds were requested and patients referred based on availability, not need.  These messages often included phrases such as "please support WCMC today," or "we will have nine beds available," making clear that patients were being moved around to balance census numbers, not to provide care.  Some messages explicitly stated that a patient needed to be admitted as "inpatient upon arrival" because of insurance considerations—an admission decision that should rest solely with clinical staff

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

12

1516870.1 - 06302.00001

1  based on the patient's condition, not financial triggers.  Other messages

2  demonstrated that staff were coordinating to hold patients until rooms were

3  available or requesting physicians to "keep them three days" to meet Medicare

4  requirements.

5       The coordinated nature of this conduct, along with the overwhelming

6  statistical outliers associated with Defendants' billing data, supports the conclusion

7  that these actions were not inadvertent or isolated.  For example, over one-third of

8  Rollins Nelson SNF patients stayed for the full 100-day Medicare period—nearly

9  five times the national average.  More than two-thirds were classified as "still a

10  patient" at the end of their SNF spell of illness, compared to a national average of

11  roughly 25%.  Defendants' patients were also dozens of times more likely to

12  experience repeat, long-duration spells of illness.  Rollins Nelson SNFs had the

13  highest average number of long spells of illness per patient in the country.  These

14  figures are not consistent with normal patient populations or care patterns; they are

15  consistent with systematic exploitation of Medicare rules.

16       Responding Party further contends that both Vicki Rollins and William

17  Nelson knew of, approved, and directed the practices described above.  They

18  personally attended daily operations meetings, reviewed patient insurance data,

19  instructed staff to admit or retain patients for reimbursement reasons, and enforced

20  policies that punished those who refused to go along with the scheme.  When staff

21  raised ethical objections or highlighted that patients did not meet admission criteria,

22  they were reprimanded, ignored, or terminated.  Rollins herself is alleged to have

23  pressured behavioral health managers to admit unqualified patients and was known

24  to override clinical decisions when they interfered with the financial objectives of

25  the facilities.  Her involvement in group texts with hospital and SNF staff further

26  confirms her direct oversight of the patient cycling process.

27

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

13

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

Taken together, these facts support the conclusion that Defendants acted with actual knowledge of the falsity of the claims they caused to be submitted to Medicare and Medicaid.  The volume, consistency, and coordination of the conduct alleged leave no reasonable inference other than that Defendants knowingly submitted false claims in violation of the False Claims Act.

Discovery in this matter has just commenced, and Responding Party reserves the right to amend or supplement its response to this Interrogatory if additional responsive information becomes available in the future.  Responding Party further reserves the right to amend or supplement its response to this Interrogatory to include additional information only disclosable after entry of an appropriate protective order, to the extent appropriate.

## INTERROGATORY NO. 6:

Identify each specific claim you allege was false, including the date of submission, the amount claimed, and the reason it was allegedly false.

## RESPONSE TO INTERROGATORY NO. 6:

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**Ambiguous/Vague:** Responding Party further objects to this Interrogatory on the grounds that it is vague or ambiguous, or both, and would require Responding Party to speculate as to the meaning of the Interrogatory, including but not limited to the meaning of the terms or phrases "and the reason it was allegedly false."

**Third Party Privacy:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents relating to third parties that are protected by the constitutional right to privacy.

**Premature Expert Disclosure:** Responding Party further objects to this Interrogatory on the grounds that it seeks expert analysis, conclusions, or opinions

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

1  prior to the deadline for expert disclosures.  It is thus improper and unduly

2  burdensome.

3       Subject to and without waiving the foregoing objections, Responding Party

4  responds as follows:

5       Notwithstanding that this Interrogatory is premature, Pursuant to Fed. R.

6  Civ. P. Rule 33(d), after entry of an appropriate protective order Responding Party

7  will produce non-privileged documents identifying the claims at issue in this case.

8  To the extent any documents responsive to this Interrogatory are produced, they will

9  be identified as such in Responding Party's upcoming document production(s).

10      Discovery in this matter has just commenced, and Responding Party

11  reserves the right to amend or supplement its response to this Interrogatory if

12  additional responsive information becomes available in the future.  Responding

13  Party further reserves the right to amend or supplement its response to this

14  Interrogatory to include additional information only disclosable after entry of an

15  appropriate protective order, to the extent appropriate.

16  **INTERROGATORY NO. 7:**

17  State the basis for your contention that any hospital admission or skilled nursing

18  facility (SNF) stay identified in the Complaint was medically unnecessary.

19  **RESPONSE TO INTERROGATORY NO. 7:**

20      Responding Party incorporates its Preliminary Statement and General

21  Objections set forth above as if they were set forth in full herein.

22      **Premature:** Responding Party further objects to this contention

23  Interrogatory as premature, as discovery in this matter has just commenced and

24  Defendants have yet to respond to Responding Party's discovery requests.

25      **Premature Expert Disclosure:** Responding Party further objects to this

26  Interrogatory on the grounds that it seeks expert analysis, conclusions, or opinions

27

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

1   prior to the deadline for expert disclosures.  It is thus improper and unduly

2   burdensome.

3          **Ambiguous/Vague:** Responding Party further objects to this Interrogatory

4   on the grounds that it is vague or ambiguous, or both, and would require Responding

5   Party to speculate as to the meaning of the Interrogatory, including but not limited to

6   the meaning of the terms or phrases "basis," "any hospital admission or skilled

7   nursing facility (SNF) stay identified in the Complaint."

8          **Third Party Privacy:** Responding Party further objects to this

9   Interrogatory to the extent it seeks information or documents relating to third parties

10  that are protected by the constitutional right to privacy.

11         Subject to and without waiving the foregoing objections, Responding Party

12  responds as follows:

13         Responding Party understand this Interrogatory to be asking for

14  information regarding the hospital and SNF stays referenced in paragraphs 73, 74,

15  and 75 of the Complaint.

16         Notwithstanding that this Interrogatory is premature, after entry of an

17  appropriate protective order, Responding Party will amend its response to this

18  Interrogatory to provide the requested information with respect to those stays.

19         Discovery in this matter has just commenced, and Responding Party

20  reserves the right to amend or supplement its response to this Interrogatory if

21  additional responsive information becomes available in the future.  Responding

22  Party further reserves the right to amend or supplement its response to this

23  Interrogatory to include additional information only disclosable after entry of an

24  appropriate protective order, to the extent appropriate.

25  <u>**INTERROGATORY NO. 8:**</u>

26  Describe any communications you had with government officials before filing the

27  Complaint, including the date, participants, and substance of each communication.

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S**
**INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**Ambiguous/Vague:** Responding Party further objects to this Interrogatory on the grounds that it is vague or ambiguous, or both, and would require Responding Party to speculate as to the meaning of the Interrogatory, including but not limited to the meaning of the terms or phrases "government officials."

**Overbroad/Undue Burden/Oppressive:** Responding Party further objects to this Interrogatory on the grounds that it is overbroad, in that it seeks information about all communications with any government official about any subject when a request with a more limited scope would be sufficient to evidence the subject matter of this Interrogatory. Further, it does not follow that all documents or information falling within the scope of this overbroad Interrogatory bear on a fact, claim, or defense at issue in this case. Accordingly, a search for all documents or information responsive to this Interrogatory is likely to take an unreasonable amount of time and/or money to fulfill in relation to the reasonable needs of the case.

**Irrelevant:** Responding Party further objects to this Interrogatory on the grounds that it seeks information or documents that are neither relevant nor likely to lead to the discovery of information or documents relevant to the subject matter of the action. The Interrogatory is therefore outside the scope of discovery and improper.

**Third Party Privacy:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents relating to third parties that are protected by the constitutional right to privacy.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

---

17

1516870.1 - 06302.00001

1    After entry of an appropriate protective order, and pursuant to Fed. R. Civ.

2  P. Rule 33(d), Responding Party elects to produce non-privileged documents from

3  which the answer to this Interrogatory can be determined, to the extent they exist,

4  are in Responding Party's possession, custody, or control, and can be located after a

5  reasonably diligent search.  To the extent any documents responsive to this

6  Interrogatory are produced, they will be identified as such in Responding Party's

7  upcoming document production(s).

8  **INTERROGATORY NO. 9:**

9  Identify all documents you provided to the government related to the allegations in

10  the Complaint.

11  **RESPONSE TO INTERROGATORY NO.  9:**

12    Responding Party incorporates its Preliminary Statement and General

13  Objections set forth above as if they were set forth in full herein.

14    **Ambiguous/Vague:** Responding Party further objects to this Interrogatory

15  on the grounds that it is vague or ambiguous, or both, and would require Responding

16  Party to speculate as to the meaning of the Interrogatory, including but not limited to

17  the meaning of the terms or phrases "the government."

18    **Third Party Privacy:** Responding Party further objects to this

19  Interrogatory to the extent it seeks information or documents relating to third parties

20  that are protected by the constitutional right to privacy.

21    Subject to and without waiving the foregoing objections, Responding Party

22  responds as follows:

23    After entry of an appropriate protective order, and pursuant to Fed. R. Civ.

24  P. Rule 33(d), Responding Party elects to produce non-privileged documents from

25  which the answer to this Interrogatory can be determined, to the extent they exist,

26  are in Responding Party's possession, custody, or control, and can be located after a

27  reasonably diligent search.  To the extent any documents responsive to this

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

1  Interrogatory are produced, they will be identified as such in Responding Party's

2  upcoming document production(s).

3  **INTERROGATORY NO. 10:**

4  Describe any complaints or reports you made to any regulatory, licensing, or

5  enforcement agencies regarding Defendants before filing this action.

6  **RESPONSE TO INTERROGATORY NO. 10:**

7       Responding Party incorporates its Preliminary Statement and General

8  Objections set forth above as if they were set forth in full herein.

9       **Ambiguous/Vague:** Responding Party further objects to this Interrogatory

10  on the grounds that it is vague or ambiguous, or both, and would require Responding

11  Party to speculate as to the meaning of the Interrogatory, including but not limited to

12  the meaning of the terms or phrases "[d]escribe," "complaints or reports," and

13  "regulatory, licensing, or enforcement agencies."

14       **Third Party Privacy:** Responding Party further objects to this

15  Interrogatory to the extent it seeks information or documents relating to third parties

16  that are protected by the constitutional right to privacy.

17       Subject to and without waiving the foregoing objections, Responding Party

18  responds as follows:

19       Responding Party incorporates its response to Interrogatory No. 8 as if set

20  forth in full herein.

21  **INTERROGATORY NO. 11:**

22  Identify the person(s) or source of any whistleblower or former employee reports on

23  which you relied in preparing the Complaint.

24  **RESPONSE TO INTERROGATORY NO. 11:**

25       Responding Party incorporates its Preliminary Statement and General

26  Objections set forth above as if they were set forth in full herein.

27

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

**Ambiguous/Vague:** Responding Party further objects to this Interrogatory on the grounds that it is vague or ambiguous, or both, and would require Responding Party to speculate as to the meaning of the Interrogatory, including but not limited to the meaning of the terms or phrases "[i]dentify the person(s) or source," "whistleblower or former employee reports," and "relied in preparing the Complaint."

**Attorney-Client or Other Applicable Privilege:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents protected by the attorney-client privilege or other applicable privilege.

**Work Product Doctrine:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents protected by the work product doctrine.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

As part of its investigation into Defendants' conduct, Responding Party relied on information supplied by, *inter alia*, the following persons, whom Responding Party understands to be former employees of Defendants:

Imelda Julian, Serena Corona, Elida Agatep, Patricia Diaz, Pinky Biag, Elena de Castro, Marina Frid-Gorin, Sherri Armbrester, Robert McCall, Sara Allen, Jared Lewis, Amanda Nelson, Eva Schow, and Elvin Pangan.

**INTERROGATORY NO. 12:**

Identify any expert witnesses or consultants you have retained in this litigation, including the opinions they have formulated.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

**Compound:** Responding Party further objects to this Interrogatory on the grounds that the Interrogatory and/or the defined terms contained within it deal with multiple distinct subjects or topics. Thus, the Interrogatory is compound, conjunctive, or disjunctive, and is therefore improper.

**Ambiguous/Vague:** Responding Party further objects to this Interrogatory on the grounds that it is vague or ambiguous, or both, and would require Responding Party to speculate as to the meaning of the Interrogatory, including but not limited to the meaning of the terms or phrases "expert witness," "consultants," and "retained."

**Premature Expert Disclosure:** Responding Party further objects to this Interrogatory on the grounds that it seeks expert analysis, conclusions, or opinions prior to the deadline for expert disclosures. It is thus improper and unduly burdensome.

**Work Product Doctrine:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents protected by the work product doctrine.

**Attorney-Client or Other Applicable Privilege:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents protected by the attorney-client privilege or other applicable privilege.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

Given Responding Party's understanding of this Interrogatory, none.

**INTERROGATORY NO. 13:**

State the factual basis for your contention that Defendants' patient admissions and discharges were motivated by financial considerations rather than medical necessity.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

21

1516870.1 - 06302.00001

**Ambiguous/Vague:** Responding Party further objects to this Interrogatory on the grounds that it is vague or ambiguous, or both, and would require Responding Party to speculate as to the meaning of the Interrogatory, including but not limited to the meaning of the terms or phrases "Defendants' patient admissions and discharges."

**Premature:** Responding Party further objects to this contention Interrogatory as premature, as discovery in this matter has just commenced and Defendants have yet to respond to Responding Party's discovery requests.

**Third Party Privacy:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents relating to third parties that are protected by the constitutional right to privacy.

**Calls for a Narrative:**  Plaintiff further objects to this interrogatory on the basis that it is designed to elicit a detailed narrative appropriately sought through other methods of discovery.  *See Heilman v. Silva*, 2015 U.S. Dist. LEXIS 48353, *8 (S.D. Cal. Apr. 13, 2015); *Bashkin v. San Diego County*, 2011 U.S. Dist. LEXIS 3439, *59–61 (S.D. Cal. Jan. 13, 2011).

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

Notwithstanding that this Interrogatory is premature, Responding Party contends that Defendants' patient admissions and discharges were driven by financial incentives rather than by the medical needs of the patients.  This contention is supported by the facts set forth in the complaint, including firsthand accounts from former employees, internal communications, and statistical anomalies that collectively demonstrate a deliberate and coordinated scheme designed to maximize Medicare and Medi-Cal reimbursements through manipulation of patient flow.

The scheme was structured around a core financial goal: to exploit Medicare's rules for reimbursing skilled nursing facility (SNF) care by orchestrating

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

repeated "spells of illness."  Under Medicare regulations, a beneficiary is entitled to up to 100 days of SNF coverage per spell of illness, provided they have had a preceding inpatient hospital stay of at least three days.  To restart the clock and trigger a new spell, there must be a break of at least 60 days without Medicare Part A-covered care.  Defendants designed their operations to cycle patients through hospital and SNF admissions to repeatedly trigger these reimbursement periods.

There were numerous instances where patients were admitted to Defendant hospitals not because of clinical necessity, but solely to satisfy Medicare requirements.  Former hospital staff, including registered nurses and licensed vocational nurses, described patients being admitted with falsified or exaggerated diagnoses—particularly COPD exacerbation or altered mental status—that were not supported by clinical evidence.  These diagnoses were routinely used as default justifications for inpatient status, despite patients presenting with minimal or no symptoms.  As an example, a nurse from West Covina Medical Center reported that patients were deliberately held in the hospital until the three-day threshold was met, often delayed by artificial administrative barriers like unavailable doctors to sign discharge orders.

Following the hospital stay, patients were discharged to Rollins Nelson SNFs.  This occurred even when physicians had designated other SNFs for discharge, or when patients did not require skilled nursing care.  In numerous cases, patients were sent to SNFs more than 50 miles from the hospital, bypassing closer and more appropriate facilities.  Former employees noted that case management staff were directed to funnel patients exclusively into Rollins Nelson-affiliated SNFs, with decisions made not on proximity, availability, or patient condition—but on ownership.  These redirections were sometimes justified through misrepresentations to the discharging physicians, including false claims that insurance would not cover the originally selected SNF.

PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S
INTERROGATORIES TO RELATOR, SET ONE

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Once in the SNFs, the financial motivation continued.  Therapists and nurses at multiple facilities described patients being kept for the full 100-day Medicare-covered stay regardless of need.  One occupational therapist recalled following physically healthy patients during "therapy sessions" just to satisfy billing requirements, while another described admitting psychiatric patients with no physical rehabilitation needs simply because they had Medicare coverage.  There were even reports of patients who became violent or unstable in the SNF setting, underscoring the clinical inappropriateness of their placements.

After Medicare Part A coverage was exhausted, Defendants utilized Medi-Cal to fund the required 60-day waiting period before a new Medicare spell could begin.  During this interval, patients—often lacking capacity or advocates—were retained at the SNFs under long-term custodial care.  A large percentage of these patients were dual-eligible for Medicare and Medi-Cal, which enabled the Defendants to collect government reimbursement throughout the entire cycle.

Former staff observed that Defendants appeared to deliberately target patients without family involvement or those experiencing homelessness, knowing they would be easier to retain without resistance.  Indeed, one employee described these patients as being "abused" for their benefits.

When the 60-day gap elapsed, patients were readmitted to Defendant hospitals under similar pretextual conditions, and the cycle began again.  Internal text messages between staff illustrate that these admissions and discharges were not reactive or organic but carefully planned.  Staff coordinated bed availability, requested patients from other facilities, and determined inpatient status based on insurance requirements rather than medical assessments.  In one example, staff explicitly stated that a patient must be admitted as an inpatient "because of the insurance," not because of clinical need.  In another, an employee requested that a doctor "keep [a patient] three days" to meet the Medicare qualification threshold.

PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Further supporting Plaintiff's contention are data analyses demonstrating that Defendants are national outliers in key reimbursement-linked metrics. More than 34% of patients at Rollins Nelson SNFs remained for the full 100 days of Medicare coverage—nearly five times the national average. Over 68% were classified as "still a patient" at the end of their Medicare-covered stay, again far above typical benchmarks. Rollins Nelson patients were many times more likely to experience multiple long spells of illness at the same SNFs, a hallmark of manufactured patient recycling. These patterns are statistically implausible as a result of random variation or normal medical necessity—they are instead consistent with deliberate manipulation to generate revenue.

Finally, the direct involvement of ownership in day-to-day patient flow decisions highlights the financial motivation behind these practices. Vicki Rollins and William Nelson, the named co-owners of the facilities, were not passive investors but active participants. According to former directors and nurses, they held regular meetings to review patient insurance and length-of-stay data, personally overruled medical discharge decisions, pressured staff to admit unqualified patients, and instructed employees to "support" affiliated facilities by transferring patients. Rollins, in particular, was identified as the driving force behind the scheme, managing marketing teams, monitoring inter-facility bed counts, and retaliating against staff who raised concerns.

In totality, these facts form a cohesive narrative: Defendants did not admit, treat, and discharge patients based on what was medically best for them. Instead, patient movement was orchestrated to meet reimbursement rules, fill beds, and extract maximum payment from Medicare and Medi-Cal. The consistency of this pattern across different facilities, staff roles, time periods, and data points supports Responding Party's position that these decisions were motivated by financial considerations, not clinical judgment.

25

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

Discovery in this matter has just commenced, and Responding Party reserves the right to amend or supplement its response to this Interrogatory if additional responsive information becomes available in the future.  Responding Party further reserves the right to amend or supplement its response to this Interrogatory to include additional information only disclosable after entry of an appropriate protective order, to the extent appropriate.

**<u>INTERROGATORY NO. 14</u>:**

Identify each instance where you contend a patient was improperly admitted to a hospital for a three-day stay to qualify for Medicare SNF coverage, including the patient's diagnosis, admission and discharge dates, and treating physician.

**<u>RESPONSE TO INTERROGATORY NO. 14</u>:**

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**Premature:** Responding Party further objects to this contention Interrogatory as premature, as discovery in this matter has just commenced and Defendants have yet to respond to Responding Party's discovery requests.

**Third Party Privacy:** Responding Party further objects to this Interrogatory to the extent it seeks information or documents relating to third parties that are protected by the constitutional right to privacy.

**Premature Expert Disclosure:** Responding Party further objects to this Interrogatory on the grounds that it seeks expert analysis, conclusions, or opinions prior to the deadline for expert disclosures.  It is thus improper and unduly burdensome.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

Notwithstanding that this Interrogatory is premature, Pursuant to Fed. R. Civ. P. Rule 33(d), after entry of an appropriate protective order Responding Party

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  will produce non-privileged documents from which the answer to this Interrogatory

2  can be determined.  To the extent any documents responsive to this Interrogatory are

3  produced, they will be identified as such in Responding Party's upcoming document

4  production(s).

5        Discovery in this matter has just commenced, and Responding Party

6  reserves the right to amend or supplement its response to this Interrogatory if

7  additional responsive information becomes available in the future.  Responding

8  Party further reserves the right to amend or supplement its response to this

9  Interrogatory to include additional information only disclosable after entry of an

10  appropriate protective order, to the extent appropriate.

11  **INTERROGATORY NO. 15:**

12  State the factual basis for your allegation that Defendants provided kickbacks to

13  physicians or other healthcare providers to facilitate patient recycling, including a

14  description of each kickback in detail with the parties, people, or entities involved,

15  dates, and alleged remuneration given and/or received.

16  **RESPONSE TO INTERROGATORY NO.  15:**

17        Responding Party incorporates its Preliminary Statement and General

18  Objections set forth above as if they were set forth in full herein.

19        **Premature:** Responding Party further objects to this contention

20  Interrogatory as premature, as discovery in this matter has just commenced and

21  Defendants have yet to respond to Responding Party's discovery requests.

22        **Compound:** Responding Party further objects to this Interrogatory on the

23  grounds that the Interrogatory and/or the defined terms contained within it deal with

24  multiple distinct subjects or topics.  Thus, the Interrogatory is compound,

25  conjunctive, or disjunctive, and is therefore improper.

26        **Calls for a Narrative:**  Plaintiff further objects to this interrogatory on the

27  basis that it is designed to elicit a detailed narrative appropriately sought through

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S**
**INTERROGATORIES TO RELATOR, SET ONE**

1  other methods of discovery.  *See Heilman v. Silva*, 2015 U.S. Dist. LEXIS 48353,

2  *8 (S.D. Cal. Apr. 13, 2015); *Bashkin v. San Diego County*, 2011 U.S. Dist. LEXIS

3  3439, *59–61 (S.D. Cal. Jan. 13, 2011).

4      **Overbroad/Undue Burden/Oppressive:** Responding Party further objects

5  to this Interrogatory on the grounds that it is overbroad, in that it seeks information

6  about all alleged kickbacks, when a request with a more limited scope would be

7  sufficient to evidence the subject matter of this Interrogatory.  Further, it does not

8  follow that all documents or information falling within the scope of this overbroad

9  Interrogatory bear on a fact, claim, or defense at issue in this case.  Accordingly, a

10  search for all documents or information responsive to this Interrogatory is likely to

11  take an unreasonable amount of time and/or money to fulfill in relation to the

12  reasonable needs of the case.

13      Subject to and without waiving the foregoing objections, Responding Party

14  responds as follows:

15      Notwithstanding that this Interrogatory is premature, Defendants provided

16  improper inducements to physicians and other healthcare providers to facilitate the

17  patient recycling scheme described in the complaint, in violation of the Anti-

18  Kickback Statute and the Stark Law. These inducements were designed to secure a

19  continuous flow of patients into Rollins Nelson hospitals and skilled nursing

20  facilities, regardless of medical necessity, and to ensure their repeated readmission

21  to maximize reimbursement under Medicare and Medi-Cal.  The factual basis for

22  these allegations is derived from interviews with former employees and insiders

23  who had direct knowledge of how Defendants structured and executed these

24  arrangements.

25      Former staff from both hospital and SNF facilities reported that

26  Defendants, acting through their ownership and business development teams,

27  engaged physicians to participate in the recycling of patients between affiliated

28

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S
INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

facilities.  These physicians were incentivized to refer patients—both from within and outside the Rollins Nelson system—to the Defendants' hospitals and SNFs.  In particular, the physicians were asked to refer patients for inpatient hospital stays that would trigger subsequent SNF admissions and, conversely, to refer SNF patients for readmission to affiliated hospitals after the 60-day waiting period necessary to begin a new spell of illness.  These physicians often bypassed standard referral and admission procedures, including admission through the emergency department, and instead used direct admission pathways to place patients into Defendants' hospitals, regardless of whether the patients' conditions justified such admissions.

In exchange for these referrals and for their participation in this closed-loop referral scheme, Defendants provided remuneration in the form of financial and non-financial benefits.  These benefits included payment for continuing medical education (CME) expenses, membership fees in professional associations, and other out-of-pocket costs that physicians would otherwise be expected to pay themselves. Former directors at LA Downtown Medical Center and other facilities specifically recalled that these payments were arranged and authorized by Defendants' ownership, including Vicki Rollins and William Nelson, to maintain physician loyalty and sustain the volume of patient flow necessary to keep the scheme operating at scale.

One former director explained that the business development team at Rollins Nelson, under the oversight of Rollins and Nelson, maintained close relationships with referring physicians and arranged these improper payments as part of ongoing referral arrangements.  The payments were characterized by staff as being routine, recurring, and tied to the volume of referrals.  For example, physicians who regularly referred patients to Rollins Nelson hospitals and SNFs received coverage for CME courses and licensing-related expenses.  These benefits

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

29

1516870.1 - 06302.00001

1  were provided without fair market value analysis and were not part of any legitimate
2  employment or contractual arrangement.

3        Further, Defendants' internal communications reinforce the existence of
4  these improper relationships.  Staff were frequently instructed to prioritize referrals
5  from certain physicians, and beds were held or cleared to accommodate patients
6  coming from those referral sources.  Employees observed that these physicians were
7  treated as preferred partners in the admissions process, and their patients were
8  admitted with little or no scrutiny as to whether they met clinical criteria for hospital
9  or SNF care.

10        While Responding Party anticipates further details may be uncovered
11 through discovery, kickbacks were an integral component of the broader patient
12 recycling scheme alleged here. They were used to secure physician cooperation,
13 ensure patient flow, and perpetuate the fraudulent submission of claims to Medicare
14 and Medi-Cal. These inducements were not disclosed to patients, were not clinically
15 justified, and violated federal prohibitions on remunerative relationships between
16 healthcare providers and referring parties.

17        Discovery in this matter has just commenced, and Responding Party
18 reserves the right to amend or supplement its response to this Interrogatory if
19 additional responsive information becomes available in the future.

20 **INTERROGATORY NO. 16:**

21 Identify each instance where you contend a patient was transferred between a
22 hospital and a SNF in furtherance of an alleged scheme, including the parties,
23 people, entities, or facilities involved, dates of transfers, and medical justification.

24 **RESPONSE TO INTERROGATORY NO.  16:**

25        Responding Party incorporates its Preliminary Statement and General
26 Objections set forth above as if they were set forth in full herein.

27

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

30

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  **Premature:** Responding Party further objects to this contention

2  Interrogatory as premature, as discovery in this matter has just commenced and

3  Defendants have yet to respond to Responding Party's discovery requests.

4  **Compound:** Responding Party further objects to this Interrogatory on the

5  grounds that the Interrogatory and/or the defined terms contained within it deal with

6  multiple distinct subjects or topics. Thus, the Interrogatory is compound,

7  conjunctive, or disjunctive, and is therefore improper.

8  **Ambiguous/Vague:** Responding Party further objects to this Interrogatory

9  on the grounds that it is vague or ambiguous, or both, and would require Responding

10  Party to speculate as to the meaning of the Interrogatory, including but not limited to

11  the meaning of the terms or phrases "a hospital and a SNF," "alleged scheme."

12  **Third Party Privacy:** Responding Party further objects to this

13  Interrogatory to the extent it seeks information or documents relating to third parties

14  that are protected by the constitutional right to privacy.

15  **Overbroad/Undue Burden/Oppressive:** Responding Party further objects

16  to this Interrogatory on the grounds that it is overbroad, in that it seeks information

17  about patient transfers between unspecified hospitals and SNFs in furtherance of any

18  alleged scheme, when a request with a more limited scope would be sufficient to

19  evidence the subject matter of this Interrogatory. Further, it does not follow that all

20  documents or information falling within the scope of this overbroad Interrogatory

21  bear on a fact, claim, or defense at issue in this case. Accordingly, a search for all

22  documents or information responsive to this Interrogatory is likely to take an

23  unreasonable amount of time and/or money to fulfill in relation to the reasonable

24  needs of the case.

25  **Irrelevant:** Responding Party further objects to this Interrogatory on the

26  grounds that it seeks information or documents that are neither relevant nor likely to

27  lead to the discovery of information or documents relevant to the subject matter of

28

1516870.1 - 06302.00001

1  the action.  The Interrogatory is therefore outside the scope of discovery and
2  improper.

3      Subject to and without waiving the foregoing objections, Responding Party
4  responds as follows:

5      Notwithstanding that this Interrogatory is premature, Pursuant to Fed. R.
6  Civ. P. Rule 33(d), after entry of an appropriate protective order Responding Party
7  will produce non-privileged documents from which the answer to this Interrogatory
8  can be determined.  To the extent any documents responsive to this Interrogatory are
9  produced, they will be identified as such in Responding Party's upcoming document
10 production(s).

11      Discovery in this matter has just commenced, and Responding Party
12 reserves the right to amend or supplement its response to this Interrogatory if
13 additional responsive information becomes available in the future.  Responding
14 Party further reserves the right to amend or supplement its response to this
15 Interrogatory to include additional information only disclosable after entry of an
16 appropriate protective order, to the extent appropriate.

17

18 DATED:  April 4, 2025          GIPSON HOFFMAN & PANCIONE
                                  A Professional Corporation

19

20                               By:_____
21                                  DANIEL R. PALUCH
22                                  Attorneys for Plaintiff INTEGRA MED
                                    ANALYTICS LLC
23

24

25

26

27

28
                                      32

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action.  My business address is 1901 Avenue of the Stars, Suite 1100, Los Angeles, California 90067-6002.

I served the document(s) described as **PLAINTIFF INTEGRA MED ANALYTICS LLC's RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE,** on all interested parties in this action by:

☐  placing  ☐  the original  ☐ a true copy thereof enclosed in sealed envelopes addressed as stated below:

PLEASE SEE ATTACHED SERVICE LIST

☐    **BY MAIL:**  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. [F.R.C.P. Rule 5(b)(2)(C); F.R.C.P. Rule 6(d)].

☐    **BY OVERNIGHT COURIER:**    By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [F.R.C.P. Rule 5(b)(2)(F); F.R.C.P. Rule 6(d)].

☒    **BY ELECTRONIC SERVICE:**    By electronically mailing a true and correct copy through Gipson Hoffman & Pancione's electronic mail system to the e-mail address(es) set forth above, or as stated on the attached service list. [F.R.C.P. Rule 5(b)(2)(E); F.R.C.P. Rule 6(d)].

☐    **BY PERSONAL SERVICE:**  I caused such envelope to be delivered to the offices of the addressee.

☐    **BY FAX:**  From Fax No. (310) 556-8945 to the facsimile numbers listed on the attached mailing list.  The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine.  [F.R.C.P. 5(b)(2)(E); F.R.C.P. Rule 6(d)].

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on April 4, 2025, at Los Angeles, California.

_____
Jacqueline Fox

**PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.
INTERROGATORIES TO RELATOR, SET ONE**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1516870.1 - 06302.00001

## SERVICE LIST

| | |
|---|---|
| Eugene Lim | ATTORNEYS FOR: |
| Eugene@umklaw.com | |
| Elizabeth Anne Mitchell | WILLIAM NELSON, AN INDIVIDUAL |
| elizabeth@umklaw.com | CENTINELA GRAND, INC. |
| | CENTURY VILLA, INC. |
| Matthew Donald Umhofer | FLOWER VILLA, INC. |
| matthew@umklaw.com | GLENDORA GRAND, INC. |
| Jenny Mitchell | L.A. DOWNTOWN MEDICAL |
| jenny@umklaw.com | CENTER, INC. |
| | LONG BEACH CARE CENTER, INC. |
| Jon E. Powell | PACIFIC VILLA, INC. |
| jon@umklaw.com | TORRANCE CARE CENTER WEST, |
| Calendaring@umklaw.com | INC. |
| | VILLA DEL RIO CENTER, INC. |
| **Umhofer, Mitchell & King LLP** | VILLA DEL RIO GARDENS, INC. |
| 767 S. Alameda Street, Suite 270 | WEST COVINA MEDICAL CENTER, |
| Los Angeles, CA 90021 | INC. |

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

2

**PROOF OF SERVICE**

1516870.1 - 06302.00001

## VERIFICATION

I, Matt Byrnes, Director at Plaintiff INTEGRA MED ANALYTICS LLC, declare:

I have read the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE** and hereby declare that the responses are true to and correct to the best of my personal knowledge, information, and belief, with the exception of those matters upon which I have relied on the investigation of counsel, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I reserve my right to supplement or revise this statement based upon any subsequently discovered documents or information.

Executed at Austin, Texas on April 4, 2025.

Signed by:

_Matt Byrnes_ _____
10573DB5DD1C40C...  Matt Byrnes

MATT BYRNES' VERIFICATION TO PLAINTIFF'S RESPONSES TO DEFENDANT TORRANCE CARE CENTER WEST, INC.'S INTERROGATORIES TO RELATOR, SET ONE