Exhibit G

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION
Daniel B. Lifschitz (SBN 285068)
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: (310) 556-4660
Facsimile: (310) 556-8945
dlifschitz@ghplaw.com

*Attorneys for Plaintiff*
INTEGRA MED ANALYTICS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel.* INTEGRA MED ANALYTICS LLC,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM NELSON, an individual; VICKI ROLLINS, an individual; TORRANCE CARE CENTER WEST, INC.; GLENDORA GRAND, INC.; CENTINELA GRAND, INC.; LONG BEACH CARE CENTER, INC.; PACIFIC VILLA, INC.; FLOWER VILLA, INC.; CENTURY VILLA, INC.; VILLA DEL RIO GARDENS, INC.; VILLA DEL RIO CENTER INC.; WEST COVINA MEDICAL CENTER, INC.; L.A. DOWNTOWN MEDICAL CENTER, INC.,<br><br>Defendants. | Case No. 2:21-cv-05265-JFW-ROAx<br><br>*Honorable John F. Walter*<br><br>**PLAINTIFF INTEGRA MED ANALYTICS LLC's AMENDED RESPONSES TO DEFENDANT GLENDORA GRAND, INC.'S INTERROGATORIES TO RELATOR, SET ONE** |

*GIPSON HOFFMAN & PANCIONE*
*A PROFESSIONAL CORPORATION*

PLAINTIFF INTEGRA MED ANALYTICS LLC's AMENDED RESPONSES TO DEFENDANT
GLENDORA GRAND, INC.'S INTERROGATORIES, SET ONE

1559794.1 - 06302.00001

1  RESPONDING PARTY:          INTEGRA MED ANALYTICS PROPOUNDING

2  PARTY:                     DEFENDANT GLENDORA GRAND, INC.

3  SET NO.:                   ONE

4

5  <u>**GENERAL RESPONSE AND OBJECTIONS**</u>

6      Plaintiff INTEGRA MED ANALYTICS LLC ("Integra," "Plaintiff," or

7  "Responding Party") provides the following general response and objections as to

8  each and every interrogatory propounded by Defendant GLENDORA GRAND, INC.

9      A.   Plaintiff has not yet completed its discovery and investigation of the facts

10 giving rise to this action, but has made a diligent, good faith effort to obtain all

11 information responsive to these interrogatories within its possession, custody, or

12 control.  Accordingly, these responses are made without prejudice to Plaintiff's right

13 to introduce prior to or the time of trial or otherwise use any additional information

14 it may obtain as a result of its continuing discovery and investigation.

15      B.   Plaintiff assumes no obligation to supplement and amend these responses

16 to reflect later-acquired responsive information beyond those imposed by the

17 Federal Rules of Civil Procedure, the Local Rules of the United States District Court

18 for the Central District of California, and/or applicable case law.

19      C.   Plaintiff objects to Defendant's definitions and instructions to the extent

20 it attempts to impose obligations beyond those required of Plaintiff under the

21 Federal Rules of Civil Procedure and applicable case law.

22      D.   Plaintiff objects to Defendant's interrogatories to the extent it seeks

23 information in violation of the California Code of Civil Procedure, the California

24 Civil Code, the California Evidence Code, or the California Constitution.

25      E.   Plaintiff objects to Defendant's interrogatories to the extent it seeks

26 information protected by the attorney-client privilege, attorney work product

27 doctrine, or any other applicable privilege or protection against disclosure.

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1559794.1 - 06302.00001

F.    Plaintiff objects to Defendant's interrogatories to the extent they seek information that is neither relevant to the claims and defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Any response provided by Defendant is not a concession of its relevance or admissibility.

G.    Plaintiff objects to Defendant's interrogatories to the extent it seeks information not within Plaintiff's possession, custody, or control.

H.    Plaintiff objects to Defendant's interrogatories to the extent they are overly broad, unduly burdensome, or oppressive under the circumstances.

I.    Plaintiff objects to Defendant's interrogatories to the extent it seeks information beyond the operative statutes of limitations in this matter.  Subject to and without waiving any of the foregoing general objections, which are incorporated into each and every individual response below as if set forth in full, Plaintiff responds to Defendant's individual interrogatories as follows:

## AMENDED RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

### INTERROGATORY NO. 11:

State the basis for your contention that Defendants knowingly concealed or failed to return overpayments to Medicare or Medicaid.

### RESPONSE TO INTERROGATORY NO. 11:

Responding Party incorporates its Preliminary Statement and General Objections set forth above as if they were set forth in full herein.

**Premature:** Responding Party further objects to this contention Interrogatory as premature, as discovery in this matter has just commenced and Defendants have yet to respond to Responding Party's discovery requests.

**Compound:** Responding Party further objects to this Interrogatory on the grounds that the Interrogatory and/or the defined terms contained within it deal with

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  multiple distinct subjects or topics.  Thus, the Interrogatory is compound,

2  conjunctive, or disjunctive, and is therefore improper.

3       **Ambiguous/Vague:** Responding Party further objects to this Interrogatory

4  on the grounds that it is vague or ambiguous, or both, and would require Responding

5  Party to speculate as to the meaning of the Interrogatory, including but not limited to

6  the meaning of the terms or phrases "basis" and "overpayments to Medicare or

7  Medicaid."

8       **Third Party Privacy:** Responding Party further objects to this

9  Interrogatory to the extent it seeks information or documents relating to third parties

10  that are protected by the constitutional right to privacy.

11       Subject to and without waiving the foregoing objections, Responding Party

12  is willing to meet and confer to clarify the scope and meaning of this Interrogatory.

13  **AMENDED RESPONSE TO INTERROGATORY NO. 11:**

14       Responding Party incorporates its Preliminary Statement, General

15  Objections, and specific objections as if they were set forth in full herein.

16       Notwithstanding that this Interrogatory is premature and the information

17  being requested by Defendants is more properly sought by request for production

18  and/or deposition, Responding Party responds as follows:

19       Integra performed a quantitative analysis that identified skilled nursing

20  facilities ("SNFs") owned or managed by Vicki Rollins and William Nelson

21  ("Rollins Nelson") as significant outliers within SNF systems nationwide based on

22  multiple criteria. Integra's analysis focused on comparing these "Rollins Nelson

23  SNFs" to other SNFs that also had Medicare patients while excluding swing-bed

24  SNFs (since those are considered to be a different category of SNF facility).

25       Integra's analysis confirmed that Rollins Nelson SNFs had an extremely

26  high number of SNF spells per patient. Specifically, patients at Rollins Nelson SNFs

27  were found to be 30 times more likely than non-Rollins Nelson SNF patients to have

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  three or more long spells of illness, 87 times more likely than non-Rollins Nelson

2  SNF patients to have four or more long spells of illness, and 122 times more likely

3  than non-Rollins Nelson SNF patients to have five or more long spells of illness.

4          Integra's analysis further confirmed that Rollins Nelson SNF patients had

5  abnormally long lengths of stay not seen at other SNF systems nationwide. 34.9% of

6  all Rollins Nelson SNF patients stayed for the maximum allowable 100 days per

7  spell of illness (which is 4.7 times more than the national average), and 68.6% of

8  Rollins Nelson SNF patients remain at their facility at the conclusion of their spell

9  of illness (which is 2.7 times the national average). Integra's analysis demonstrated

10  that, when comparing the probability that a SNF patient would be readmitted to a

11  hospital given the number of days after the prior spell of illness between Rollins

12  Nelson SNFs and non-Rollins Nelson SNFs, there was a clear and distinctive jump

13  in admission for Rollins Nelson SNFs right after the 60-day minimum waiting

14  period for a new spell of illness has elapsed, whereas there was barely any jump for

15  non-Rollins Nelson SNFs. This analysis presented a 95% confidence interval.

16          After identifying Rollins Nelson SNF patients' abnormal number and

17  length of spells, Integra identified that Rollins Nelson SNF patients often came from

18  and went back to Silverlake Medical Center/L.A. Downtown Medical Center and

19  West Covina Medical Center for inpatient visits, both either owned or eventually

20  owned by Rollins and Nelson. Significantly, these patients were not only going from

21  one of the mentioned hospitals into a Rollins Nelson SNF, but were also coming

22  back into the hospitals after the conclusion of their SNF spell, with many patients

23  having a hospital admission source of "SNF/ICF transfer." Integra's analysis

24  revealed that Rollins Nelson patients were admitted to hospitals from SNFs or

25  Intermediate Care Facilities ("ICF") at a rate 10.7 times higher than other SNFs.

26          In tracing the histories of Rollins Nelson SNF patients, Integra observed

27  that Rollins Nelson SNF patients had an extremely high probability of discharge

28

status from the SNF of "Still a patient." Thus, not only were patients staying in Rollins Nelson SNFs after consistently long spells that reached the maximum covered Medicare days, they were also travelling long distances to transfer between Rollins Nelson hospitals and Rollins Nelson SNFs, passing by numerous non-Rollins Nelson SNFs and hospitals. For example, from 2015 through 2019, West Covina Medical Center sent more than 180 patients (11.9% of their SNF referrals) to Centinela Grand, while Centinela Grand sent 30.6% of its SNF transfers to West Covina Medical Center, even though the locations are more than 50 miles apart.

Integra's analysis determined that factors such as clinical acuity levels, comorbidities, and socioeconomic status could not adequately explain the statistics seen at Rollins Nelson SNFs, as there is no reason rehospitalization should be significantly different between 59, 60 and 61 days after a spell of illness. Integra performed numerous additional analysis to control for many of these factors.

Integra's analysis was further supported by interviews conducted with former patients and personnel at Rollins Nelson facilities who claimed as follows:

- That many admitted patients did not have any physical difficulties and did not appear to need to be at those rehabilitative facilities.

- That Rollins Nelson SNF and hospital personnel would request patients from each other in order to fill their respective vacancies.

- That Rollins Nelson fostered a culture focused on abusing the Medicare system, which caused employees to quit (so as to avoid working in an environment where they would be force to behave unethically by the top management) or be terminated for complaining about same.

- That leadership at West Covina Medical Center pressured employees or otherwise arranged for circumstances (such as impeding nurses' abilities to obtain discharge orders from doctors) to keep patients hospitalized for at least three days, even if it was not medically necessary.

PLAINTIFF INTEGRA MED ANALYTICS LLC's AMENDED RESPONSES TO DEFENDANT GLENDORA GRAND, INC.'S INTERROGATORIES, SET ONE

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

- That Rollins Nelson personnel would be sent to the Urgent Care Center at L.A. Downtown Medical Center for the purpose of scouting patients to admit as inpatients to the hospital, and that Vicki Rollins paused this practice from May 11 to May 14, 2021 during inspections by the Joint Commission while otherwise overseeing and approving of same.

- That Rollins Nelson personnel directed by Vicki Rollins and William Nelson would override declinations for impatient admission (to admit patients without qualifying admission diagnoses), discharge orders (to keep patients hospitalized) and selection of non-Rollins Nelson SNFs for discharges (to instead direct the patients to Rollins Nelson SNFs).

- That Rollins Nelson enlisted physicians to sign off on direct admission of patients to Rollins Nelson SNFs in order to bypass the typical admission process through an emergency department when the patient's condition would not otherwise quality for inpatient admission.

- That Rollins Nelson personnel would discuss readmitting patients to hospitals once their SNF insurance coverage ran out so the patient could ultimately be readmitted back to the SNF with renewed coverage.

- That Rollins Nelson personnel would specifically request that patients be admitted for symptoms that would not warrant inpatient treatment.

- That Rollins Nelson personnel would specifically instruct that a patient only be admitted for inpatient treatment upon arrival because of their insurance coverage allowing them to then qualify for SNF treatment.

- That Rollins Nelson personnel would specifically request the amount of time (*e.g.*, three days) that an incoming patient be admitted for.

- That patients would be admitted to Rollins Nelson facilities with diagnoses, only for their care to not be tailored to those diagnoses.

- That patients would have inappropriate changes in condition for non-qualifying events recorded to restart insurance coverage.

The totality of Integra's analysis and investigation thus indicates that Defendants knowingly concealed or failed to return overpayments to Medicare or Medicaid. Discovery is ongoing, and Responding Party reserves the right to amend or supplement its response to this Interrogatory if additional responsive information becomes available in the future. Pursuant to Fed. R. Civ. P. Rule 33(d), Responding Party may additionally produce non-privileged documents from which the answer to this Interrogatory can be determined. Responding Party may additionally provide information responsive to this Interrogatory via deposition.


DATED:  October 31, 2025          GIPSON HOFFMAN & PANCIONE
                                  A Professional Corporation


                                  By:_____
                                      DANIEL B. LIFSCHITZ
                                      Attorneys for Plaintiff INTEGRA MED
                                      ANALYTICS LLC

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1559794.1 - 06302.00001

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1

## PROOF OF SERVICE

2

3
    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action.  My business address is 1901 Avenue of the Stars, Suite 1100, Los Angeles, California 90067-6002.

4

5

6
On October 31, 2025, I served the document(s) described as **PLAINTIFF INTEGRA MED ANALYTICS LLC's AMENDED RESPONSES TO DEFENDANT GLENDORA GRAND, INC.'S INTERROGATORIES, SET ONE,** on all interested parties in this action by:

7

8
☐  placing  ☐  the original  ☐ a true copy thereof enclosed in sealed envelopes addressed as stated below:

9
PLEASE SEE ATTACHED SERVICE LIST

10

11

12

13
☐    **BY MAIL:**  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. [F.R.C.P. Rule 5(b)(2)(C); F.R.C.P. Rule 6(d)].

14

15

16
☐    **BY OVERNIGHT COURIER:**   By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [F.R.C.P. Rule 5(b)(2)(F); F.R.C.P. Rule 6(d)].

17

18

19
☒    **BY ELECTRONIC SERVICE:**   By electronically mailing a true and correct copy through Gipson Hoffman & Pancione's electronic mail system to the e-mail address(es) set forth above, or as stated on the attached service list. [F.R.C.P. Rule 5(b)(2)(E); F.R.C.P. Rule 6(d)].

20
☐    **BY PERSONAL SERVICE:**  I caused such envelope to be delivered to the offices of the addressee.

21

22

23
☐    **BY FAX:**  From Fax No. (310) 556-8945 to the facsimile numbers listed on the attached mailing list.  The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine.  [F.R.C.P. 5(b)(2)(E); F.R.C.P. Rule 6(d)].

24
    I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

25
    Executed on October 31, 2025, at Los Angeles, California.

26

27
_____
Daniel B. Lifschitz

28

9

1559794.1 - 06302.00001

## SERVICE LIST

| | |
|---|---|
| Eugene Lim<br>Eugene@umklaw.com<br>Elizabeth Anne Mitchell<br>elizabeth@umklaw.com<br>Matthew Donald Umhofer<br>matthew@umklaw.com<br>Jenny Mitchell<br>jenny@umklaw.com<br>Jon E. Powell<br>jon@umklaw.com<br>Calendaring@umklaw.com<br><br>**Umhofer, Mitchell & King LLP**<br>767 S. Alameda Street, Suite 270<br>Los Angeles, CA 90021 | ATTORNEYS FOR:<br><br>WILLIAM NELSON, AN INDIVIDUAL<br>CENTINELA GRAND, INC.<br>CENTURY VILLA, INC.<br>FLOWER VILLA, INC.<br>GLENDORA GRAND, INC.<br>L.A. DOWNTOWN MEDICAL<br>CENTER, INC.<br>LONG BEACH CARE CENTER, INC.<br>PACIFIC VILLA, INC.<br>TORRANCE CARE CENTER WEST,<br>INC.<br>VILLA DEL RIO CENTER, INC.<br>VILLA DEL RIO GARDENS, INC.<br>WEST COVINA MEDICAL CENTER,<br>INC. |

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

PROOF OF SERVICE

1559794.1 - 06302.00001