1  UMHOFER, MITCHELL & KING LLP
2  Matthew Donald Umhofer (SBN 206607)
   Elizabeth A. Mitchell (SBN 251139)
3  Eugene Lim (SBN 318348)
   767 S. Alameda St., Suite 270
4  Los Angeles, California 90021
   Telephone:   (213) 394-7979
5  Facsimile:    (213) 529-1027
   matthew@umklaw.com
6  elizabeth@umklaw.com
   eugene@umklaw.com
7
   *Attorneys for Defendants*
8
   GIPSON HOFFMAN & PANCIONE
9  Daniel B. Lifschitz (SBN 285068)
   1901 Avenue of the Stars, Suite 1100
10 Los Angeles, California 90067-6002
   Telephone: (310) 556-4660
11 Facsimile: (310) 556-8945
   dlifschitz@ghplaw.com
12
   *Attorney for Relator*
13
                    **UNITED STATES DISTRICT COURT**
14
                    **CENTRAL DISTRICT OF CALIFORNIA**
15

16 | UNITED STATES OF AMERICA and | Case No. 2:21-cv-05265-JFW-PVCx |
17 THE STATE OF CALIFORNIA, *ex rel.*
   INTEGRA MED ANALYTICS LLC,       **DISCOVERY MATTER**
18
              Plaintiff,             **NOTICE OF MOTION AND**
19                                   **SUPPLEMENTAL JOINT**
           v.                        **STIPULATION RE DEFENDANTS'**
20                                   **MOTION TO COMPEL AND**
   WILLIAM NELSON, an individual;    **REQUEST FOR ATTORNEY'S**
21 VICKI ROLLINS, an individual;     **FEES AND COSTS**
   TORRANCE CARE CENTER WEST,
22 INC.; GLENDORA GRAND, INC.;       Judge:          Pedro V. Castillo
   CENTINELA GRAND, INC.; LONG       Courtroom:      590
23 BEACH CARE CENTER, INC.;
   PACIFIC VILLA, INC.; FLOWER       Discovery Cutoff: March 23, 2026
24 VILLA, INC.; CENTURY VILLA,       Pretrial Conf.:  July 17, 2026
   INC.; VILLA DEL RIO GARDENS,      Trial Date:      August 4, 2026
25 INC.; VILLA DEL RIO CENTER
   INC.; WEST COVINA MEDICAL         Hearing Date:    January 13, 2026
26 CENTER, INC.; L.A. DOWNTOWN       Time:            10:00 a.m.
   MEDICAL CENTER, INC.,
27                                   Location:    255 East Temple Street,
              Defendants.                         5th Floor
28                                                Los Angeles, CA 90012

---

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTORY STATEMENTS .................................................................. 1

    A.    Defendants' Introduction ............................................................ 1

    B.    Integra's Introduction ................................................................ 4

II.   DEFENDANTS' DISCOVERY DISPUTES WITH INTEGRA.......................... 7

    A.    Issue No. 4: INTEGRA'S BLANKET WORK-PRODUCT
           ASSERTION AND DEFICIENT PRIVILEGE LOG ............................... 7

        1.    Defendants' Contentions and Authorities......................... 7

             a.    Integra Bears the Burden to Prove Work-Product
                 Protection and Has Not Satisfied It. ....................... 7

             b.    Integra's "Business-of-Litigation" Theory Collapses
                 the Doctrine into Blanket Immunity and Offends
                 Its Purpose. ................................................... 11

             c.    Integra's Pre-Suit Investigations Are Ordinary-Course
                 Business Unless and Until a Definitive Decision to Sue. .... 13

             d.    Integra's Amended Log Is Deficient, Violating This
                 Court's Order and Waiving Privilege................................ 14

             e.    Defendants Have Substantial Need; Work Product Is
                 Not Absolute. ...................................................... 16

             f.    Integra's Discovery Misbehavior Warrants an Award of
                 Attorney Fees and Costs to Defendants. ............................. 17

         2.    Integra's Contentions and Authorities............................. 17

             a.    Integra's Withheld Documents Meet the Definition of
                 Protected Work-Product. ....................................... 18

             b.    Integra's Work Product Was Indisputably Created
                 "Because Of" Anticipated Litigation. ................................22

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO
COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

c.   Defendants' "Ordinary-Course of Business" Argument
is Foreclosed By Binding Ninth Circuit Precedent. ............24

d.   Integra's Demonstration of Privilege Complies With
Both Rule 26 and This Court's Prior IDC Order. ...............26

e.   Defendants Have Not Established Substantial Need to
Override Integra's Work Product Protection. ......................29

f.   Defendants Have Established Neither Discovery
Misbehavior Nor an Entitlement to Fees and Costs............31

III.   REQUEST FOR ATTORNEY FEES AND COSTS ..........................32

A.   Defendants' Contentions and Authorities .................................32

B.   Integra's Contentions and Authorities ......................................32

IV.   CONCLUSION ...................................................................................33

A.   Defendants' Final Statement and Requested Relief.................33

B.   Integra's Final Statement and Requested Relief......................34

*JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL
AND REQUEST FOR SANCTIONS*

1    PLEASE TAKE NOTICE that on January 13, 2026 at 10:00 a.m., or as soon

2  thereafter as the matter may be heard, in the courtroom of the Honorable Pedro V.

3  Castillo at the Roybal Federal Building and United States Courtroom, 255 E. Temple

4  St., Los Angeles California, Defendants William Nelson; Vicki Rollins; Torrance Care

5  Center West, Inc.; Glendora Grand, Inc.; Centinela Grand, Inc.; Long Beach Care

6  Center, Inc.; Pacific Villa, Inc.; Flower Villa, Inc.; Century Villa, Inc.; Villa Del Rio

7  Gardens, Inc.; Villa Del Rio Center Inc.; West Covina Medical Center, Inc.; and L.A.

8  Downtown Medical Center, Inc. (collectively "Defendants"), shall and hereby do move

9  the Court pursuant to Federal Rule of Civil Procedure 37 to compel responses to

10 discovery requests withheld by Relator Integra Med Analytics LLC ("Integra"), and

11 for attorneys' fees and costs. This Motion is based on this Notice of Motion, the

12 accompanying Joint Stipulation of Defendants, all declarations and exhibits thereto,

13 and other written and/or oral arguments that may be presented to the Court.

14

15 Dated: January 6, 2026          Respectfully submitted,

16

17                                 */s/ Eugene Lim*
                                   UMHOFER, MITCHELL & KING, LLP
18                                 Matthew Donald Umhofer
                                   Elizabeth A. Mitchell
19                                 Eugene Lim
20                                 *Attorneys for Defendants*

21

22

23

24

25

26

27

28

iv

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO*
*COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

**STIPULATION FOR DETERMINATION OF DISCOVERY DISPUTE**

**I.    INTRODUCTORY STATEMENTS**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37, Defendants William Nelson, et al. ("Defendants") and Relator Integra Med Analytics, LLC ("Integra" or "Relator") submit this Joint Stipulation in Support of Defendants' Motion to Compel and Request for Sanctions ("Motion"). The parties met and conferred in good faith pursuant to Local Rule 37-1 in an attempt to resolve their disputes but were unable to resolve them fully. (Declaration of Eugene Lim ("Lim Decl.") ⁋ 2.)

**A.    Defendants' Introduction**

Integra is a commercial data-mining enterprise that specializes in the business of litigation. It operates by identifying statistical outliers in public datasets, pairing them with selective anecdotes from former employees, and initiating False Claims Act ("FCA") litigation for profit. Integra is not a traditional whistleblower; it is a commercial venture that builds lawsuits from the outside in. In this case, it alleges fraud against community-based healthcare providers—including those serving the unhoused, elderly, and mentally ill—without having reviewed a single patient file. After a three-year investigation, the United States declined to intervene, notwithstanding Integra's purported proprietary methods.

Defendants now seek the discovery necessary to test the foundation of these allegations. Specifically, Defendants seek the internal deliberations that reveal the selective nature of Integra's claims. This includes the emails, "Slack chats" (which are the company's internal, real-time messaging communications used for business-critical operations), memoranda, and witness interviews, including those involving non-attorney Damon Crim, where staff discussed which data points to highlight and which to suppress. These records will prove that Integra's statistics are at odds with the clinical reality of Defendants' patient population and that its claims are barred by the public disclosure bar. Integra's primary defense is that its entire business model is

1

a protected secret. At bottom, its position boils down to an untenable premise: because its business is litigation, every corporate record it creates is privileged.

That cannot be the law. If it were, any entity could immunize every one of its internal deliberations from discovery simply by declaring itself a litigation business. The work-product doctrine cannot be stretched so thin. It is a precise shield for trial preparation; it is not a general cloak for a business enterprise. If a company's ordinary course of business is mining data with the hope of manufacturing claims for profit, those records are commercial assets, not the privileged thoughts of counsel. The Ninth Circuit's "because of" litigation test is more demanding than Integra's theory suggests. It requires more than a profit motive or the routine identification of a potential FCA violation; it requires a showing that the documents would not have been created in substantially similar form but for the prospect of a specific legal claim. In this context, Integra's analytics are not legal strategy, they are the commercial feasibility studies of a litigation aggregator. By claiming a blanket privilege over its entire corporate existence, Integra seeks to shield the very methodologies Defendants need to effectively defend themselves.

To date, Integra has produced exactly *zero* communications, more than ten months after receiving these requests. This total blackout is legally indefensible. Integra's own privilege log reveals the central flaw in its theory: for 16 months—from May 2019 to September 2020—it conducted its investigation without a single attorney appearing on its log (Integra counsel, Jason Collins and Jeremy Wells, first appear on September 3, 2020). Yet, Integra claims that every document from day one is protected "work product." Integra cannot retroactively apply a legal privilege to over 460 days of pre-counsel activity.

Integra's refusal to produce these records is not an isolated oversight, but the culmination of a year-long pattern of recalcitrance. As demonstrated by the following chronology, Integra has repeatedly ignored deadlines and violated Court directives:

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

| Chronology of Discovery Misconduct[1] | | |
|---|---|---|
| Date | Event/Deadline | Integra's Response/Conduct |
| March 5, 2025 | Discovery Requests served. | No substantive documents produced for months; no communications produced. |
| Sept. 12, 2025 | Post-conferral RFP Deadline. | Zero communications produced; asserted blanket privilege; omitted witness interviews. |
| Sept. 19, 2025 | Integra's self-imposed deadline. | Zero communications or updated log produced. |
| Oct. 20, 2025 | Deadline for specific logs. | Zero communications produced; date passed without production or communication. |
| Dec. 3, 2025 | Court Order (Dkt. 129) | The Court ordered Integra to amend log to substantiate privilege claims or face waiver. |
| Dec. 10, 2025 | Court-Ordered Deadline. | Produced amended log with the same vague descriptions previously rejected. |

Integra's conduct has forced a needless expenditure of resources by both the Defendants and this Court. Having failed to explain how legal work happens without lawyers—and having ignored the Court's explicit warning in the December 3 Order[2]—Integra has waived its claims of privilege. This Court should compel immediate production of all withheld internal communications and award fees and costs incurred in bringing this motion.[3]

---

[1] For months, Integra also resisted producing its "Source Code" used to generate its fraud statistics, relenting only under threat of motion practice. (Lim Decl. ¶ 4.) The present dispute is no different. Integra seeks to maintain a unilateral advantage where it relies on its internal vetting to prove its claims but refuses to produce the records that would allow Defendants to test that vetting.

[2] This Court issued a clear directive, for Integra to amend its privilege log entries by December 10, 2025, with "enough information for the Court and Defendants to determine whether Relator is appropriately invoking the work product doctrine." (Order, Dkt. No. 129.), "caution[ing] that . . . [t]he failure to substantiate privilege in a log also may waive the privilege." (Id. (internal citation omitted)).

[3] A copy of the operative scheduling order is attached as Exhibit A to the Lim Declaration. A copy of Integra's Amended Privilege Log is attached as Exhibits B.

3

### B.    Integra's Introduction

While Defendants' introduction is replete with various inaccuracies and mischaracterizations, which Integra rebuts in turn below, Defendants are correct that Integra's business model is predicated on discovering bad actors in the healthcare industry and bringing them to justice in a court of law.  In this business, Integra conducts itself with a requisite degree of legal sophistication.  All of Integra's research and analysis is performed pursuant to guidance from, and with the express purpose of developing work product for, its outside counsel responsible for preparing and initiating its cases. (Declaration of Dammon Crim ("Crim Decl.") ¶¶ 2, 4.)

So too here.  Integra's present case against Defendants is based on its analysis of data provided by the United States Centers for Medicare & Medicaid Services and interviews with former employees of Defendants, in each case looking for evidence of legally actionable false claims for reimbursement. *United States of Am. ex rel. Integra Med. Analytics LLC v. Nelson*, No. CV 21-5265-JFW(RAOx), 2025 WL 3724871, 2025 U.S. Dist. LEXIS 15258, at *3, 7 (C.D. Cal. Jan. 27, 2025) ("*Nelson*").

Integra performed this pre-suit diligence in anticipation of litigation against the subjects of its targeted research, and solely for that purpose.  Under familiar black-letter legal principles, that diligence is necessarily protected work product.  *See United States v. Nobles*, 422 U.S. 225, 254 n.16 (1975) (Fed. R. Civ. Proc. 26 "afford[s] protection to documents by a party's 'representative,' whether a lawyer or not."); *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907, 909-10 (9th Cir. 2004) ("a document should be deemed prepared in anticipation of litigation and thus eligible for work product protection under Rule 26(b)(3) if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation"); *McKenzie v. Walgreen Co*, No. 2:12-cv-0044-KJD-NJK, 2013 U.S. Dist. LEXIS 22963, at *10-12 (D. Nev. Feb. 19, 2013) ("[B]ecause these documents were created in

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

1  anticipation of litigation, as discussed above, and for the purpose of assisting in the

2  [party's case], they are work product and are thus privileged documents").[4]

3      Defendants also fail to justify their claimed need for these materials. "Under

4  Federal Rule of Civil Procedure 26(b)(3)(A)(ii), a party can obtain discovery of work

5  product only on a showing of 'substantial need' and an inability to obtain equivalent

6  information from other sources." *MKB Constructors v. Am. Zurich Ins. Co*., No. C13-

7  0611JLR, 2014 U.S. Dist. LEXIS 78883, at *8-9 (W.D. Wash. May 27, 2014). Integra

8  has provided Defendants with every piece of data it used to reach the conclusions in its

9  Complaint—the entire CMS dataset ***plus*** Integra's proprietary source code, related

10  files, ***and*** "how to use" instructions for the source code—such that if Defendants

11  contend Integra's analysis was "selective" in nature, there is no reason they cannot

12  show that via the data itself. *See Nat.-Immunogenics Corp. v. Newport Trial Grp*., No.

13  8:15 CV-02034-JVS (JCGx), 2018 U.S. Dist. LEXIS 228114, at *44 (C.D. Cal. Apr.

14  23, 2018) (rejecting motion to compel work product materials "not vital for [a party] to

15  prove its case"). There is no "substantial need" to produce documentation of Integra's

16  pre-suit data analysis when Defendants can recreate ***the same analyses*** on their own.

17      Unsurprisingly, Defendants would prefer to obtain that information more easily.

18  But doing so invades the analyses and mental impressions of Integra and its counsel

19  which underlie Integra's decision to bring this case. Such work product "is virtually

20  undiscoverable." *MKB Constructors*, 2014 U.S. Dist. LEXIS 78883, at *9 (quoting

21  *Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 n.3 (9th Cir. 2014)).

22      Defendants next resort to presenting a falsified "chronology" under which

23  Integra has purportedly produced zero communications to Defendants (which is false)

24

25  ─────────────

26  [4] Critically, this protection does not dissipate merely because whether to bring litigation is itself a business decision. *See Bos. Ret. Sys. v. Uber Techs., Inc*., No. 19-cv-06361-RS (DMR), 2024 U.S. Dist. LEXIS 27976, at *16-17 (N.D. Cal. Feb. 16,

27  2024) ("[A] document created because of anticipated litigation … does not lose work-product protection merely because it is intended to assist in the making of a business

28  decision influenced by the likely outcome of the anticipated litigation.") (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

and conveyed nothing to Defendants regarding its work product objections between March 5, 2025 and September 12, 2025.[5] Defendants have glaringly omitted Integra's very first conferral letter to them dated May 28, 2025, wherein Integra asserted and explained the basis of its global work product objections in connection with both disclosures to the government and its own internal communications. Integra expressly informed Defendants in this letter that it would not be producing its analysts' "appraisal of factual evidence" by revealing how they reached their conclusions, negating any claims as to surprise or prejudice by Integra's positions.[6]

There is also nothing defective about Integra's privilege log, which "provides adequate explanations for what each withheld document contains, who created it, who sent it, who received it, and the date of sending." *Haptic, Inc. v. Apple, Inc*., No. 24-cv-02296, 2025 U.S. Dist. LEXIS 105445, at *19 (N.D. Cal. June 3, 2025). "While a more detailed privilege log in the first place [may] have been preferable, the log combined with the supporting declaration provides enough information to assess [Integra's] privilege claims." *Wilmuth v. Amazon.com Inc*., No. 2:23-cv-01774-JNW, 2025 U.S. Dist. LEXIS 215225, at *7 (W.D. Wash. Oct. 31, 2025). The alleged transgressions, which are insufficiently supported, come nowhere close to justifying waiver.

In sum, Defendants have failed to undermine the application of the work product doctrine, failed to establish a basis for production despite that application, and failed to justify a finding of the doctrine's waiver. Defendants' supplemental motion to compel should be denied and Integra awarded its fees and costs for opposing same.

---

[5] Contrary to Defendants' claims, Integra did not refuse to produce its source code, but offered to make it available to Defendants' experts for testing in a proper controlled environment suitable for trade secret protections. After Defendants' counsel belatedly clarified that the data upon which Integra based its claims was completely unreadable to their experts without Integra's code, Integra not only agreed to produce the code in its entirety, but provided Defendants with a "how to" guide for manipulating same.
[6] A copy of this letter is attached hereto as Exhibit J.

6

## II.    DEFENDANTS' DISCOVERY DISPUTES WITH INTEGRA

### A.    Issue No. 4: INTEGRA'S BLANKET WORK-PRODUCT ASSERTION AND DEFICIENT PRIVILEGE LOG

#### 1.    Defendants' Contentions and Authorities

Integra claims its business is litigation. From that sweeping premise, it draws the radical conclusion that everything it does is work product. But that cannot be right. The work-product doctrine is an exception to the rule of broad discovery, not a shroud for a company's entire business model. The doctrine protects materials prepared "because of" anticipated litigation, not the routine output of a company's core operations. Specifically, it does not immunize the internal communications where business leads are vetted and commercial strategies are hashed out. Integra's privilege log—short, vague, and conspicuously attorney-free for 16 months—fails to substantiate this overbroad claim. Moreover, by refusing to provide the granular detail required by the Federal Rules for these communications, it defies this Court's express order. In the face of such persistent non-compliance, waiver follows. Full production of both the underlying analytics and the internal discussions regarding them is essential for the defense to test the very theories Integra has put at issue.

#### a.    Integra Bears the Burden to Prove Work-Product Protection and Has Not Satisfied It.

The reason is simple. Work product is a *qualified* immunity, not a blanket shield. Fed. R. Civ. P. 26(b)(3). "The party claiming work product immunity has the burden of proving the applicability of the doctrine." In re Syncor ERISA Litig., 229 F.R.D. 636, 644 (C.D. Cal. 2005). This is no mere formality; it must make a "clear showing" with competent evidence. Green v. Baca, 226 F.R.D. 624, 652 (C.D. Cal. 2005) ("To carry that burden, Defendant must make a 'clear showing' that the asserted objection applies. A 'blanket claim' as to the applicability of the work product doctrine does not satisfy the burden of proof.") (citations omitted); Disidore v. Mail Contractors of Am., Inc., 196 F.R.D. 410, 413 (D. Kan. 2000) ("[T]he party asserting work product

7

protection, . . . has the burden of establishing that the work product doctrine applies."). Integra, however, attempts to flip this burden on its head, asking the Court to assume that every email, Slack message, and other internal communications are privileged simply because Integra might eventually decide that suing Defendants would turn a profit.

The Ninth Circuit's test is clear. Protection attaches *only* if materials were prepared "in anticipation of litigation" or prepared "by or for another party or by or for that other party's representative." United States v. Richey, 632 F.3d 559, 567 (9th Cir. 2011) (cleaned up). Courts apply the "because of" standard, considering "the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." Id. at 568 (cleaned up). "When there is a true independent purpose for creating a document, work product protection is less likely[.]" In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf), 357 F.3d 900, 908 (9th Cir. 2004). The question is not whether a document might eventually be useful in a courtroom, but whether it was born of a legal necessity rather than a commercial one.

Even if litigation is an ever-present possibility, that is not enough to trigger the doctrine's protections. "The mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992) (cleaned up). "The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Id.; Transamerica Life Ins. Co. v. Richards, No. CV 22-0284, 2024 WL 4866693, at *10 (C.D. Cal. Apr. 29, 2024) (J. Castillo) ("The phrase 'in anticipation of litigation' has both temporal and motivational components.") (citation omitted).

Integra fails this test at every turn. Its business is data mining for *qui tam* actions. Investigations are its ordinary course, the very engine of its profit-seeking

8

enterprise is deciding if a lead is worth it. These materials exist for commercial viability, not litigation preparation**.** They would look precisely the same without a suit because they are the prerequisite for Integra's business decision to pursue a claim in the first place. See Richey, 632 F.3d at 568 ("Nor is there evidence in the record that Richey would have prepared the appraisal work file differently in the absence of prospective litigation."); Torf, 357 F.3d at 908 ("The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered."). Internal communications discussing the commercial viability of a potential claim are the quintessence of ordinary course for a firm like Integra.

Common sense confirms this. Analogous industries provide the necessary roadmap, such as with insurers. They investigate claims routinely, but they cannot shield files or internal adjuster communications unless litigation is imminent and real. Moe v. Sys. Transp., Inc., 270 F.R.D. 613, 624 (D. Mont. 2010) ("[i]t is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation. . . . [I]nsurers are always 'in the business of conducting, investigating and evaluating claims against its policies.'"). "The requisite anticipation requires 'more than the mere possibility of litigation[.]'" Id. (citing Heath v. F/V ZOLOTOI, 221 F.R.D. 545, 549 (W.D. Wash. 2004)). Integra is no different. Its "business" is statistical arbitrage—running regressions to find "profitable" *qui tam* leads. Running these numbers and discussing their yield is its day-to-day operation. If Integra's theory were law, every data-mining firm could immunize its entire product development and all internal strategy sessions simply by saying it hopes to sue someone. This would turn the work-product doctrine into a general-purpose secrecy act for the litigation-finance industry.

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

1   Even dual-purpose documents lose protection if business drives them. <u>United</u>

2   <u>States v. Frederick</u>, 182 F.3d 496, 501 (7th Cir. 1999) ("[A] dual-purpose document—

3   a document prepared for use in preparing tax returns *and* for use in litigation—is not

4   privileged; otherwise, people in or contemplating litigation would be able to invoke, in

5   effect, an accountant's privilege, provided that they used their lawyer to fill out their

6   tax returns."). Integra's analytics assess profitability first. Litigation is contingent on

7   those very findings. <u>See</u> <u>Torf</u>, 357 F.3d at 908 ("When there is a true independent

8   purpose for creating a document, work product protection is less likely . . . .") (citation

9   omitted). Here, the internal communications are the connective tissue of the business;

10  they are not the private mental impressions of a lawyer preparing for trial.

11   Integra's own log is the most powerful witness against its theory. It purports to

12  shield documents starting in May 2019, yet the log is vacuously empty of any attorney

13  involvement for the ensuing sixteen months. Entries like ID 788 ("patient recycling"

14  slides) and ID 701/702 ("discussing RN financials") do not reflect the mental

15  impressions of counsel; they bear the unmistakable hallmarks of a commercial

16  enterprise vetting the profitability of its next product. (Lim Decl. Ex. B.) Absent the

17  active guidance of counsel providing contemporaneous legal direction, these

18  documents are the tradecraft of a market analyst, not the protected preparation of a

19  litigator. The work-product doctrine requires a "representative" acting in a legal

20  capacity, not a data-miner acting in a commercial one. <u>See</u> <u>Transamerica</u>, 2024 WL

21  4866693, at *10–11 ("[T]he Court will not assume or presume that litigation was a

22  foregone conclusion . . . . [M]ore than a remote possibility of litigation is required.").

23   The most telling indication of whether a document is prepared for litigation is

24  whether an attorney was involved. While the presence of counsel is not a strict

25  requirement, "[t]he fact that . . . withheld documents do not involve any attorneys is a

26  useful sign, . . . that they are not protected work product." <u>Phoenix Techs. Ltd. v.</u>

27  <u>VMware, Inc.</u>, 195 F. Supp. 3d 1096, 1101–02 (N.D. Cal. 2016) (citation omitted).

28  Here, the gap is not a few days or weeks, it is over 460 days. From May 2019 (Log ID

10

788) to September 2020, Integra's log reveals a flurry of activity: "patient recycling analytics," "RN financials," and "discussing next steps in investigation of RN." (Lim Decl. Ex. B.) Yet no attorney is listed as a sender or recipient. (<u>Id.</u>) Integra claims these materials were created "because of" litigation, but for 16 months, there was no "representative" of the party acting in a legal capacity to direct the work. Integra was effectively acting in the dark to see if they had a case. That is business intelligence and market research, not protectable work product.

Post-2020 entries fare no better. Many describe factual discussions, like ID 1354/667 (5/19/2021 email on "discussion of RN financials."). (Lim Decl. Ex. B.) But facts are not privileged. <u>United States ex rel. Stone v. Rockwell Int'l Corp.</u>, 144 F.R.D. 396, 401 (D. Colo. 1992) ("Where, as here, the work product in question merely consists of a document reciting factual information provided by the client, the necessity for protection from discovery is weak, at best."). Integra cannot immunize the internal chatter regarding the facts it intends to use against Defendants merely by laundering those emails through a privilege log.

### b. Integra's "Business-of-Litigation" Theory Collapses the Doctrine into Blanket Immunity and Offends Its Purpose.

Integra contends that its business model inherently anticipates litigation. So, it argues all of its communications are protected. But if litigation is the business, then the documents created to run that business are ordinary course *by definition*. Ultimately, Integra's position attempts to transform a narrow evidentiary doctrine into a blanket immunity, placing its commercial operations beyond the reach of the Federal Rules.

Work product promotes the adversary system by shielding "an attorney's mental impressions and opinions." <u>Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.</u>, 881 F.2d 1486, 1494 (9th Cir. 1989). It is not a cloak for a business enterprise. To allow Integra to shield its internal communications about its core product would be to permit a black box litigation model where the plaintiff's motives and methods are forever beyond the reach of the truth-seeking process. <u>See</u> <u>Transamerica</u>, 2024 WL 4866693,

at *10. ("[M]ore than a remote possibility of litigation is required."); <u>see also</u> <u>cf.</u> <u>Nat'l Union Fire Ins.</u>, 967 F.2d at 984 ("[B]ecause litigation is an ever–present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind.").

The policy undergirding the work-product doctrine recoils from such an outcome. While it prevents "exploit[ing]" an opponent's preparation, <u>Holmgren v. State Farm Mut. Auto. Ins. Co.</u>, 976 F.2d 573, 576 (9th Cir. 1992) (citation omitted), its sanctuary is reserved for the lawyer's mental impressions—not a company's communications regarding its data-crunching and profit analysis. Here, the asymmetry is perverse: Integra weaponizes Defendants' own public data while cloaking its internal deliberations on how to manipulate it. That is not trial preparation; it is a proprietary shroud that subverts the adversarial process and harms fairness. <u>See JumpSport, Inc. v. Jumpking, Inc.</u>, 213 F.R.D. 329, 339 n.9 (N.D. Cal. 2003) (considering "fairness" in its analysis).

Even imminent litigation does not automatically protect work performed in the ordinary course of business. <u>Carlson v. Northrop Grumman Corp.</u>, 290 F. Supp. 3d 867, 873 (N.D. Ill. 2018) ("Even if litigation is imminent, the work-product doctrine does not cover documents prepared in the ordinary course of business rather than for litigation purposes."). Integra's analytics and the accompanying internal emails were not a response to a dispute; they were the product being developed. Other courts have found no blanket work product protection applies in similar circumstances. <u>See, e.g.</u>, <u>Procter & Gamble Co. v. Ultreo, Inc.</u>, 574 F. Supp. 2d 334, 337–38 (S.D.N.Y. 2008) ("Ultreo has not met its burden to show that the studies 'would not have been prepared in substantially similar form but for the prospect of that litigation.' . . . [C]linical and laboratory studies were a core element of Ultro's business plan.") (citation omitted); <u>Neuder v. Battelle Pac. Nw. Nat'l Lab.</u>, 194 F.R.D. 289, 296 (D.D.C. 2000) ("The magistrate judge has already determined that the discussions and deliberations of the PARC meetings are not privileged because the PARC's primary function was to make

12

a business decision, not to obtain legal advice."); see also cf. United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 30–31 (1st Cir. 2009) (work-product doctrine "is not a privilege designed to help the lawyer prepare corporate documents or other materials prepared in the ordinary course of business."); Stamps v. Town of Framingham, 38 F. Supp. 3d 134, 145 (D. Mass. 2014) (finding disclosure of notes would not affect the district attorney's ability "to formulate legal theories and prepare cases."). Discovery rules do not permit Integra to treat the courthouse as a proprietary laboratory where the inputs, and the internal discussions about those inputs, are kept secret.

**c.    Integra's Pre-Suit Investigations Are Ordinary-Course Business Unless and Until a Definitive Decision to Sue.**

Integra must pinpoint when litigation became real. Before that, its materials are business materials. See Schmidt v. Cal. State Auto. Ass'n, 127 F.R.D. 182, 184 (D. Nev. 1989) ("The connection to possible litigation of the material being prepared must be sufficiently concrete so as to provide assurance that the routine claims processing material prepared in the ordinary course of the insurance business will not be immunized from discovery."). Integra's log shows no such point. There is no litigation hold. No suit decision evidence. While Integra's counsel claims it received solely oral directions, it has provided no proof. (Lim Decl. ₧ 3.); DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("[T]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). Vague assertions of a state of mind regarding potential future lawsuits do not satisfy the rigorous evidentiary demands of the Ninth Circuit, especially when applied to 16 months of attorney-free internal emails. United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1082 (N.D. Cal. 2002) ("The expectation of litigation is either real or it is not.").

The gap is telling. Again, there were no attorneys for 16 months. Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd., Case No. 13–cv–02502, 2015 WL 124557, at *5 (N.D. Cal. Jan. 8, 2015) ("the degree to which counsel is involved

13

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

1  in creating the document bears directly on whether the document was prepared in
2  anticipation of litigation," because "attorneys are the ones who actually litigate cases,
3  and whether . . . a company involves attorneys in creating a document is a telling
4  indication . . . ."). Pre-September 2020 entries are effectively business leads, nothing
5  more. Furthermore, there are no entries on the log discussing witness interviews
6  despite the Complaint's reliance on them. Integra cannot play sword-and-shield. If
7  Integra's staff discussed these witnesses internally before a lawyer was ever involved,
8  those communications are discoverable business records. Or if Integra relied on these
9  interviews to build its case, the Defendants are entitled to know if those witnesses were
10 led, coached, or if their statements were cherry-picked to fit a pre-determined
11 narrative. <u>Dobbs v. Lamonts Apparel, Inc.</u>, 155 F.R.D. 650, 653 (D. Alaska 1994)
12 (holding that "verbatim, third-party witness statements" made in response to attorney
13 questionnaire as part of development of case were not protected by work product
14 privilege.)

### d.    Integra's Amended Log Is Deficient, Violating This Court's Order and Waiving Privilege.

17        Integra's logs must enable assessment of the privilege (Fed. R. Civ. P.
18 26(b)(5)(A)(ii)), and its vague entries fail to substantiate that privilege and thus waive
19 it. <u>See</u> <u>Apple</u>, 306 F.R.D. at 237. This Court warned as much in its December 3, 2025
20 Minute Order. (Order, Dkt. No. 129.) Yet, Integra has returned with a log that is more
21 a continual stonewall than a roadmap, especially regarding internal communications.
22 (Lim Decl. Ex. B.) Integra's amended log thus fails to comply with the Court's order.
23 Cookie-cutter descriptions like "discussing RN patient recycling" provide no
24 meaningful tie to litigation. Rule 26(b)(5)(A) ("the party must . . . describe the nature
25 of the documents [or] communication . . . in a manner that . . . will enable other parties
26 to assess the claim."). Fed. R. Civ. P. 26(b)(5)(A). The Court's order was not a
27 suggestion; it was a mandate to provide transparency regarding why these internal
28 conversations should be hidden from view. <u>Point Ruston, LLC v. Pac. Nw. Reg'l</u>

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

1  Council of United Bhd. of Carpenters & Joiners of Am., No. C09-5232, 2009 WL
2  3190361, at *1 (W.D. Wash. Sept. 30, 2009) (The Court expects that JWJ will . . . not
3  use this privilege log as an opportunity to assert privilege on a wholesale basis.").[7]
4  Integra cannot share its secrets and potential defects in its data with the government to
5  encourage a prosecution and then hide those same communications from the parties it
6  has accused.

7      Integra may attempt to bridge this more than 460-day vacuum with a post-hoc
8  affidavit claiming outside counsel not yet appearing on the log was guiding the process
9  verbally from the shadows. But a privilege log is not a rough draft to be corrected
10 when challenged; it is a certified representation to the Court under Rule 26(b)(5). If an
11 attorney was truly providing legal direction during those 16 months, the failure to
12 include them on the log is not a mere oversight—it is a waiver. Moreover, attestation
13 of a lawyer's general involvement cannot transmute a business investigation into work
14 product. As the Ninth Circuit held in Torf, when a document serves a "true
15 independent purpose," protection is "less likely." 357 F.3d at 908. Here, the
16 "independent purpose" is Integra's entire business model: identifying profitable
17 outliers and accusing them of fraud. Integra cannot have it both ways: it cannot claim
18 that its "business is litigation" and then argue that its business records are privileged.

19      Furthermore, any eleventh-hour affidavit asserting stealth oversight by counsel
20 would contradict the very purpose of this Court's December 3, 2025 Minute Order.
21 (Order, Dkt. No. 129.) This Court gave Integra a final opportunity to substantiate its
22 claims. If the substantiation required an affidavit from 2019 counsel, that should have
23 been produced with the amended log, not as a rebuttal to a motion to compel. To allow
24 Integra to cure its deficient log with a self-serving affidavit now would reward

25

26

27      [7] Furthermore, any disclosures to DOJ/CADOJ waived the privilege if they were
   not based on a common interest. In re Pac. Pictures Corp., 679 F.3d 1121, 1129 (9th
28 Cir. 2012) ("a shared desire to see the same outcome in a legal matter is insufficient to
   bring a communication between two parties within this exception [to the waiver
   rule].").

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO*
*COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

discovery gamesmanship and render the privilege log requirement a dead letter. The record is what it is: 16 months of internal business deliberation without a single documented legal impression.

### e. Defendants Have Substantial Need; Work Product Is Not Absolute.

Even if somehow materials were protected, non-opinion work product yields on a showing of substantial need and hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Opinion work product yields if "mental impressions are *at issue*" and need is "compelling." Holmgren, 976 F.2d at 577. In a case where the Relator's "mental impressions" regarding the data are the very heart of the dispute, that threshold is easily met. Even if the Court found some documents were work product, they are "not absolute." Cal. Earthquake Auth. v. Metro. W. Sec., LLC, 285 F.R.D. 585, 594 (E.D. Cal. 2012). Discovery is permitted upon a showing of "substantial need" and "undue hardship." Fed. R. Civ. P. 26(b)(3); see also JumpSport, 213 F.R.D. at 339 n.9 ("The point at which Rule 26(b)(3) calls upon courts to consider matters of 'fairness,' as that phrase is commonly understood, is after a court has concluded that a document was prepared in anticipation of litigation and that it falls in the category of 'non-opinion' work product").

Integra's claims rest entirely on its proprietary statistical models. Defendants have a right to see the internal debates regarding how these theories were formed and which data points were cherry-picked. To do so, one must examine the internal discussions of the humans who built it. Defendants also need to know what information Integra had, and when, to determine if this parasitic lawsuit is barred by the public disclosure bar—a key defense in FCA litigation. This requires seeing the internal communications where Integra first identified these leads, and whether it rested on independent knowledge or its claims derivative of work performed or data supplied. Integra's Complaint further relies on corroboration from former employee

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

interviews. Thus, any internal emails discussing these interviews are critical to testing the reliability of Integra's factual foundation.

Defendants need Integra's communications to test methodologies and probe potential witness cherry-picking and statements that may have been taken out of context. This information, the *why* behind the *what*, is unique to Integra's internal files. <u>Cal. Earthquake Auth.</u>, 285 F.R.D. at 594.

### f.    Integra's Discovery Misbehavior Warrants an Award of Attorney Fees and Costs to Defendants.

Integra delayed ten months and produced zero communications. It then violated a clear Court order. (<u>See</u> Order, Dkt. No. 129.) Defendants have incurred substantial attorney fees and costs litigating this issue, which should be awarded as a matter of course. Fed. R. Civ. P. 37(a)(5)(A). <u>Navellier v. Sletten</u>, 262 F.3d 923, 947 (9th Cir. 2001) ("Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct.").

### 2.    <u>Integra's Contentions and Authorities</u>

Integra does not merely "claim" its business is litigation – the evidentiary record indisputably confirms as much, as Defendants have yet to come up with alternative business that Integra supposedly participates in. It has no other use for the analysis it conducted of Defendants' operations other than pursuit of the instant litigation. As such, Integra structures its business around the work product doctrine, the primary function of which is to prevent an adversary in litigation from gaining access to the fruits of Integra's investigative and analytical efforts. *Wilmuth*, 2025 U.S. Dist. LEXIS 215225, at *9. Defendants, apoplectic at the straightforward application of this doctrine, thrash about wildly in search of some justification to undermine it. As will be demonstrated, each of Defendants' many theories is legally and factually deficient.

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

### a.    Integra's Withheld Documents Meet the Definition of Protected Work-Product.

"The work product doctrine 'is an intensely practical one, grounded in the realities of litigation in our adversary system.'" *McKenzie*, 2013 U.S. Dist. LEXIS 22963, at *10-12 (quoting *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)) (holding even documents "purely factual in nature" protected as representing a party's labor in anticipation of litigation). It provides that any document prepared by a party's representatives is eligible for work product protection under Rule 26(b)(3) if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. *Torf*, 357 F.3d at 907; *see Meeker v. Starfish Children's Servs*., No. C17-0376-JCC, 2019 U.S. Dist. LEXIS 82984, at *12 (W.D. Wash. May 16, 2019) ("As long as the documents are prepared in anticipation of litigation or for trial and are prepared by or for the party seeking the protection, the documents are subject to the protection of the work product doctrine.") (citing *Torf*, 357 F.3d at 907-08).

Here, there is no doubt that Integra would not have created any of the documents Defendants currently seek but for the intention to use them in litigation. They serve no other purpose to Integra, which does not operate any other business for which these documents are relevant. Integra is in no way analogous to an insurance provider, which services customers in a non-litigation context and occasionally resorts to litigation when a customer engages in fraud. *Cf. Moe v. Sys. Transp., Inc*., 270 F.R.D. 613, 624 (D. Mont. 2010). Conversely, Integra's one and only purpose is litigation. No other line of business is informed by the work that Integra performed in investigating Defendants, and it does not initiate any routine investigations of its own customers to protect itself from personal liabilities (*e.g.,* a customer defrauding Integra). Integra could not be more differently situated from Defendants' case law examples.

Indeed, Defendants' motion is largely predicated on the assumptions that there *must* be something untoward about having a litigation-focused business, and that

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

Defendants *must* be entitled to Integra's analysis prepared for its litigation counsel and related communications.  Defendants evidently believe that Integra's analyses should serve a function separate from litigation, such as that of an insurance company (which occasionally pivots from processing customer claims to pursuing legal action over fraudulent claims). *Cf. Centex Homes v. NGM Ins. Co*., No. CV-19-01392-PHX-MTL, 2020 U.S. Dist. LEXIS 181204, at *7-8 (D. Ariz. Sep. 30, 2020) ("To satisfy the 'because of' standard, [an insurance company] must, for each document, identify a ''critical factor' which made it anticipate litigation' and demonstrate that the critical factor did indeed cause [the company] to deal with the insured in a different way."). But this simply not the reality.  From Day One of Integra's investigation, Defendants have been targets of anticipated litigation, and that investigation proved fruitful.

Defendants are incorrect about the application of work product doctrine.  They insinuate that there must be a dividing line separating when Integra was merely intrigued by the possibility of suing Defendants—a period where documents are not protected—from when Integra knew for a certainty that it would bring this lawsuit.

Simply stated, this is not the law.  Litigation "certainty" is not and has never been the Ninth Circuit's test for work product protection. *See Gross v. Scottsdale Ins. Co*., No. 24-cv-02069-EJD (VKD), 2025 U.S. Dist. LEXIS 71875, at *4 (N.D. Cal. Apr. 15, 2025) ("A document is considered prepared 'in anticipation of litigation' if it 'can be fairly said to have been prepared or obtained because of the ***prospect*** of litigation.'") (emphasis added) (quoting *ACLU of N. California v. United States DOJ*, 880 F.3d 473, 485 (9th Cir. 2018)). No other prospect animated Integra's work in this case because its work serves no other function than *qui tam* litigation.

Faced with the foregoing, Defendants attempt to style Integra's research as "dual purpose" (*i.e.,* business and litigation) and argue, based on a Seventh Circuit decision, that dual-purpose documents lose protection if business drives them. *Cf. United States v. Frederick,* 182 F.3d 496, 501 (7th Cir. 1999). But that is not the law in the Ninth Circuit, where even "[w]hen a document was not prepared exclusively for litigation, it

19

should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Am. C.L. Union of N. Cal*., 880 F.3d at 485 (internal punctuation and citation omitted). Unlike the Seventh Circuit, the Ninth Circuit does not concern itself with "whether litigation was a primary or secondary motive behind the creation of a document" (*e.g.,* whether "business drives them"), rendering Defendants' argument a red herring. *Torf,* 357 F.3d at 907.

Here, only one fact matters: but for the prospect of litigation, Integra would not have created its withheld documents *at all,* much less in substantially similar form, as they serve no purpose beyond providing the basis for litigation. *See Haptic*, 2025 U.S. Dist. LEXIS 105445, at *20-21 (work product protection adhered where "the logged documents would not have been created but for the prospect of this litigation."); *Torf*, 357 F.3d at 910 (holding documents are entitled to work product protections where "their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole").

Defendants' argument – that Integra's research would look the same irrespective of whether it actually filed litigation – is true of *all* pre-filing investigations, which is why the Ninth Circuit's test does not require an actual filing to perfect the protection, and Defendants cite no authority to the contrary. Similarly, all pre-filing investigations are informed by whether it will be a financially sensible decision to bring litigation in light of anticipated monetary recovery. If these considerations vitiated work product protection, it would run up against the plain text of Rule 26(b)(3), its Advisory Committee notes, and decades of contrary case law. Much as Defendants wish otherwise, they can draw no principled distinction between Integra as a so-called "data-mining firm" and any other relator, and no court has ever recognized such a distinction, which is why Defendants' argument is blissfully authority-free.

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

As a Hail Mary, Defendants attempt to seize on the fact that Integra's privilege log includes a sixteen-month span without the appearance of an attorney. Defendants intentionally ignore the fact that Integra has consistently worked with the same legal counsel across all of its *qui tam* matters, and said counsel need not be directly involved in Integra's communications for them to satisfy the definition of work product. *Crews v. Rivian Auto., Inc*., No. CV 22-1524-JLS(Ex), 2025 U.S. Dist. LEXIS 12409, at *10 (C.D. Cal. Jan. 23, 2025) ("[Defendants] point out that some of the privilege log entries describe communications occurring entirely between or among non-lawyers. Such fact does not mean that the communications are unprivileged."); *see also Devries*, 2014 U.S. Dist. LEXIS 185109, at *11-12 (D. Or. Sep. 11, 2014) (affirming protection for work product created by plaintiff's non-lawyer representative); *see also Negrete v. JPMorgan Chase Bank, N.A*., No. 2:24-cv-00902-FLA-JC, 2025 U.S. Dist. LEXIS 48166, at *7-9 (C.D. Cal. Mar. 17, 2025) (noting work product need only be prepared by a party's "representative," which may include, *inter alia,* an "attorney, consultant, surety, indemnitor, insurer or agent"). The term "representative" is inclusive of a party's employees. *See, e.g., Fuller v. Chertoff*, No. CV05-1308RSM, 2006 U.S. Dist. LEXIS 41380, at *4 (W.D. Wash. June 21, 2006) ("As defendants' employee, Ms. Barnett is a party representative," holding her notes "were created 'because of' potential litigation, and are entitled to work product protection.").

Moreover, as Integra has attested to, its work in researching Defendants' operations was performed for the specific purpose of providing its longtime counsel at Reed Collins & Tsai ("RCT") with a basis to initiate the instant litigation. RCT has counseled Integra across all of its *qui tam* matters and at all stages of their preparation, and Defendants can point to no requirement that counsel must be copied on every communication for work product protection to adhere. Indeed, Defendants appear to be importing the requirements of attorney-client privilege into the discussion even though they have no relevance to work product, which is recognizably broader in scope. *See U-Haul Co. of Nev., Inc. v. Gregory J. Kamer, Ltd*., No. 2:12-cv-00231-KJD-CWH,

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

2013 U.S. Dist. LEXIS 43340, at *14 (D. Nev. Mar. 26, 2013) ("The work-product doctrine provides a broader protection than the attorney-client privilege…").

Stripped of their invented distinctions and inapposite case law, Defendants argument rests on unadorned insistence that Integra's operations slot too neatly into the established contours of the work product doctrine, and that the Court should cut back on that protection based on abstracted distaste for Integra as a "professional relator." The governing Ninth Circuit test for work product protection does not concern itself with Defendants' complaints, and therefore neither should the Court.

### b.    Integra's Work Product Was Indisputably Created "Because Of" Anticipated Litigation.

Defendants' attempt to collapse Integra's work product protection by characterizing its litigation work as "ordinary business" suffers from a fundamental flaw, which is that a litigant's "ordinary business" must be capable of *disruption by exigency* that leads to the prospect of litigation for a dividing line to be drawn. In other words, it must go from *not* being motivated by litigation to *so* being motivated.

Defendants' universal reliance on insurance litigation cases only serves to prove this point. An insurance provider operates a business that, ideally, never experiences litigation at all. It issues policies, collects dues, processes claims, and initiates payouts or denials as deemed appropriate. In this day-to-day mode, it anticipates nothing. Then, when a potentially fraudulent claim is submitted, it reviews the claims for indicia of fraud, still agnostic as to the prospect of litigation. Only once fraud is determined does the prospect of potential litigation arise, signifying a shift in intention. *Cf.  Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).

Here, Defendants can point to no similar shift. From day one, Integra's work is done solely and exclusively with an eye towards litigation. Defendants erroneously presuppose that a dividing line between business and litigation must exist for purposes of delimiting work product protection, and that it is doctrinally offensive for a party's full scope of pre-litigation activity to be protected. This is yet another *ipse dixit*.

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

Defendants have no default entitlement to access Integra's motives and methods, and regardless, their argument is misplaced, as it goes towards establishing a "substantial need" to *overcome* work product protection, not whether protection adheres at all.

Case law is clear that the categories of documents withheld by Integra are classic instances of protected work product. *See Wilmuth*, 2025 U.S. Dist. LEXIS 215225, at *8-9 (communications relating to plaintiff's investigation of case and witnesses interviewed were conducted for litigation purposes and protected as work product). With respect to witness interviews, Integra discharged its only obligation by identifying those individuals "likely to have discoverable information" in its initial disclosures as required by Fed. R. Civ. P. 26(a)(1). "Requiring [Integra] to do more, and produce a privilege log identifying by name which of those individuals [it] chose to interview would necessarily convey [its] investigative strategy as it relates to this litigation." *St. Vincent v. Werner Enters*., No. CV 08-73-M-DWM-JCL, 2009 U.S. Dist. LEXIS 145843, at *8 (D. Mont. Sep. 9, 2009). With respect to Integra's analytics, they were unquestionably tethered to a dispute: whether Defendants had violated the False Claims Act, thereby permitting Integra to sue as a relator.

Contrary to Defendants' characterization of work product doctrine, it is not a "precise shield" to be narrowly construed. Rather, "the Ninth Circuit has adopted a broad test for eligibility for work-product protection" covering any documents created because of anticipated litigation. *Valve Corp. v. Sierra Entm't, Inc*., No. C02-1683Z, 2004 U.S. Dist. LEXIS 29618, at *11 (W.D. Wash. Dec. 6, 2004) (citing *Torf*, 357 F.3d at 908). This "broad test" is consonant with the broad language of Rule 26(b)(3)(A) itself, which "extend[s] work-product protection to documents prepared by or for another party or its representative" in a notable expansion of the doctrine's more modest common law origins. *Devries v. Advanced Am. Constr., Inc.*, No. 3:13-CV-01001-PK, 2014 U.S. Dist. LEXIS 185109, at *11 (D. Or. Sep. 11, 2014).

Defendants ask the Court to engage in hypotheticals rather than realities, such as imagining that Integra had simply "*declar[ed]* itself a litigation business" rather than

empirically operated as one. They would like the Court to rule based upon unsupported *ipse dixits,* such as that any documents in furtherance of litigation-for-profit are inherently "commercial assets" bereft of protection. In railing against the purported audacity of Integra's position, Defendants stake out a far more audacious one, seeking to shrink the work product doctrine based on nothing more than rank opportunism. They twist themselves into knots by suggesting Integra, a business dedicated to developing litigation analyses, would have produced those analyses for some non-litigation purpose. To merely recite these theories is to demonstrate their absurdity.

Defendants' tiresome repetition of the same argument distracts from the fact that every single case it cites involves litigants with non-litigation business operations. Northrop Grumman managed its employees in service of making and selling aerospace and defense systems. *Carlson v. Northrop Grumman Corp*., 290 F. Supp. 3d 867, 870 (N.D. Ill. 2018). Ultreo conducted product efficiency studies to help it make and sell toothbrushes. *P&G v. Ultreo, Inc*., 574 F. Supp. 2d 334, 337 (S.D.N.Y. 2008). Battelle conducted employee performance reviews to manage its research laboratory business. *Neuder v. Battelle Pac. Nw. Nat'l Lab*., 194 F.R.D. 289, 291-92 (D.D.C. 2000). Textron prepared tax audit work papers as corporate maintenance for its aerospace and defense business. *United States v. Textron Inc*., 577 F.3d 21, 22 (1st Cir. 2009). The officer notes in Framingham were prepared as part of a routine police investigation. *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 145 (D. Mass. 2014).

Integra prepared its analysis of Defendants solely for the purpose of suing Defendants. With an unmistakable eye towards litigation, it is clear work product.

### c.    Defendants' "Ordinary-Course of Business" Argument is Foreclosed By Binding Ninth Circuit Precedent.

Defendants' next argument – that "Integra must pinpoint when litigation became real" – is an erroneous burden allocation. Integra would not have worked up any analysis of Defendants' operations without an intention to file litigation based upon its analysis, rendering said analysis work product from inception. Again, all Integra is

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

1  required to prove under Ninth Circuit law is that the document can be fairly said to
2  have been prepared because of the prospect of litigation. *Am. C.L. Union of N. Cal*.,
3  880 F.3d 473, 485. If *Defendants* wish to *circumscribe* the work product doctrine, *they*
4  must establish that Integra was not motivated by the prospect of litigation at the start of
5  its research, but rather at a later point in time. *See Spe v. Fitness Int'l*, No. 8:20-00953-
6  JVS (ADSx), 2021 U.S. Dist. LEXIS 202605, at *8 (C.D. Cal. Mar. 26, 2021).

7        There is nothing vague about the intention of a professional relator, whose entire
8  business is bringing litigation, analyzing the basis for a lawsuit against Defendants.
9  Defendants have no evidence to the contrary, and so are forced to wildly speculate that
10 Integra's work constituted "business leads." Were this sufficient to pierce work
11 product protection, a litigant could *always* obtain such documents by mere doubt, and
12 that is not the state of the law. *See Bruce v. Becerra*, No. 22-cv-00115-JES-JLB, 2023
13 U.S. Dist. LEXIS 240877, at *16 (S.D. Cal. Sep. 5, 2023) ("[Movant] further suggests
14 that the communications may have been made for a business purpose rather than a
15 legal purpose. However, this suggestion also amounts to mere speculation.").

16        Regardless, as Integra has been forced to explain *ad nauseum,* Defendants'
17 suggestion that Integra's work product serves a "dual purpose" of funding Integra's
18 business operations as well as its enforcement of *qui tam* claims is insufficient to strip
19 them of protection. *Entangled Media, LLC v. Dropbox Inc*., No. 23-cv-03264-PCP
20 (VKD), 2025 U.S. Dist. LEXIS 67288, at *16-17 (N.D. Cal. Apr. 8, 2025) (finding
21 dual purpose documents to be work product); *Taction Tech., Inc. v. Apple Inc*., No. 21-
22 cv-00812-TWR-JLB, 2023 U.S. Dist. LEXIS 124467, at *8-9 (S.D. Cal. July 17,
23 2023); *see also Adlman*, 134 F.3d at 1195 (2d Cir.1998) (document "does not lose
24 work-product protection merely because it is intended to assist in the making of a
25 business decision influenced by the likely outcome of the anticipated litigation.").

26
27
28

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO*
*COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

    **d.**    **Integra's Demonstration of Privilege Complies With Both Rule 26 and This Court's Prior IDC Order.**

Virtually every aspect of Defendants' discussion regarding Integra's privilege log is incorrect. To begin with, Integra's amended privilege log indisputably satisfies the fundamental requirements of such a log, as it provides each "document's general nature and description; author's identity; date written, name/addressee of any recipient; and the document's location." *Smallwood v. SASD Dev. Grp. LLC*, No. 1:24-cv-01198-KES-CDB, 2025 U.S. Dist. LEXIS 193689, at *11-12 (E.D. Cal. Sep. 30, 2025) (collecting authorities). Integra's original privilege log was only considered vague as to the first category of information, and its amendment provides the specific topics of analytical discussion related to the merits of Integra's case against Defendants.

Moreover, consideration of Integra's work product invocation is not limited to its privilege log, as courts have routinely held that a party may substantiate a claim of privilege or protection by means beyond document-by-document logging. *See, e.g., Apple Inc. v. Samsung Elecs. Co*., 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("Briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient."); *accord Entangled Media*, 2025 U.S. Dist. LEXIS 67288, at *16. Categorical privilege logs and declarations, for example, have been found particularly appropriate where voluminous amounts of work product have been requested. *See, e.g., In re Imperial Corp. of Am. v. Shields*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (permitting categorical privilege log where requesting party sought broad category of protected documents); *Wilmuth*, 2025 U.S. Dist. LEXIS 215225, at *7 (declaration providing context for privilege log satisfactory to establish work product protection); *see also Odisho v. Costco Wholesale Corp*., No. 2:23-cv-01196-JAD-MDC, 2025 U.S. Dist. LEXIS 199194, at *11-13 (D. Nev. Oct. 7, 2025) (noting appropriateness of using affidavit rather than privilege log to establish work product protection where subject information is voluminous); *Haptic*, 2025 U.S. Dist. LEXIS 105445, at *19 (work product protection established by declaration

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

attesting documents were prepared by party representatives in anticipation of litigation); *Garcia v. Cty. of Stanislaus*, No. 1:21-cv-00331-JLT-SAB, 2022 U.S. Dist. LEXIS 166453, at *35 (E.D. Cal. Sep. 14, 2022) ("accepting the averments in County's declaration and representations at the hearing as true, the Court is satisfied County has established the work product doctrine applies to the at-issue emails.").

Integra's privilege log, declaration, and supporting arguments herein fully substantiate the basis for its work product invocation, and Defendants' citation-free claim that Integra cannot provide additional support for its invocation now flies in the face of existing case law. *See Wilmuth*, 2025 U.S. Dist. LEXIS 215225, at *7.

Lastly, Defendants' contention that sharing information with the government constitutes a waiver of any applicable privilege is yet another *ipse dixit*. The Ninth Circuit has repeatedly recognized that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims" without waiving underlying privileges. *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012). "The common-interest doctrine applies when '(1) the communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not otherwise been waived.'" *Wilmuth*, 2025 U.S. Dist. LEXIS 215225, at *11-12 (quoting *In re Novalpina Cap. Partners I GP S.à.r.l.*, 773 F. Supp. 3d 1058, 1068 (D. Or. 2025)).

*Almont Ambulatory Surgery Ctr.* is instructive. There, the requesting party argued for a waiver of work product protection where documents were produced to the government. The district court rejected that argument, noting that "[w]hile voluntary sharing of information to a third party will generally result in waiver of attorney-client privilege, waiver of work product protection is more limited" and requires that the disclosure be "to an adversary." *Almont Ambulatory Surgery Ctr. LLC v. Unitedhealth Grp., Inc.*, No. CV 14-03053 MWF (AFMx), 2018 U.S. Dist. LEXIS 226690, at *15-16 (C.D. Cal. May 22, 2018). Here, as in *Almont*, "[t]he government was not an

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

adversary of [Integra] in connection with the present issues, and provision of the work product documents to the government has not resulted in [Defendants] (who are the adversaries of [Integra]) obtaining access to the documents." As such, no waiver of work product protection has occurred by dint of government disclosure.

Indeed, by failing to properly develop their argument related to Integra's ostensible waiver of privilege, Defendants' have ironically waived said argument. "[T]he party asserting waiver of work-product protection bears the burden of demonstrating that a waiver of that protection has occurred." *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc*., 333 F.R.D. 638, 642 (D. Or. 2019); *accord Grano v. Sodexo Mgmt*., No. 18cv1818-TWR(BLM), 2021 U.S. Dist. LEXIS 196337, at *18 n.4 (S.D. Cal. Oct. 12, 2021) (collecting cases); *see also Sleep Sci. Partners Inc. v. Lieberman*, No. C09-4200 CW (BZ), 2010 U.S. Dist. LEXIS 119963, at *1 (N.D. Cal. Oct. 25, 2010) ("If a party claims there has been a waiver, it bears the burden of establishing a prima facie case of waiver."). If Defendants wished to pursue this argument in earnest, they were required to address the multi-part test articulated in *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.,* 408 F.3d 1142 (9th Cir. 2005)), which rejected the existence of *per se* waivers related to allegedly deficient privilege logs in favor of a holistic reasonableness analysis.

In contrast to Defendants' lack of argumentation, Integra does not hesitate to stand by the propriety of its conduct. "[Courts] are well aware that, particularly in discovery-intensive litigation, compiling a privilege log within 30 days may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith." *Nat.-Immunogenics Corp. v. Newport Trial Grp*., No. 15 CV-02034-JVS (JCGx), 2017 U.S. Dist. LEXIS 224063, at *23 (C.D. Cal. Mar. 9, 2017). This is particularly so when the parties are "engaged in simultaneous discovery requests" and "ongoing conferences about the scope of the Requests," under which circumstances courts have found it "not unreasonable … to delay producing documents and privilege logs responsive to the Requests" while document collection

28

remains ongoing. *Id*. at *23-24. Integra and Defendants were engaged in precisely these activities throughout the months leading up to the instant submission.

As previously noted, there was no "significant delay in asserting [Integra's] privilege and protection claims over the documents," which were spelled out in its May 28, 2025 letter to Defendants. *Cf. Ath. Inv. Grp., LLC v. Schnitzer Steel Indus*., No. 21-cv-05246-MMC (DMR), 2024 U.S. Dist. LEXIS 151865, at *19 (N.D. Cal. Aug. 23, 2024). Indeed, "the delay in this case is less extreme than in some cases in which courts have declined to find waiver." *LD*, 2022 U.S. Dist. LEXIS 180719, at *9 (collecting cases declining to find waiver by delays of seven months to over a year).

Additionally militating against waiver are the facts that Defendants were fully apprised that Integra was withholding these categories of documents based on work product protection, would be furnishing a privilege log to that effect, and would be producing documents on a rolling basis. As such, "there is no evidence [Integra] misled [Defendants] as to whether it intended to withhold any documents*." LD v. United Behavioral Health*, No. 20-cv-02254-YGR (JCS), 2022 U.S. Dist. LEXIS 180719, at *12 (N.D. Cal. Oct. 3, 2022); *see also Almont Ambulatory Surgery Ctr. LLC v. Unitedhealth Grp., Inc*., No. CV 14-03053 MWF (AFMx), 2018 U.S. Dist. LEXIS 226690, at *15 (C.D. Cal. May 22, 2018); *EEOC v. Safeway Store, Inc*., No. C-00-3155 TEH (EMC), 2002 U.S. Dist. LEXIS 25200, at *7-8 (N.D. Cal. Sep. 16, 2002) (finding no prejudice by delay in producing privilege log where "both parties were aware that [the respondent] was asserting the attorney-client privilege and/or the work-product doctrine as to certain documents" and "[t]hus, there was no complete surprise attendant to [the respondent's] delay"). In sum, Defendants have suffered no surprise or prejudice sufficient to warrant waiver of Integra's work product protection.

### e.    Defendants Have Not Established Substantial Need to Override Integra's Work Product Protection.

"Under Rule 26(b)(3)(A)(ii), a party can obtain discovery of work product only on a showing of 'substantial need,' as well as an 'inability to obtain equivalent

information from other sources.'" *Shaterian v. MAPFRE Ins. Co*., No. 2:24-cv-01509-TL, 2025 U.S. Dist. LEXIS 107269, at *8 (W.D. Wash. June 5, 2025) (quoting *MKB Constructors*, 2014 U.S. Dist. LEXIS 78883, at *8). Even then, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such "opinion" work product represents the "core types of work product" the doctrine was designed to protect. *Republic of Ecuador*, 742 F.3d at 869 n.3.

Defendants' insistence that "[Integra's] 'mental impressions' regarding [its] data are the very heart of the [parties'] dispute" is yet another *ipse dixit.* "Substantial need for material otherwise protected by the work product doctrine is demonstrated by establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case." *Taction Tech*., 2023 U.S. Dist. LEXIS 124467, at *13-14 (S.D. Cal. July 17, 2023) (quoting *Cont'l Cirs. LLC v. Intel Corp*., 435 F. Supp. 3d 1014, 1023 (D. Ariz. 2020)). Defendants have offered nothing beyond their say-so to demonstrate that Integra's mental impressions are "vital" to their defense. *Nat.-Immunogenics Corp.*, 2018 U.S. Dist. LEXIS 228114, at *44.

The validity of Integra's statistical analysis is an objective determination ascertained by observing the operation of its code and evaluating the outputs thereby generated. Defendants can determine precisely how Integra manipulated its code because Integra produced the code, its outputs, and its methodologies. Defendants have not demonstrated that "[Integra's] mental impressions are at issue in a case and the need for the material is compelling." *Bruce*, 2023 U.S. Dist. LEXIS 240877, at *14 (quoting *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1125 (9th Cir. 2020)).  No part of Integra's *prima facie* case as a relator, nor any defenses thereto, in any way turn on Integra's state of mind, and Defendants therefore have no need for them.  *See Lyons v. Media*, No. CV 19-03830-FLA (JEMx), 2021 U.S. Dist. LEXIS 200229, at *8 (C.D. Cal. July 1, 2021) ("[Defendants] do not have a 'substantial need' for [Integra's] mental impressions. They already have the underlying facts.").

To be clear, Defendants are fully entitled to question Integra regarding the development and function of its source code to determine its validity, as well as the information Integra possessed. That is not the same as entitlement to work product discussing those same matters. *Cf. Taction Tech*., 2023 U.S. Dist. LEXIS 124467, at *14 ("Defendant conflates its need for valuation evidence with its asserted need for evidence of valuation from the Funders. Although Defendant is entitled to valuation information, it is not entitled to such information specifically from the Funders.").

### f.     Defendants Have Established Neither Discovery Misbehavior Nor an Entitlement to Fees and Costs.

Integra expressly invoked and explained its work product objections in May of 2025, served a privilege log along with its rolling document production, and amended its privilege log pursuant to the Court's directive to identify the specific case-related topics to which each withheld document relates. At all times, Integra has stood on its positions in good faith and provided fulsome legal authority therefor. Defendants' motion rests on arguments devoid of apposite authority and often contrary to binding Ninth Circuit authority, which Defendants assiduously ignore for out-of-circuit law. Under such circumstances, Integra's objections are substantially justified, and any award of expenses to Defendants would be unjust. Fed. R. Civ. P. 37(a)(5)(A); *see Pierce v. Underwood*, 487 U.S. 552, 565 (1998) (holding substantial justification is "satisfied if there is a 'genuine dispute' ... or 'if reasonable people could differ as to the appropriateness of the contested action.'") (citations and alterations omitted)). Indeed, it is *Integra* which should be rewarded *its* reasonable expenses based on the myriad flaws in Defendants' positions, as detailed above. Fed. R. Civ. P. 37(a)(5)(B).

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

## III.    REQUEST FOR ATTORNEY FEES AND COSTS

### A.    Defendants' Contentions and Authorities

Defendants seek an award of reasonable attorney's fees and costs. Federal Rule 37 is not a suggestion; it is a mandate for cost-shifting when a party's position lacks substantial justification. Fed. R. Civ. P. 37(a)(5)(A).

Here, Integra has asserted a blanket-style work-product position that would immunize virtually all internal communications. It has relied on privilege-log entries that remain insufficiently particularized, and has escalated its claims to untenable assertions of "opinion" work product over communications that are, on their face, purely factual. These positions have deprived Defendants of core discovery and forced repeated meet-and-confers, an IDC, court-ordered amendments, and now supplementation of a pending motion to compel. Fee shifting is the only way to ensure that Integra pays the price for its tactical choice to hide its internal deliberations behind an inapplicable privilege and tactical delays. Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976). If Integra opposes this, it is their burden to show they were "substantially justified"—a burden they cannot meet on this record. Brown v. Hain Celestial Grp., Inc., No. C 11-03082, 2013 WL 5800566, at *5 (N.D. Cal. Oct. 28, 2013).

### B.    Integra's Contentions and Authorities

Defendants' recitation in support of an entitlement to expenses is wrong across the board. Integra's work product invocation is on all fours with the Ninth Circuit's standard for its application, and its privilege log expressly identifies the substantive topics relevant to Integra's case-in-chief that were subject to protected analysis.

Comparatively, Defendants have presented a fundamentally distorted record that ignores the relevant scope of work protect protection (including its coverage of factual material), relies extensively on inapposite and out-of-circuit authority, misrepresents the withheld documents as "core" to the case without any support, and paints the

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

natural escalation of the parties' discovery dispute as aberrant when Integra's analysis demonstrates a substantial justification for having staked out its positions.

In light of the foregoing, Defendants' motion is appropriately found frivolous for failure to adequately ground itself in law and fact. *Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993). Omitting any reference of Integra's May 28th letter, mischaracterizing the contents of Integra's privilege log, misstating binding circuit law in favor of non-binding out-of-circuit law, and failing to develop arguments ostensibly raised, collectively amounts to impropriety for which expenses should be taxed. *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 748 (9th Cir. 1990).

## IV.    CONCLUSION

### A.    Defendants' Final Statement and Requested Relief

Integra's blanket assertion harms first principles of work product. It shields an entire business enterprise, not trial preparation. And its amended log defies the Court's order. Thus, waiver applies. Integra has had every opportunity to comply and has instead chosen to obstruct discovery into its internal methods. Defendants therefore respectfully request the Court enter an order compelling the following relief:

1. Determine that Integra has waived work-product protection for all withheld internal communications by failing to substantiate its claims as required by Rule 26(b)(5) and this Court's December 3 Order.

2. Rule as a matter of law that Integra's business of litigation model does not entitle it to categorical work-product protection over its ordinary-course business analytics or internal communications.

3. Order the immediate production of all withheld internal communications and analytics, including those involving witness interviews and factual research.

4. Award Defendants their reasonable attorney fees and costs under Rule 37(a)(5) necessitated by Integra's persistent non-compliance.

33

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

5. To the extent the Court declines to find total waiver, Integra should be required to immediately produce competent evidence of a specific affirmative suit-decision point and an unredacted copy of the relevant engagement letters to support its stealth counsel theory, failing which all pre-September 2020 materials must be produced.

6. Order re-review, production, and the provision of a conforming log.

7. Such further relief as the Court deems just.

### B.    Integra's Final Statement and Requested Relief

Defendants' motion is ill-founded, ill-considered, and ill-supported. Integra has appropriately invoked and applied the work product doctrine and amended its privilege log consistent with the Court's prior order, further supplementing same with additional evidence by way of declaration and briefing. Defendants have failed to substantiate the inapplicability of work product protection, substantial need for the withheld documents, or conduct that would support waiver of the protection. Far from obstructing Defendants, Integra has been harangued with persistent threats and unwarranted proceedings based on multiple significant legal and factual misstatements by Defendants. Integra therefore respectfully requests the Court enter an order compelling the following relief:

1. Determine that Integra has substantiated work-product protection for its withheld internal communications by way of its briefing, amended privilege log, and supporting declaration.

2. Rule that Integra's internal communications regarding development of its merits case against Defendants were prepared "because of" anticipated litigation.

3. Deny production of Integra's withheld internal communications and analytics, including those involving witness interviews and factual research.

4. Award Integra its reasonable attorney fees and costs under Rule 37(a)(5) necessitated by Defendants' substantially unjustified motion.

5. Decline to find any waiver of Integra's work product protection.

6. Decline re-review, production, and the provision of a further amended log.

34

1    7.  Such further relief as the Court deems just.

2

3   Dated: January 6, 2026          Respectfully submitted,

4                                        */s/ Eugene Lim*
                                        UMHOFER, MITCHELL & KING, LLP
5                                        Matthew Donald Umhofer
                                        Elizabeth A. Mitchell
6                                        Eugene Lim

7                                        *Attorneys for Defendants*

8
    Dated: January 6, 2026          Respectfully submitted,
9
                                        */s/ Daniel B. Lifschitz*
10                                       GIPSON HOFFMAN & PANCIONE
                                        Daniel B. Lifschitz
11
                                        *Attorney for Relator*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*

# **ATTORNEY ATTESTATION**

The other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: January 6, 2026            Respectfully submitted,

*/s/ Eugene Lim*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell
Eugene Lim

*Attorneys for Defendants*

*SUPPLEMENTAL JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR ATTORNEY'S FEES AND COSTS*