GIPSON HOFFMAN & PANCIONE
A Professional Corporation
DANIEL B. LIFSCHITZ (SBN 285068)
*dlifschitz@ghplaw.com*
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone:  (310) 556-4660
Facsimile:   (310) 556-8945

Attorneys for Plaintiff and Relator
INTEGRA MED ANALYTICS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel,* INTEGRA MED ANALYTICS LLC, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM NELSON, an individual; VICKI ROLLINS, an individual; TORRANCE CARE CENTER WEST, INC.; GLENDORA GRAND, INC.; CENTINELA GRAND, INC.; LONG BEACH CARE CENTER, INC.; PACIFIC VILLA, INC.; FLOWER VILLA, INC.; CENTURY VILLA, INC.; VILLA DEL RIO WINTER, INC.; VILLA DEL RIO CENTER, INC.; WEST COVINA MEDICAL CENTER, INC.; L.A. DOWNTOWN MEDICAL CENTER, INC., <br><br> Defendants. | Case No.: 2:21-cv-05265-JFW-PVC <br><br> **PLAINTIFF INTEGRA MED ANALYTICS LLC'S NOTICE OF MOTION AND MOTION TO AMEND SCHEDULING ORDER** <br><br> Hearing Date: March 2, 2026 <br> Time: 1:30 p.m. <br> Place: Courtroom 7A <br> Judge: John F. Walter <br><br> Pretrial Cont.:      July 17, 2026 <br> Trial Date:          August 4, 2026 |

*GIPSON HOFFMAN & PANCIONE*
*A PROFESSIONAL CORPORATION*

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 2, 2026, at 1:30 p.m., or such other date ordered by the Court, in Courtroom 7A of this Court, located at First Street Courthouse, 350 W. First Street, Los Angeles, California, Plaintiff and Relator Integra Med Analytics LLC ("Plaintiff" or "Integra") will and hereby does move the Court for an order amending the current scheduling order in this matter.

This Motion is made pursuant to Federal Rule of Civil Procedure 16(b)(4) on the grounds that good cause exists to extend the existing deadlines in the case. Integra's Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities and supporting Declarations, any reply memorandum, the pleadings and filings in this action, and such other matters as may be presented at or before the hearing. Integra respectfully requests oral argument on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 23, 2025.

Respectfully submitted,

Dated:  February 2, 2026

GIPSON HOFFMAN & PANCIONE
A Professional Corporation

/s/ Daniel B. Lifschitz
DANIEL B. LIFSCHITZ
Attorneys for Relator
INTEGRA MED ANALYTICS LLC

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................ 1

II.   BACKGROUND .......................................................................... 1

III.  LEGAL STANDARD ................................................................. 8

IV.   GOOD CAUSE EXISTS TO AMEND THE SCHEDULING ORDER ..... 9

      A.    The Need for Modification of the Current Scheduling Order
            Only Became Apparent Within the Last Month of the
            Litigation. ........................................................................ 9

      B.    Defendants Created the Exigent Need for Additional Time By
            Reneging on Their Prior Commitment to Produce Documents ........ 9

      C.    Despite Its Reasonable Diligence, Integra Cannot Realistically
            Meet the Current Case Schedule Due to CMS's Approval
            Process ............................................................................ 10

      D.    Integra Brought the Instant Motion as Soon as was Reasonable ..... 12

      E.    No Deadlines Sought for Extension Have Expired ..................... 13

      F.    The Weight of Prejudice Supports Amending the Scheduling
            Order ............................................................................. 13

      G.    The Length of the Extensions Sought Is Appropriate Given the
            Various Exigencies That Have Complicated the Case Schedule. ... 14

V.    CONCLUSION ........................................................................ 15

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

RELATOR INTEGRA MED ANALYTICS LLC'S MOTION TO AMEND SCHEDULING ORDER

1569601.1 - 06302.00001

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
624 F.3d 1253 (9th Cir. 2010) ............................................................. 8

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
654 F.3d 975 (9th Cir. 2011) ........................................................... 14

*City of Lincoln v. United States*,
No. 2:16-CV-01164-KJM-AC,
2018 WL 3917711 (E.D. Cal. Aug. 16, 2018).............................. 10, 12

*City of Torrance v. Hi-Shear Corp.*,
No. 2:17-CV-07732-FWS-JPR,
2024 WL 4738206 (C.D. Cal. Sept. 4, 2024) ................................... 8

*FDIC v. Ching*,
No. 2:13-CV-01710-KJM-EFB,
2016 WL 1756913 (E.D. Cal. May 3, 2016) ................................... 11

*Frias v. Cnty. of San Diego*,
No. 3:22-CV-00675-JO-AHG,
2024 WL 4469097 (S.D. Cal. Oct. 8, 2024) ................................... 10

*Harris v. Calzetta*,
No. 1: 13-cv-001088-MJS,
2016 U.S. Dist. LEXIS 33496 (E.D. Cal. Mar. 15, 2016) .................. 8

*Heh v. Cty. of L.A.*,
No. CV 19-4258-DMG (PLAx),
2020 WL 2240072 (C.D. Cal. Feb. 13, 2020) ................................. 12

*Herrera v. L.A. Unified Sch. Dist.*,
No. SACV 17-00069 JVS(KESx),
2018 WL 6004545 (C.D. Cal. Sep. 12, 2018) ................................. 13

*In re Asbestos Products Liability Litigation (No. VI)*,
256 F.R.D. 151 (E.D. Pa. 2009)........................................................ 11

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 2:15-cv-5146-CAS (JEMx),
2018 WL 1517130 (C.D. Cal. Mar. 26, 2018)................................... 9

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ............................................................. 8

*Jackson v. Laureate, Inc.*,
186 F.R.D. 605 (E.D. al. 1999)........................................................... 8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ...................................................... 8, 13

*Kuschner v. Nationwide Credit, Inc.*,

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1569601.1 - 06302.00001

256 F.R.D. 684 (E.D. Cal. 2009) ............................................................. 9

*Lemoge v. United States*,
  587 F.3d 1188 (9th Cir. 2009) ............................................................. 9

*Mailhoit v. Home Depot U.S.A., Inc.*,
  285 F.R.D. 566 (C.D. Cal. 2012) ......................................................... 11

*Masterpiece Leaded Windows Corp. v. Joslin*,
  No. 08-CV-0765-JM (JMA),
  2009 WL 1456418 (S.D. Cal. May 22, 2009) ...................................... 14

*Navarro v. Eskanos & Adler*,
  No. C 06-02231 WHA,
  2006 WL 3533039 (N.D. Cal. Dec. 7, 2006) ......................................... 1

*Netrition Inc. v. Tyler's Coffee LLC*,
  No. CV-23-00363-TUC-AMM,
  2025 WL 460606 (D. Ariz. Feb. 11, 2025) .......................................... 13

*Peterson v. Thomson Int'l, Inc.*,
  No. 1:22-cv-00701-JLT-CDB,
  2023 U.S. Dist. LEXIS 83789 (E.D. Cal. May 12, 2023) .................... 12

*Process Specialties, Inc. v. Sematech, Inc.*,
  No. CIVS00414FCDPAN,
  2002 WL 35646610 (E.D. Cal. Jan. 18, 2002) ................................... 10

*Republic Bag, Inc. v. Beazley Ins. Co.*,
  No. CV 18-6745-MWF (PJWx),
  2020 WL 5258961 (C.D. Cal. June 29, 2020) ...................................... 14

*Roush v. San Joaquin Valley Coll.*,
  No. 1:21-cv-00556-JLT-BAM,
  2023 WL 130882 (E.D. Cal. Jan. 9, 2023) .......................................... 13

*Shijiazhuang Hongray Grp. v. World Trading 23, Inc.*,
  No. 21-CV-00972-FWS-KK,
  2023 WL 2629890 (C.D. Cal. Mar. 10, 2023) ...................................... 14

*Singleton v. Bail Hotline Bail Bonds, Inc.*,
  No. 8:22-cv-01826-MRA-KES, 2024 WL 4800877, at *9 (C.D. Cal. June 28,
  2024) ................................................................................................ 14

*Smith v. Martorello*,
  No. 3:18-CV-01651-AR,
  2022 WL 2705510 (D. Or. June 8, 2022) .............................................. 9

*Stonecypher v. IASCO Flight Training, Inc.*,
  No. 217CV02409MCEEFB,
  2020 WL 133994 (E.D. Cal. Jan. 13, 2020) ........................................ 10

*Thompson v. BMW of N. Am., LLC*,
  334 F.R.D. 230 (C.D. Cal. 2020) ......................................................... 11

*Topalsson GmbH v. Bayerische Motoren Werke AG*,
  No. 2:23-cv-01823-WLH-PVC,

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

iv

2024 U.S. Dist. LEXIS 170512 (C.D. Cal. Sep. 19, 2024) ............................... 8

*United States ex rel. Davis v. Eaton Corp. PLC*,
    No. 2:20-cv-09162-CBM (AJRx),
    2024 WL 3529062 (C.D. Cal. Apr. 17, 2024) .................................... 2

*United States v. Dang*,
    488 F.3d 1135 (9th Cir. 2007) ........................................................ 12

*Vega v. Parks,*
    No. 1:19-cv-00484-ADA-SAB,
    2023 U.S. Dist. LEXIS 35873 (E.D. Cal. Mar. 3, 2023) ................................. 10

*Youngevity Int'l, Corp. v. Smith*,
    No. 16-cv-704 BTM (JLB),
    2017 WL 6730078 (S.D. Cal. Dec. 29, 2017) .................................... 13

*Zivkovic v. Southern California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) .......................................................... 8

**Statutes**

31 U.S.C. § 3730(b)(3) .................................................................. 2

**Rules**

Fed. R. Civ. P. 16(b)(4) .............................................................. 11

Fed. R. Civ. P. 34(b)(1)(A) .......................................................... 13

Fed. R. Civ. P 45(a)(1)(A)(iii) ..................................................... 11

1569601.1 - 06302.00001

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

For the past five months, Plaintiff and Relator Integra Med Analytics LLC ("Integra") has worked diligently to pursue data from Defendants concerning the patients at the heart of Defendants' fraudulent recycling scheme. However, after a period of significant cooperation, Defendants suddenly and inexcusably reneged on working with Integra to collect and produce these documents. During this same time period, Integra's efforts to obtain a "crosswalk dataset" from the Centers for Medicare & Medicaid Services petered out. Because administrative options with CMS have been exhausted and Integra has learned as much as it can regarding the nature and custodians of this data, it is now able to properly seek a court order compelling the production of this data. However, because it will take time for CMS to fulfill any such order, Defendants to utilize the crosswalk dataset (to collect and produce documents), and the parties' experts to review and analyze the documents, an appropriately tethered modification of the scheduling order is warranted.

Integra submits that good cause exists for the requested modification, as the exigencies justifying relief only came into focus in the past few weeks once both CMS and Defendants became fully non-cooperative. Moreover, Integra has been diligent in its conduct throughout the case. It has consistently pursued discovery across all available avenues. It also sought the instant amendment as soon as the need for same became apparent and an accurate revised schedule was viable to propose. It did not allow the discovery period to lapse before seeking amendment and has not acted for the purpose of harassment, undue delay, or any other improper reason. In light of the foregoing, relief is warranted. *See Navarro v. Eskanos & Adler*, No. C 06-02231 WHA, 2006 WL 3533039, at *2 (N.D. Cal. Dec. 7, 2006).

### II.    BACKGROUND

#### A. Integra Files Complaint Against Defendants

Integra initiated this *qui tam* matter on June 29, 2021, alleging that

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Defendants engaged in a long-running scheme to defraud Medicare by "recycling" patients between its various facilities without proper medical justification. ECF No. 1 ("Complaint"). As required by the False Claims Act, Integra filed its unredacted Complaint under seal while the government investigated Integra's claims. *See* 31 U.S.C. § 3730(b)(3); *United States ex rel. Davis v. Eaton Corp. PLC*, No. 2:20-cv-09162-CBM (AJRx), 2024 WL 3529062, at *2 (C.D. Cal. Apr. 17, 2024).

### B. Integra Takes Over Litigation as Relator

On April 5, 2024, after seeking a total of six extensions of time to keep the matter under seal (ECF Nos. 10, 13, 16, 19, 22, 25), the government filed a notice of election to decline intervention, allowing Integra to proceed with the case. ECF No. 28. On October 15, 2024, the Court *sua sponte* issued a scheduling order for the case. ECF No. 47. However, because the Centers for Medicare and Medicaid Services ("CMS") did not provide a litigation waiver permitting service of Integra's Complaint until February 28, 2025, Integra sought and received a modification of the scheduling order to account for its resultant inability to effectively use the prior-set discovery period. ECF No. 115. A second modification of the scheduling order was granted on August 19, 2025 to account for the sudden and unexpected death of Integra's lead trial counsel, who was 42 at time of passing. ECF No. 124.

Due to the aforesaid circumstances, the filing date for the instant litigation is deceptive. In reality, the parties did not begin substantively litigating the case until March of 2025, with a significant pause between July and September of 2025 due to lead trial counsel's passing, which forced Integra to spend time regrouping.

### C. Integra Diligently Pursues Discovery

Over the last five months, Integra has been diligently pursuing discovery to obtain the medical and financial records of patients subject to Defendants' scheme. These records are central to Integra's case. Without patient case files, for example, the parties cannot fully test whether Defendants' patient care activities were medically necessary. Nor can Integra identify which doctors to depose regarding

1569601.1 - 06302.00001

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

the propriety of patient discharge and transfer, or any financial benefit that might flow to the doctor as a result. However, through no fault of any party, identifying these records for collection initially proved difficult. Integra's allegations are based on anonymized CMS data, so Integra has never been able to simply provide Defendants with a list of patient names or their original identification numbers.

Presented with these challenges, Integra identified two potential pathways to obtaining the medical and financial records it needs. The first pathway relied on Integra corresponding with CMS to determine what information it could provide that would serve to deanonymize the Patient IDs in its data. (Declaration of Daniel Lifschitz ("Lifschiz Decl."), ¶ 4.) The second pathway relied on Defendants utilizing anonymized admission and demographic information in CMS's data to identify relevant patients. (*Id.*) Although Integra has diligently pursued both paths, more time is needed to secure records under each, warranting an extension.

### 1. *CMS Key Request*

On September 4, 2025, Integra contacted CMS to determine whether it could provide a so-called "crosswalk dataset" that would allow Integra to deanonymize Defendants' patients from CMS's records. (Declaration of Dammon Crim ("Crim Decl."), ¶ 3.) Over the following week, Integra engaged in multiple rounds of correspondence with CMS, filling out various request forms and providing additional information to facilitate production of the desired material. (*Id.* ¶ 4.) On September 30, 2025, Integra sought an update from CMS on the status of its request. (*Id.* ¶ 5.) CMS responded by informing Integra that the personnel currently handling Integra's request were unable to fulfill it, suggesting that CMS would need to further investigate who within the department could provide the information being sought. (*Id.* ¶ 6.) This investigation was subsequently frustrated by the prolonged shutdown of the federal government that began on October 1, 2025 and did not resolve until November 12, 2025. (*Id.*) Integra has since reached back out to CMS on multiple occasions regarding its requests, only to receive no updates. (*Id.* ¶ 7.)

## 2. *Source-Code Driven Search*

In parallel with its outreach to CMS, Integra repeatedly urged Defendants to cooperate in locating patient records using existing means. In August of 2025, Integra proposed a choice: Defendants could either search for patient records using available information in CMS's data (*e.g.,* number and duration of patients' visits to Defendants' facilities), or simply produce all patient records and let Integra figure out its case. (*Id.* ¶ 5.) However, Defendants rejected both approaches with generalized averments of burden. (*Id.*) Defendants also refused to produce any documents responsive to Integra's more targeted discovery requests, despite said requests having been solicited by Defendants to facilitate settlement. (*Id.* ¶ 6.)

During the parties' meet-and-confer efforts over these requests, Defendants contended that they needed access to Integra's proprietary source code in order to match CMS's anonymized visit data to Defendants' internal records. (*Id.* ¶ 7.) Accordingly, from September to November of 2025, Integra worked extensively with Defendants to ensure they were able to utilize Integra's source code and parse the CMS data for purposes of patient identification and record collection. (*Id.* ¶ 8.) Integra provided Defendants with the raw CMS dataset, the source code, related ancillary materials, and a "how to" guide on using the source code to navigate the CMS data, in response to Defendants' repeated demands for additional materials.

On November 19, 2025, Defendants confirmed that they were able to use Integra's source code to match CMS's data to their patient records, writing that "using the data points available in the source-code materials, we have worked with our client on a fairly reliable workflow to match CMS-anonymized IDs to actual patients." (*Id.* ¶ 9.) Defendants confirmed that "[t]he process is workable," such that Integra believed the parties could proceed despite CMS's lack of cooperation in facilitating identification or production of the sought crosswalk dataset. (*Id.*)

Based upon the foregoing development, it appeared to Integra that Defendants were cooperating in discovery, as they confirmed that "have been able

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

to identify patients using alternative data points gleaned from the source code" and asked if Integra could provide additional data points regarding relevant patients to further expedite the identification and document collection process. (*Id.* ¶ 10.) Integra duly complied, providing Defendants on December 10, 2025 with a list of all relevant scheme patients totaling fewer than 800 in number. (*Id.* ¶ 11.) Once it became apparent that Defendants could find patient files, however, Defendants took the position that "Integra bears the burden of identifying the specific patients it alleges were fraudulently treated" as "[d]iscovery does not require Defendants to reverse-engineer your data to identify the subjects of your own lawsuit." (*Id.* ¶ 12.) This, of course, ignored that Integra had already provided that very information.

### D. Defendants Frustrate Integra's Discovery Efforts

On December 16, 2025, Defendants produced a first—and, to date, only -- small batch of responsive medical records for a handful of "test case" patients, which was itself grossly deficient. (*Id.* ¶ 12.) Integra proposed that, given the issues with Defendants' document production and the collection work yet to be performed, the parties should consider a further modification of the case schedule. (*Id.*) Defendants rebuffed Integra, stating they did not believe an extension was necessary, and that discovery could be completed under the existing schedule. (*Id.*)

However, at an in-person meeting on December 23, 2025, Defendants sandbagged Integra by stating that, contrary to all prior representations, they had now determined the process of identifying and collecting patient records was too burdensome, and that they were therefore refusing to produce the requested records. (*Id.* ¶ 13.) Although Integra is now working towards compelling their production via informal discovery conference procedures, that dispute will take time to resolve.

Defendants compounded Integra's predicament by indicating they would also be slow-walking supplementing their interrogatory responses, which Integra had been requesting for many months and which Defendants had repeatedly promised to produce only to consistently miss their own self-imposed deadlines. (*Id.* ¶ 14.)

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Defendants' failure to timely supplement their concededly incomplete interrogatory responses has significantly hampered Integra's ability to identify key deponents at Defendants' facilities and thereby craft its deposition strategy. (*Id.* ¶ 15.)

Although Integra had no realistic ability to obtain modification of the current scheduling order between Defendants' sandbagging and the deadline to disclose its expert witnesses under Fed. R. Civ. P. 26(a)(2)(A), Integra continued to respond to Defendants' discovery requests, participate in witness depositions, and coordinate with its experts on the preparation of reports under the current case schedule—despite having received virtually no patient medical and financial documents from Defendants. (*Id.* ¶ 16.). Indeed, Defendants' opening expert reports make clear that the very limited patient records produced to date are "not exhaustive." (*Id.*)   In parallel, Integra seeks to amend the scheduling order to ensure that it has an appropriate period of time to litigate its case and for experts on both sides to form opinions based on complete medical and related records yet to be produced.

**E. Defendants' Delays Cause Mutual Prejudice**

A reasonable schedule extension will benefit Defendants, as Defendants' own discovery efforts may be prejudiced under the current scheduling order. For instance, Defendants waited until December of 2025 to serve discovery requests asking Integra to identify which of Defendants' former employees supplied certain allegations in Integra's Complaint. (*Id.* ¶ 18.) Integra responded by asserting straightforward work product objections and cited multiple supporting legal authorities. (*Id.*) Defendants claimed in response that Integra's objections were depriving them of critical information necessary for use in imminent third-party depositions and threatened to seek *ex parte* relief due to the constraints of the case schedule. (*Id.*) Integra explained that any claimed "emergency" warranting such *ex parte* relief would be entirely of Defendants' own making, as they could have propounded the relevant discovery requests and noticed the relevant depositions at any time since Integra's initial disclosures were made many months ago. (*Id.*)

The parties are currently attempting to resolve Defendants' demands short of Court intervention. (*Id.*) However, it seems more likely than not that there will be insufficient time to seek a proper judicial remedy in the event of an impasse, given the protracted nature of the applicable processes. Indeed, on February 2, 2026, Defendants confirmed to Integra that they will be moving the Court for *ex parte* relief by attempting to once again reopen the parties' under-submission motion to compel with Judge Castillo. (*Id.* ¶ 21.) This dust-up further demonstrates that neither side is being well-served by the limited amount of time left in discovery.

Defendants' rush to complete discovery under the current case schedule is additionally giving rise to concerning permittances. For example, on January 16, 2026, counsel for Integra learned that each of Defendants intended to depose Rule 26 witnesses (Pinky Biag, Elida Agatep, and Imelda Julian) was relying on a "representative" with purported legal training but was not a licensed attorney. (*Id.* ¶ 20.) Although alerted to this fact ahead of time, counsel for Defendants demurred and indicated that they would proceed with the deposition, knowing (as confirmed during Jan. 19 Biag deposition) that an unlicensed practitioner was guiding the witness and acting as her representative in the litigation for compensation. (*Id.*). More egregiously, during the Agatep deposition (which took place on January 29, 2026), the witness recanted her "representative's" statements that she had no personal knowledge of the case matters and confirmed that she provided text messages and other discovery in support of Integra's case. (*Id.*) Integra is now evaluating how to proceed in light of this potential witness tampering. (*Id.*)

Integra posits that a race to the finish line is inappropriate when so many discovery complications have arisen in the last few weeks. Defendants' reneging on producing critical documents and delaying supplemental interrogatory responses has left Integra with insufficient time to pursue alternative means of compliance. However, an extension of the discovery period will allow Integra to overcome Defendants' burden objections and ensure that case-critical documents are

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

collected, reviewed, and thoughtfully incorporated into expert reports.

Despite CMS having ceased meaningful correspondence, Integra believes it has gathered sufficient information regarding the particulars of what data CMS can be ordered to produce that will alleviate Defendants' concerns and ensure that the parties do not leave discovery without all relevant patient files produced.

## III.    LEGAL STANDARD

"The district court is given broad discretion in supervising the pretrial phase of litigation." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citation and internal quotation marks omitted). Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 607). "This standard is 'non-rigorous' and construed liberally." *Topalsson GmbH v. Bayerische Motoren Werke AG*, No. 2:23-cv-01823-WLH-PVC, 2024 U.S. Dist. LEXIS 170512, at *4 (C.D. Cal. Sep. 19, 2024) (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010)). "In the absence of bad faith or misrepresentation of the reasoning behind the modification, such requests should 'normally...be granted[.]'" *Id.*; *see also Harris v. Calzetta*, No. 1: 13-cv-001088-MJS, 2016 U.S. Dist. LEXIS 33496, at *3 (E.D. Cal. Mar. 15, 2016) ("The Court has wide discretion to extend time, provided a party demonstrates some justification for the issuance of the enlargement order.") (internal citation omitted).

"While a court may take into account any prejudice to the party opposing modification of the scheduling order, the focus of the Rule 16(b) inquiry is upon the moving party's reasons for seeking modification ..." *City of Torrance v. Hi-Shear Corp.*, No. 2:17-CV-07732-FWS-JPR, 2024 WL 4738206, at *5 (C.D. Cal. Sept. 4, 2024) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013)). For instance, "[a] moving party may establish 'good

cause' under Rule 16(b)(4) by showing that (1) she was diligent in assisting the court in crafting a workable scheduling order; (2) her noncompliance with a deadline occurred notwithstanding diligent efforts to comply because of matters that were not reasonably foreseeable or anticipated at the time of the scheduling conference; and (3) she was diligent in seeking amendment once it became apparent that she could not comply with the order." *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-5146-CAS (JEMx), 2018 WL 1517130, at *2 (C.D. Cal. Mar. 26, 2018) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)).

## IV.    GOOD CAUSE EXISTS TO AMEND THE SCHEDULING ORDER

### A. The Need for Modification of the Current Scheduling Order Only Became Apparent Within the Last Month of the Litigation.

"Moving to amend within weeks of learning new information generally shows diligence under Rule 16." *Smith v. Martorello*, No. 3:18-CV-01651-AR, 2022 WL 2705510, at *3 (D. Or. June 8, 2022), report and recommendation adopted, 2022 WL 2704208 (D. Or. July 12, 2022); *see also Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 688 (E.D. Cal. 2009) (finding that a party acted diligently in seeking to amend scheduling order in February 2009 based on developments from December of 2008); *Lemoge v. United States*, 587 F.3d 1188, 1193 (9th Cir. 2009) (finding excusable neglect after seven month delay).

In this case, the record does not suggest that Integra lacked diligence in its efforts to pursue and obtain needed discovery in the case. To the contrary, Integra worked closely with Defendants through a highly iterative process that resulted in Defendants repeatedly claiming the ability to satisfy Integra's discovery requests and indicating that they would, in fact, produce patient records. It was only within the last month—the day before Christmas—that Defendants changed their position and informed Integra that they would make no further effort to produce documents.

### B. Defendants Created the Exigent Need for Additional Time By Reneging on Their Prior Commitment to Produce Documents.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

9

A movant acts with reasonable diligence in seeking to amend a scheduling order when an existing case schedule has been frustrated by an opponents' "dilatory conduct" of "reneging" on litigation commitments. *See, e.g., Stonecypher v. IASCO Flight Training, Inc*., No. 217CV02409MCEEFB, 2020 WL 133994, at *4 (E.D. Cal. Jan. 13, 2020); *Process Specialties, Inc. v. Sematech, Inc*., No. CIVS00414FCDPAN, 2002 WL 35646610, at *6 (E.D. Cal. Jan. 18, 2002) (modification of scheduling order warranted where litigant "reneged on its promise to produce" documents "[a]s discovery was drawing to a close"); *Vega v. Parks, No. 1:19-cv-00484-ADA-SAB, 2023 U.S. Dist. LEXIS 35873, at *3 (E.D. Cal. Mar. 3, 2023)* (*ex parte* amendment of scheduling order warranted where non-moving party backed out of discovery commitments close to related deadline).

Here, Defendants initially cooperated with Integra between September and December of last year, as reflected in their November 19th affirmation that collecting documents responsive to Integra's requests was indeed "workable." Defendants then conducted a sudden about-face after producing a few (deficient) "test case" records in mid-December, claiming on December 23rd that they would produce no further documents despite having demonstrated an ability to do so.

Based upon the foregoing, "[i]t seems that Defendants may have been holding their [intention not to produce documents] in their back pocket for use later… when trial would be so close that the Court would have very limited options for crafting a workable resolution to this dispute that would not affect the trial date." *Frias v. Cnty. of San Diego*, No. 3:22-CV-00675-JO-AHG, 2024 WL 4469097, at *5 (S.D. Cal. Oct. 8, 2024). Under such circumstances, the falling through of Defendants' commitments does not reflect a lack of diligence on Integra's part.

### C. Despite Its Reasonable Diligence, Integra Cannot Realistically Meet the Current Case Schedule Due to CMS's Approval Process

"Motions to amend are more often granted … when the need to amend arises from some unexpected or outside source." *City of Lincoln v. United States*, No.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

10

1569601.1 - 06302.00001

2:16-CV-01164-KJM-AC, 2018 WL 3917711, at *4 (E.D. Cal. Aug. 16, 2018) (quoting *FDIC v. Ching*, No. 2:13-CV-01710-KJM-EFB, 2016 WL 1756913, at *2 (E.D. Cal. May 3, 2016)). In this case, Integra spent *months* working with CMS to either receive a crosswalk dataset or learn what steps Integra would have to take to obtain such a dataset, only to eventually be met with silence. (Crim Decl., ¶¶ x-x.) The fact that CMS eventually stopped responding to Integra's outreach was not due to Integra's negligence, and so it cannot be said that Integra lacked diligence. *See Thompson v. BMW of N. Am., LLC*, 334 F.R.D. 230, 233 (C.D. Cal. 2020).

Although it is true that Integra faced a similar issue with CMS in connection with its first motion to amend the scheduling order (ECF No. 97), the experience resolving production of a litigation waiver from CMS has no overlap with the information needed to order production of a crosswalk dataset. As Integra has learned, the matters are handled by different personnel within CMS and subject to different workflows. Integra could not realistically request an order for the dataset's production before determining how to phrase the request in a manner that is comprehensible (and thus actionable) to CMS. *See* Fed. R. Civ. P 45(a)(1)(A)(iii) (subpoena must specify "designated documents" to produce); Fed. R. Civ. P. 34(b)(1)(A) (document request "must describe with reasonable particularity each item or category of items to be inspected"); *see also Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) ("'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A).") (quoting *In re Asbestos Products Liability Litigation (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009)).

Integra believes it has learned all that it can to fashion an order compelling CMS to identify and collect the relevant data needed to unmask Defendants' anonymized patients. However, accounting for processing time by CMS, an extension is warranted to ensure the data production ultimately translates into tangible patient files from Defendants, which will then need to be reviewed and

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

analyzed by Integra and its experts. *See Peterson v. Thomson Int'l, Inc.*, No. 1:22-cv-00701-JLT-CDB, 2023 U.S. Dist. LEXIS 83789, at *4-5 (E.D. Cal. May 12, 2023), (significant extension warranted where public health agencies were expected to take months to produce relevant records critical to proving plaintiff's case).

Additionally, just as the prolonged shutdown of the federal government in 2025 hampered Integra's ability to correspond with CMS, the follow-on shutdown that began this past weekend may forestall CMS's ability to proceed any order of this Court. *See* John Parkingson et al, "Partial government shutdown expected to extend longer than anticipated," *CBS News* (Feb. 1, 2026), available at https://abcnews.go.com/Politics/graham-blockade-stalls-government-funding-deal-hours-shutdown/story?id=129712452 (last accessed Feb. 2, 2026).

Because the need to provide more time once again arose from a third party, CMS, and Integra could not control the speed at or process by which the parties ultimately reached their impasse, extending the deadlines in the current scheduling order to compensate is appropriate. *City of Lincoln*, 2018 WL 3917711, at *4.

### D. Integra Brought the Instant Motion as Soon as was Reasonable

For Integra to propose a realistic superseding case schedule, it first needed to determine which available processes for deanonymizing Defendants' patient data were feasible and which sources (Defendants and/or CMS) would cooperate. It is only within the last month that Integra exhausted its primary efforts with both and determined more time is needed to pursue compulsory productions. Thus, even if Integra knew earlier that the current scheduling order required modification, bringing an earlier motion to amend would have been an act of guesswork and unhelpful to the stability of the case. *See Heh v. Cty. of L.A.*, No. CV 19-4258-DMG (PLAx), 2020 WL 2240072, at *2 (C.D. Cal. Feb. 13, 2020) ("Defendant cites no authority to support the argument that plaintiffs act diligently under Rule 16 *only* when they take action at the earliest possible instant. Indeed, the opposite appears true.") (citing *United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007)).

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

\\

### E. No Deadlines Sought for Extension Have Expired

Courts favor timely requests to extend deadlines concerning the completion of discovery and for the filing of dispositive motions. *See Roush v. San Joaquin Valley Coll.*, No. 1:21-cv-00556-JLT-BAM, 2023 WL 130882, at *3 (E.D. Cal. Jan. 9, 2023) (distinguishing cases that "involve parties who failed to meet a filing deadline rather than those who requested extensions prior to the deadline.").

Here, Integra only seeks extension of deadlines under the current scheduling order that have not lapsed, further demonstrating diligence and good cause.[1]

### F. The Weight of Prejudice Supports Amending the Scheduling Order

While Defendants are expected to claim that any amendment of the current scheduling order will necessarily deprive them of their right to a "just, speedy, and inexpensive determination" under Fed. R. Civ. P. 1, any such claim rings hollow in the face of an otherwise-satisfactory good cause showing under Fed. R. Civ. P. 16(b)(4) by Integra. *Youngevity Int'l, Corp. v. Smith*, No. 16-cv-704 BTM (JLB), 2017 WL 6730078, at *3 (S.D. Cal. Dec. 29, 2017) ("Although the existence or degree of prejudice to the party opposing the modification might supply *additional* reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.") (quoting *Johnson*, 975 F.2d at 609).

Moreover, the comparative prejudice of a defendant seeking a swift end to litigation "does not outweigh the importance of allowing the parties to meaningfully engage in discovery and present the merits of the case as the rules intend." *Netrition Inc. v. Tyler's Coffee LLC*, No. CV-23-00363-TUC-AMM, 2025 WL 460606, at *3 (D. Ariz. Feb. 11, 2025). To the contrary, it forms an alternative basis for the plaintiff to establish good cause under Rule 16. *See Herrera v. L.A. Unified Sch. Dist.*, No. SACV 17-00069 JVS(KESx), 2018 WL 6004545, at *3 (C.D. Cal. Sep.

---

[1] The parties timely exchanged expert reports on January 25, 2026, and Integra would only seek to supplement such reports based on the proceeds of discovery.

1569601.1 - 06302.00001

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

12, 2018) ("The court can therefore find good cause where, under the circumstances, the moving party would be substantially prejudiced by denial of modification, and the nonmoving party would not be prejudiced by the grant of modification.") (citing *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist*., 654 F.3d 975, 984 (9th Cir. 2011)); *accord Republic Bag, Inc. v. Beazley Ins. Co*., No. CV 18-6745-MWF (PJWx), 2020 WL 5258961, at *3 (C.D. Cal. June 29, 2020).

Here, resetting the case deadlines to permit alternative means of seeking the records Integra needs "will require Defendants to do nothing more than what they would have been required to do had [CMS's approval] issues not occurred." *Masterpiece Leaded Windows Corp. v. Joslin*, No. 08-CV-0765-JM (JMA), 2009 WL 1456418, at *3 (S.D. Cal. May 22, 2009); *see also Singleton v. Bail Hotline Bail Bonds, Inc*., No. 8:22-cv-01826-MRA-KES, 2024 WL 4800877, at *9 (C.D. Cal. June 28, 2024) (prejudice is lacking where an extension of time does not require the non-moving party to make "major alterations in trial tactics and strategy.") (quoting *Shijiazhuang Hongray Grp. v. World Trading 23, Inc*., No. 21-CV-00972-FWS-KK, 2023 WL 2629890, at *3 (C.D. Cal. Mar. 10, 2023)).

Because depriving Integra of a meaningful opportunity to complete discovery would be highly prejudicial, whereas permitting such discovery causes Defendants no prejudice beyond the expectations of the original scheduling order, this provides yet another reason for the court to find good cause to modify the scheduling order.

### G. The Length of the Extensions Sought Is Appropriate Given the Various Exigencies That Have Complicated the Case Schedule.

Integra does not seek an open-ended or vaguely justified extension, but one tethered to the specific tasks it will need to complete for discovery to be perfected. This includes (a) obtaining an order compelling CMS to locate and produce its crosswalk data, (b) furnishing that order on CMS, (c) providing time for CMS to respond, (d) transmitting the deanonymized patient data received from CMS to Defendants, (e) affording Defendants time to collect and produce documents for the

deanonymized patients, (f) reviewing the documents, and (g) allowing Integra's experts to incorporate the documents into updated expert witness reports.

Estimating that it will take CMS up to 30 days to produce data once furnished with a proper court order, 60 days for Defendants to produce documents keyed to said data, and 60 days for the parties' experts to review and incorporate that data into their respective expert reports, Integra proposes the below revised schedule:[2]

| Scheduling Order Event | Current Date | Proposed Date |
|---|---|---|
| Discovery cut-off | Mar, 23, 2026 | Aug. 17, 2026 |
| L/D for hearing motions | Apr. 13, 2026 | Sept. 7, 2026 |
| Submit first pre-trial documents | June 24, 2026 | Nov. 18, 2026 |
| Pre-trial conference | July 17, 2026 | Dec. 11, 2026 |
| Hearing on MILs/disputed jury instructions | July 24, 2026 | Dec. 18, 2026 |
| Jury trial | Aug. 4, 2026 | Jan. 12, 2027 |

## V.    CONCLUSION

For all the foregoing reasons, Integra's motion should be granted.

Respectfully submitted,

Dated:  February 2, 2026

GIPSON HOFFMAN & PANCIONE
A Professional Corporation

/s/ Daniel B. Lifschitz
DANIEL B. LIFSCHITZ
Attorneys for Relator
INTEGRA MED ANALYTICS LLC

---

[2] During this same time period, Integra intends to move to compel Defendants to undertake a proper search of records using the information already available to them, and which Defendants previously claimed was "workable" for such purposes.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

### *L.R. 11–6.2 Certificate of Compliance*

The undersigned counsel of record for Relator Integra Med Analytics LLC certifies that this brief is 15 pages, which complies with the page limit outlined in the Standing Order § 5(c), July 1, 2024, ECF No. 6.


Dated:  February 2, 2026                    GIPSON HOFFMAN & PANCIONE
                                            A Professional Corporation


                                            /s/ Daniel B. Lifschitz
                                            DANIEL B. LIFSCHITZ
                                            Attorneys for Relator
                                            INTEGRA MED ANALYTICS LLC

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

RELATOR INTEGRA MED ANALYTICS LLC'S MOTION TO AMEND SCHEDULING ORDER

1569601.1 - 06302.00001