GIPSON HOFFMAN & PANCIONE
A Professional Corporation
DANIEL B. LIFSCHITZ (SBN 285068)
dlifschitz@ghplaw.com
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

Attorneys for Plaintiff and Relator
INTEGRA MED ANALYTICS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel,* INTEGRA MED ANALYTICS LLC,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM NELSON, an individual; VICKI ROLLINS, an individual; TORRANCE CARE CENTER WEST, INC.; GLENDORA GRAND, INC.; CENTINELA GRAND, INC.; LONG BEACH CARE CENTER, INC.; PACIFIC VILLA, INC.; FLOWER VILLA, INC.; CENTURY VILLA, INC.; VILLA DEL RIO WINTER, INC.; VILLA DEL RIO CENTER, INC.; WEST COVINA MEDICAL CENTER, INC.; L.A. DOWNTOWN MEDICAL CENTER, INC.,<br><br>Defendants. | Case No.: 2:21-cv-05265-JFW-PVC<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF INTEGRA MED ANALYTICS LLC'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO SUPPLEMENT THE RECORD OF PENDING MOTION TO COMPEL [DKT. NO. 146] AND FOR SANCTIONS BASED ON NEW EVIDENCE AND PRECLUSION SANCTIONS**<br><br>Courtroom: 590<br>Judge: Pedro V. Castillo<br><br>Discovery Cutoff: March 23, 2026<br>Pretrial Conf.: July 17, 2026<br>Trial Date: August 4, 2026<br><br>Past Hearing Date: January 13, 2026<br>Time: 10:00 a.m<br>Location: 255 East Temple Street<br>          5th Floor<br>          Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. SUPPLEMENTAL STATEMENT OF FACTS ............................................ 4

III. ARGUMENT ....................................................................................................... 5

    A. Defendants' Use of Ex Parte Procedure is Inappropriate .................. 6

    B. Broad Subject Matter Waiver Is Inappropriate................................... 6

    C. Sanctions Are Not Justified for Evidence Produced During the Discovery Period ........................................................................................ 8

    D. *Ex Parte* Relief Is Inappropriate ....................................................... 10

IV. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*1940 Carmen, Ltd. Liab. Co. v. City of L.A.*,
No. 2:20-cv-06772-ODW (Ex),
2021 WL 3406648 (C.D. Cal. Aug. 4, 2021) ..................................................... 9

*Am. Career Coll. v. Mario Oswaldo Medina, Sr.*,
No. CV 21-698 PSG (SKX),
2022 WL 2783840 (C.D. Cal. June 1, 2022) ..................................................... 1

*Arredondo v. Univ. of La Verne*,
618 F. Supp. 3d 937 (C.D. Cal. 2022) ............................................................... 6

*Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*,
67 F.3d 766 (9th Cir. 1995) ............................................................................... 3

*Friends of Hope Valley v. Frederick Co.*,
268 F.R.D. 643 (E.D. Cal. 2010) ................................................................... 2, 7

*FTC v. Forensic Case Mgmt. Servs.*,
No. CV 11-07484 RGK (SSx),
2012 U.S. Dist. LEXIS 201068 (C.D. Cal. Sep. 4, 2012) ................................. 2

*Garcia v. Progressive Choice Ins. Co.*,
No. 11-CV-0466 BEN NLS,
2013 WL 6903900 (S.D. Cal. Dec. 18, 2013) ................................................... 8

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) ........................................................................... 2

*Horne v. Wells Fargo Bank, N.A.*,
969 F. Supp. 2d 1203 (C.D. Cal. 2013) ............................................................. 6

*In re Imperial Corp. of Am. v. Shields*,
174 F.R.D. 475 (S.D. Cal. 1997) ....................................................................... 1

*In re Intermagnetics Am., Inc.*,
101 B.R. 191 (C.D. Cal. 1989) .......................................................................... 6

*Jones v. Wal-Mart Stores, Inc.*,
No. 2:15-CV-1454-LDG-GWF,
2016 WL 1248707 (D. Nev. Mar. 28, 2016) .................................................... 3

*Kintera, Inc. v. Convio, Inc.*,
219 F.R.D. 503 (S.D. Cal. 2003) ....................................................................... 7

*Qualcomm Inc. v. Broadcom Corp.*,
No. 05CV1392-B (BLM),
2006 WL 8455363 (S.D. Cal. Oct. 3, 2006) ............................................... 3, 10

*S.E.C. v. Roberts*,
254 F.R.D. 371 (N.D. Cal. 2008) ...................................................................... 7

1

INTEGRA MED ANALYTICS LLC'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1570034.1 - 06302.00001

*Silvagni v. Wal-Mart Stores, Inc.*,
   320 F.R.D. 237 (D. Nev. 2017) .................................................................. 3, 10

*U.S. ex rel. Bagley v. TRW, Inc.*,
   212 F.R.D. 554 (2003) ..................................................................................... 1

*U.S. v. Nobles*,
   422 U.S. 225 (1975) ........................................................................................ 7

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
   266 F. Supp. 2d 1144 (C.D. Cal. 2003) .......................................................... 7

## I. INTRODUCTION

Defendants' second *ex parte* motion in as many weeks is a flagrant abuse of discovery procedure. *For more than a year*, Defendants have been aware that Integra corresponded with fourteen of their former employees before filing suit. For nearly as long, Defendants have *also* been aware that Integra was withholding same as protected work product arising from pre-suit diligence. The parties already have a joint motion pending with the Court (ECF No. 133) regarding whether Integra has an obligation to individually log and/or produce these work product materials.

Defendants have decided they are not required to wait for a ruling on that motion before demanding Integra comply with what they hope it will say. *Cf. Am. Career Coll. v. Mario Oswaldo Medina, Sr*., No. CV 21-698 PSG (SKX), 2022 WL 2783840, at *1 (C.D. Cal. June 1, 2022) (rejecting *ex parte* application premised on claim that the applicant "anticipated a 'favorable outcome'" on a motion to compel). To achieve their desired outcome, Defendants have attempted to fundamentally mislead the Court regarding Integra's anodyne and reasonable protection of its pre-suit diligence materials by conflating same with discovery gamesmanship. In fact, Defendants hope to leverage a pending legitimate dispute over the scope of work product protection to gain an unfair strategic advantage—crippling sanctions.

The only "errancy," immaterial to the substance of Defendants' *ex parte*, is that Integra previously believed its work product being withheld included only text messages, not e-mails. Beyond this, Integra's stances were and are fully consistent with its representations to the Court. It maintains these materials are work product, do not require individual logging under well-established Ninth Circuit law, and may be utilized at depositions to help Integra impeach or correct witness testimony. *See, e.g., In re Imperial Corp. of Am. v. Shields*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (categorical privilege log appropriate where requesting party seeks broad categories of protected documents); *U.S. ex rel. Bagley v. TRW, Inc*., 212 F.R.D. 554, 566 (2003) (confirming work product documents may be used to refresh recollection

during depositions while only resulting in a document-specific limited waiver).

Nothing has changed between Defendants' last *ex parte* request and this one other than Defendants' increasing dissatisfaction at their own dilatory conduct in failing to raise Integra's work product positions with the Court sooner. Had Integra impeached witnesses solely with text messages rather than e-mails, Defendants would still be gnashing their teeth about so-called "trial by ambush," albeit without their flimsy pretext of exigency to support an emergency filing. Beyond a spurious sanctions requests, Defendants have merely and improperly repackaged the exact same issues that were briefed to the Court last month. *FTC v. Forensic Case Mgmt. Servs.*, No. CV 11-07484 RGK (SSx), 2012 U.S. Dist. LEXIS 201068, at *11 (C.D. Cal. Sep. 4, 2012) ("Duplicative requests are an abuse of the discovery process.").

Defendants' demands are unjustified from top to bottom. **First**, the *ex parte*'s request for sanctions has no basis in law, as myriad cases confirm that work product waiver extends no farther than matters covered in related testimony. *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 649 (E.D. Cal. 2010) (quoting *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir.2010)). It is telling that Defendants do not rely on ***any*** case to support the proposition that sanctions are warranted for producing discovery during the discovery period for the case, particularly when that discovery was only just collected. Yet that is what has happened. A witness is deposed, and the questioner shows her discovery that the other side was previously unaware of. This occurs in many depositions, if not all.

It is readily apparent why no authority supports Defendants' radical position. If one follows this argument to its logical conclusion, sanctions would be warranted any time a party revisits its document collection and produces materials that the other side was previously unaware of. This would be patently absurd. Such harsh and potentially devastating ramifications would lead to perverse incentives that undermine the very heart of the litigation process—that is, these punishments would disincentivize parties from supplementing their discovery production within the

2

time period explicitly permitted under the case schedule when relevant materials are surfaced. *See Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1392-B (BLM), 2006 WL 8455363, at *3 (S.D. Cal. Oct. 3, 2006) (noting "preclusion sanctions are among the most severe," often "tantamount to a dismissal, and thus are appropriate only in 'extreme circumstances,' and where the violations at issue are 'due to willfulness, bad faith, or fault of the party.'") (quoting *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 771 (9th Cir. 1995)).

***Second***, Integra's disclosure did no harm to Defendants, certainly no harm that that was not immediately cured by providing them with the documents used at the two depositions in question. Defendants have not noticed a single additional third-party deposition for which Integra's work product might be relevant and thus have no explanation for why a global waiver is remotely proportional. Indeed, the fact that Defendants have accelerated straight to a nuclear sanctions request betrays the rank gamesmanship of their *ex parte,* as courts routinely hold "lesser sanctions and other measures are generally more appropriate than evidence preclusion when the disclosure is provided during the discovery period and the delay can be remedied during the existing discovery period or with a limited and brief extension of discovery." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 243 (D. Nev. 2017) (quoting *Jones v. Wal-Mart Stores, Inc.*, No. 2:15-CV-1454-LDG-GWF, 2016 WL 1248707, at *7 (D. Nev. Mar. 28, 2016)). There is more than a month remaining in the current discovery period and, notably, Defendants have actively opposed any extensions of that period for their own strategic purposes. *See* ECF No. 144.

Defendants also fail to acknowledge that they previously subpoenaed the third-party witnesses who were deposed for these very same materials. Until the depositions took place, Integra had no way of knowing whether Defendants possessed copies of these documents, as nothing was shared with Integra. In any event, Integra's use of the newly-produced discovery in deposition was proper—impeachment of witnesses with allegedly poor memories of relevant events.

***Third***, even if these materials had been identified on a privilege log earlier, Defendants would not be in a materially different position than they are now. As has already been briefed to the Court *ad nauseum,* Integra's business is to litigate against companies suspected of defrauding the government. Thus, Integra has consistently maintained its pre-suit diligence to be shielded by work product or other privileges and provided fulsome authority supporting that position. Here, the scope of protection is actively under dispute and this question remains to be resolved. Defendants' election to proceed with depositions before the Court issues its ruling is no one's fault but Defendants, much as they try to make it Integra's.

In conclusion, the strategic reason for Defendants' *ex parte* motion practice is clear. Defendants are presently trying to squeeze Integra during the discovery period by withholding the medical and financial records for virtually all 762 patients that underlie Integra's complaint, preventing Integra from testing its theories relating to medical necessity, while simultaneously refusing to agree to extend the case schedule. Now, with just over a month remaining in the current discovery period, Defendants have a shorter period of time than they would like to address the consequences of their own dilatory motion practice. This minor inconvenience to Defendants does not warrant harsh punitive sanctions to Integra, however.

Defendants' second *ex parte* motion should be denied in its entirety.

## II. SUPPLEMENTAL STATEMENT OF FACTS

As discussed in connection with Defendants' prior *ex parte* motion, Integra retrieved additional work product documents related to Elida Agatep (specifically, e-mail correspondence) on January 29, 2026 and immediately disclosed them to Defendants. *See* Declaration of Daniel B. Lifschitz ("Lifschitz Decl.") ¶ 3, Ex. A. Afterwards, Integra revisited its internal document collection and, with respect to the February 6, 2026 deposition of Imelda Julian (the only new event implicated in Defendants' second *ex parte* motion), retrieved additional correspondence that was provided to its counsel on the morning of February 6, 2026. *Id.* ¶¶ 4-5. When it

became apparent that Ms. Julian had not provided this correspondence to Defendants despite being subpoenaed months earlier for such material, Integra's counsel produced its own copies to defense counsel during that deposition. *Id.*

Nothing about the disclosure or use of these materials should have been at all surprising to Defendants. They already knew that Integra was withholding its correspondence with Ms. Julian as work product. ¶ 6. They already knew that Integra's logging obligation for said correspondence was unresolved as part of the pending motion to compel before the Court. They already knew that Integra had asserted rights to use work product for purposes of refreshing witness recollection. *Id.* The fact that this work product was only recently retrieved is a red herring, as Defendants would have no further right to it than any prior-collected material.[1]

Despite Defendants giving notice of this second *ex parte* motion at the February 6th deposition of Ms. Julian (*see* Dkt. 146, Notice), and despite relying on the same arguments as in their first *ex parte* motion with substantially similar factual allegations, Defendants waited to file the instant motion until February 11th.

It bears mention that there is no deadline in the case schedule for the substantial completion of document production. Nor is there a deadline for a "final" privilege log. In fact, Defendants rejected Integra's proposal to implement a mutually-agreed-on substantial completion date. Lifschitz Decl. ¶ 8. Accordingly, both parties have continued to produce case documents on a rolling basis. *Id.*

## III.    ARGUMENT

Defendants' self-serving sanctions demand is entirely unjustified in law and fact. Setting aside Defendants' refusal to agree to extend the case schedule—exacerbating whatever harm they believe exists—fact discovery has not yet closed. Additionally, the scope of work product protection for Integra's pre-suit diligence is legitimately disputed in this case, and this question remains to be resolved.

---

[1] Defendants will have a full and fair opportunity to examine the custodian of these documents, Dammon Crim, during his upcoming scheduled deposition. *Id,* ¶ 7.

Nor have Defendants experienced any cognizable harm due to Integra's actions. Integra accepted a document-specific work product waiver and produced documents to Defendants during the discovery period in this case. This is a perfectly acceptable litigation practice and provides no justification for seeking wildly disproportionate sanctions on an *ex parte* basis, itself a sanctionable activity.

### A. Defendants' Use of Ex Parte Procedure is Inappropriate

Defendants' second *ex parte* application is even less justifiable than its first. As before, "[e]x parte applications are solely for extraordinary relief and are rarely justified." *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 943 (C.D. Cal. 2022). Defendants claim an emergency exists due to "14 depositions remaining." Mot. At 9:28. Presumably, Defendants refer to the three depositions of Integra personnel that have actually been scheduled and the 11 remaining third party witnesses listed on Integra's initial disclosures – *but Defendants have not issued deposition notices for any of the remaining 11 third party witnesses* (or, if they have, are strategically withholding that information from Integra). Lifschitz Decl. ¶ 7.

Because there are no depositions on calendar to be informed by any of the work product for which Defendants seek a waiver of protections, they have failed to substantiate any exigent need for relief. *See, e.g., Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1206 (C.D. Cal. 2013) (rejecting *ex parte* application untethered to redressing claimed "immediate or irreparable injury"); *In re Intermagnetics Am., Inc.*, 101 B.R. 191 (C.D. Cal. 1989) (rejecting *ex parte* application as "procedurally improper" where "not based on any real urgency").

### B. Broad Subject Matter Waiver Is Inappropriate

Even if Defendants' use of the *ex parte* mechanism were appropriate, the broad subject matter waiver they have sought thereby would still not be.

#### 1. The So-Called "Sword-Shield Doctrine" Does Not Support Defendants' Sanctions Demand

Despite having been raised in connection with Defendants' prior *ex parte*

motion, Defendants continually refuse to address the foundational principles of work product waiver established in the seminal case of *U.S. v. Nobles*, 422 U.S. 225 (1975), which provides that when a party elects to present work product materials through witness testimony, they waive "the privilege *with respect to matters covered in [their] testimony.*" *Nobles*, 422 U.S. at 239 (emphasis added).

Under *Nobles,* work product waiver extends no further than the documents upon which a party has elected to affirmatively rely in litigation. *See Friends of Hope Valley*, 268 F.R.D. at 649; *Hernandez*, 604 F.3d at 1100. This permits work product waiver as to specific documents relating to specific witnesses without resulting in any global waiver. *See Kintera, Inc. v. Convio, Inc.,* 219 F.R.D. 503, 513 (S.D. Cal. 2003), *S.E.C. v. Roberts*, 254 F.R.D. 371, 380 (N.D. Cal. 2008).

This is particularly so where the use of the work product materials in question is to impeach and correct witness testimony, which is consistent with standard litigation practice. There is no evidence of any calculated strategy to ambush Defendants, as the documents Integra produced were limited in scope and used appropriately to test witness credibility, not serve as standalone evidence. To the extent Integra's recent production constitutes a "sword," Defendants have not, and cannot, make the argument that any relevant factual materials have been "shielded."

Defendants' own (and sole) authority on this issue proves Integra's point. In *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P*., 266 F. Supp. 2d 1144 (C.D. Cal. 2003), the parties were debating proper use of an advice of counsel defense, wherein presenting only select correspondence with counsel risked an improperly sanitized record that did not reflect the party's true state of mind. There is no remotely equivalent prejudice that Defendants can identify in this case.

In summary, Defendants cite no case for the proposition that sword-shield doctrine applies to this case, much less supports punitive evidentiary sanctions.

### 2. Work Product Protection May Be Selectively Waived

Assuming *arguendo* that work product waiver was effected by Integra's

7

production of Ms. Julian's materials at her deposition, Defendants have once again failed to substantiate that such waiver was either improper or expansive in nature.

As previously discussed, work product waivers are specific to the individual to whom disclosure relates. *Roberts*, 254 F.R.D. at 380 (limited factual disclosures about certain individuals did not waive protection for materials "pertaining to individuals for whom there was no evidence of disclosure."). Defendants have already received the benefits of such a waiver by being provided with the documents upon which Ms. Julian (and Ms. Agatep before her) were cross-examined.

### C. Sanctions Are Not Justified for Evidence Produced During the Discovery Period

There is no basis in law or fact to award sanctions—much less preclusive evidentiary sanctions—to Defendants.

#### 1. Sanctions Are Unwarranted When Discovery Is Produced During the Fact Discovery Period

Sanctions are inappropriate when relevant discovery is produced during the prescribed fact discovery period in the case. Integra was unaware of certain documents prior to immediately before witnesses were deposed, did not attempt to hide their existence once discovered, and instead produced them to the other side. *Cf. Garcia v. Progressive Choice Ins. Co.*, No. 11-CV-0466 BEN NLS, 2013 WL 6903900, at *2 (S.D. Cal. Dec. 18, 2013) (declining to award sanctions for far more egregious withholding of documents ultimately produced during a deposition).

Defendants do not—and cannot—rely on any case to support a contrary proposition. Indeed, such a premise is facially absurd. It invites obvious perverse incentives—why would any party revisit their document collection efforts during the discovery period if newly-produced documents would trigger sanctions?

#### 2. The *Rio Props.* Test Favors Integra, Not Defendants

Defendants rely on a five-factor test to argue that they are entitled to sanctions. In fact, each factor is either neutral or supports Integra.

8

INTEGRA MED ANALYTICS LLC'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION

1570034.1 - 06302.00001

### i. Public Interest in Expeditious Litigation Resolution

Notably, Defendants' position on this factor—and every factor—is comprised entirely of attorney argument, without citation to any case with corresponding facts. As such, Defendants have waived any argument on these points. *1940 Carmen, Ltd. Liab. Co. v. City of L.A.*, No. 2:20-cv-06772-ODW (Ex), 2021 WL 3406648, at *4 (C.D. Cal. Aug. 4, 2021) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.") (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)).

In any event, this factor is neutral at least because Defendants admit that the implicated discovery has been produced during the prescribed discovery period for this case. Although Integra has recently sought a case extension for other reasons—namely, Defendants' refusal to produce medical and financial records for the hundreds of witnesses implicated in Integra's complaint—Defendants' present *ex parte* motions have no bearing on the case schedule.

### ii. Court's Need to Manage Its Docket

For the same reasons as III(2)(i), Integra's continued production of discovery has no bearing on case docket management. Defendants' position is again entirely attorney argument, without case citation, and conspicuously ignores the impact of Defendants' improper *ex parte* motion practice on the case docket.

### iii. Risk of Prejudice to Defendants

Defendants have been aware of texts and communications as early as the filing of the Complaint, which contains excerpts of many such materials. Any prejudice from the production of materials at a witness deposition (there is none) is actively being cured, as explained above. Defendants cite no cases for the proposition that prejudice arises under these circumstances, much less that sanctions are warranted. In fact, as previously noted, no such prejudice arises.

### iv. Public Policy Favors Disposition on the Merits

Production of limited work product during discovery has no bearing on the ultimate disposition of a case, particularly when, as here, the close of fact discovery is more than a month away, and Defendants have intentionally avoided requesting an appropriate lesser remedy. *See Qualcomm*, 2006 WL 8455363, at *3.

### v. Availability of Less Drastic Sanctions

As already noted, Defendants could have requested an appropriate remedy under these circumstances – a "brief extension of discovery" (to the extent even warranted) – and intentionally chose not to do so. *Silvagni*, 320 F.R.D. at 243.

## D. *Ex Parte* Relief Is Inappropriate

As explained above, there is no misconduct here—merely the supplementation of discovery in the ordinary course. Defendants' request for *ex parte* relief is inappropriate and a misuse of the *ex parte* process.

### 1. There Is No Irreparable Prejudice

Defendants acknowledge that the discovery cutoff is "less than six weeks away." Mot. at 9. Defendants do not identify any actual harm that cannot be remedied within that period—merely the speculative future "prospect" of being "sandbagged at every turn." This hand-wringing relates to nothing more than ordinary supplementation of discovery in the ordinary course, which Integra is working to cure within the prescribed discovery period.

### 2. Fault

Although the production of Integra's materials is not in Defendants' control, the supposed exigency is at least partly Defendants' fault—and the product of its own improper efforts to deny Integra access to case-critical discovery.

Integra asked Defendants to agree to extend the scheduling order to accommodate the production of Defendants' medical and financial records for more than 700 patients—a process made possible after Integra voluntarily gave Defendants its dataset, its source code, ***and*** a "how to use" guide. Defendants

refused, despite acknowledging that they could use Integra's materials to identify previously anonymized patients. Integra has now been forced to seek a case extension. *See generally* ECF No. 136 (discussing basis for extension).

Defendants are not victims. Their *ex parte* practice is an improper means to achieve an unfair advantage—crippling preclusive sanctions—without any legal justification applicable to the present circumstances, and despite Integra's active and ongoing efforts to cure any deficiencies during the fact discovery period.

## IV. CONCLUSION

For all the foregoing reasons, Defendants' second *ex parte* application should be denied.

Respectfully submitted,

Dated:  February 12, 2026

GIPSON HOFFMAN & PANCIONE
A Professional Corporation

/s/ Daniel B. Lifschitz
DANIEL B. LIFSCHITZ
Attorneys for Relator
INTEGRA MED ANALYTICS LLC

### *L.R. 11–6.2 Certificate of Compliance*

The undersigned, counsel of record for Relator, certifies this brief contains 3,317 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 12, 2026

GIPSON HOFFMAN & PANCIONE
A Professional Corporation

/s/ Daniel B. Lifschitz
DANIEL B. LIFSCHITZ
Attorneys for Relator
INTEGRA MED ANALYTICS LLC

INTEGRA MED ANALYTICS LLC'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION